No. 24-2254

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff,*

v.

EQUITYBUILD FINANCE, LLC and EQUITYBUILD, INC.,
*Defendants,*

and

KEVIN B. DUFF,
*Appellee,*

APPEAL OF: SHATAR CAPITAL PARTNERS.

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern, Division
Case No. 1:18-cv-05587
The Honorable Manish S. Shah

---

## BRIEF AND REQUIRED SHORT APPENDIX OF
## APPELLANT, SHATAR CAPITAL PARTNERS

---

LOEB & LOEB LLP
Andrew R. DeVooght
    COUNSEL OF RECORD
Alexandra J. Schaller
321 N. Clark St., Suite 2300
Chicago, Illinois 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111
adevooght@loeb.com
aschaller@loeb.com
*Attorneys for Appellant Shatar Capital
Partners*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2254

Short Caption: SEC, et al v. Kevin Duff, et al

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Shatar Capital Partners on behalf of 111 Crest Dr. LLC, Abraham Aaron Ebriani, Hamid Esmail and Farsaa Inc., and

and any subsequent assignees including Pakravan Living Trust

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Loeb & Loeb, LLP; Dykema Gossett, PLLC; Fox R othschild LC; Cherny Law Offices, P.C.


(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  None.

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Andrew R DeVooght Date: 7/31/2024

Attorney's Printed Name: Andrew R. DeVooght

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑   No ☐

Address: 321 N. Clark Street, Suite 2300

Chicago, Illinois 60654

Phone Number: 312-464-3100 Fax Number: 312-464-3111

E-Mail Address: adevooght@loeb.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2254

Short Caption: SEC, et al v. Kevin Duff, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

□     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Shatar Capital Partners on behalf of 111 Crest Dr. LLC, Abraham Aaron Ebriani, Hamid Esmail and Farsaa Inc., and

and any subsequent assignees including Pakravan Living Trust

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Loeb & Loeb, LLP; Dykema Gossett, PLLC; Fox Rothschild LLC; Cherny Law Offices, P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Alexandra J. Schaller      Date: 7/31/2024

Attorney's Printed Name: Alexandra J. Schaller

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 321 N. Clark Street, Suite 2300

Chicago, Illinois 60654

Phone Number: 312-464-3100      Fax Number: 312-464-3111

E-Mail Address: aschaller@loeb.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................**Error! Bookmark not defined.**

JURISDICTIONAL STATEMENT ............................................. 1

STATEMENT OF ISSUES......................................................... 8

STATEMENT OF THE CASE ................................................... 9

I.    The Competing Mortgage Liens.................................... 10

II.   Proceedings Before The District Court.......................... 14

SUMMARY OF THE ARGUMENT ......................................... 18

STANDARD OF REVIEW....................................................... 22

ARGUMENT ......................................................................... 22

I.    The District Court Erred in concluding that the Individual
      Investors' mortgages have priority over Shatar's
      mortgages. .................................................................. 22

      A.    The District Court erred in finding that the
            Individual Investors' mortgage has priority over
            Shatar's mortgage in 7749 S. Yates..................... 23

            1.    The District Court erred in concluding that
                  Shatar was on inquiry notice that there were
                  other investors who had an interest in 7749 S.
                  Yates........................................................... 24

            2.    The District Court erred in concluding that a
                  diligent inquiry would have revealed the
                  Individual Investors' mortgages for 7749 S.
                  Yates........................................................... 29

      B.    The District Court erred in finding that the
            Individual Investors' mortgage has priority over
            Shatar's mortgage in 5450 S. Indiana. ................ 42

1. The District Court erred in concluding that the Individual Investors had equitable mortgages in 5450 S. Indiana. ...................................................... 43

2. The District Court erred in concluding that Shatar was on inquiry notice that there were other investors who had equitable mortgages in 5450 S. Indiana. .......................................... 48

3. The District Court erred in concluding that a diligent inquiry would have revealed the Individual Investors' equitable mortgages for 5450 S. Indiana. .......................................... 50

II. The District Court erred in denying Shatar's recovery of amounts Shatar is contractually entitled to as a secured claimant, and approving the Receiver's net loss distribution plan................................................................. 51

A. The District Court erred in limiting Shatar's recovery to its principal where Shatar is contractually entitled to complete recovery of its secured claim........................................................ 52

B. The District Court erred in applying the "netting rule." 59

CONCLUSION ........................................................ 63

CERTIFICATE OF COMPLIANCE........................................ 65

CIRCUIT RULE 30(d) STATEMENT.................................... 67

CIRCUIT RULE 30(a) APPENDIXTABLE OF CONTENTS................ 68

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Boucek v. Pondelicek,*
    259 Ill. App. 59 (1st Dist. 1930)..........................................46

*In re Bruder,*
    207 B.R. 151 (N.D. Ill. Bankr. 1997) ...............................24

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949)...........................................................5, 6

*Donell v. Kowell,*
    533 F.3d 762 (9th Cir. 2008).............................................60

*Duff v. Cent'l Sleep Diagnostics, LLC,*
    801 F.3d 833, 836 (7th Cir. 2015).....................................56

*Duff v. DeRoo, et al.,*
    22-cv-04336 (N.D. Ill.), Dkt. 1..........................................19

*In re Equip. Acquisition Res., Inc.,*
    803 F.3d 835 (7th Cir. 2015)................................. 40, 41, 42

*In re Fesco Plastics Corp.,*
    996 F.2d 152 (7th Cir. 1993).............................................55

*First Illinois Bank v Hans,*
    143 Ill. App. 3d 1033 (2d Dist. 1986)...............................45

*In re First Independence Capital Corp.,*
    181 Fed. Appx. 524 (6th Cir. 2006)............................ *passim*

*Flinch v. Treto,*
    82 F.4th 572 (7th Cir. 2023) .............................................22

*Grigaitis v. Gaidauskis,*
    214 Ill. App. 111.................................................................46

*Grubb v. Fed. Deposit Ins. Corp.*,
    833 F.2d 222 (10th Cir. 1987) ........................................ 54, 56

*Hargrove v. Gerill Corp.*,
    124 Ill. App. 3d 924 (2nd Dist. 1984) ................................. 44

*Herx v. Diocese of Fort Wayne-South Bend, Inc.*,
    772 F.3d 1085 (7th Cir. 2014) ............................................ 5

*Krueger v. Oberto*,
    309 Ill. App. 3d 358 (2d Dist. 1999) .................................. 27

*Littlefield v. Bamberger*,
    32 P.3d 615 (Colo. App. 2001) ........................................... 40

*Marshall v. New York*,
    254 U.S. 380 (1920) ........................................................... 52

*Ogle v. Koerner*,
    140 Ill. 170 (1892) ............................................................. 58

*Peoples Nat'l Bank, N.A. v. Banterra Bank*,
    719 F.3d 608 (7th Cir. 2013) ...................................... *passim*

*In re Real Prop Located at [Redacted] Jupiter Drive*,
    No. 2:05-CV-01013-DB, 2007 U.S. Dist. LEXIS 65276
    (Utah D. Ct. Jun. 7, 2007) .................................... 54, 56, 57

*S.E.C. v. Byers*,
    637 F.Supp. 2d 155 (S.D.N.Y. 2009) ....................... 54, 55, 56

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ............................................... 60

*SEC v. EquityBuild, Inc.*,
    101 F.4th 526 (7th Cir. 2024) .................................... *passim*

*SEC v. Mgmt. Solutions, Inc.*,
    2013 U.S. Dist. LEXIS 12027 (D. Utah Aug. 22, 2013) ............ *passim*

*SEC v. Wealth Management LLC*,
    628 F.3d 323 (7th Cir. 2010) .............................. 5, 6, 7, 22

*Silas v. Robinson*,
  131 Ill App. 3d 1058 (1st Dist. 1985) ................................................. 47

*Stump v. Swanson Dev. Co. LLC*,
  2014 IL App (3d) 110784 ........................................................ *passim*

*In re Taneja*,
  2012 Bankr. LEXIS 3554 (Bankr. E.D. Va. July 30, 2012) .............. 59

*Ticonic v. Nat. Bank v. Sprague*,
  303 U.S. 406 (1938) ............................................................... 53, 56

*U.S. Bank Nat'l Ass'n v. Villasenor*,
  2012 IL App (1st) 120061 ....................................................... 27

*In re Urban Communicators PCS Ltd. P'ship*,
  379 B.R. 232 (Bankr. S.D.N.Y. 2007) ...................................... 54

*Vanston Bondholders Protective Comm. v. Green*,
  329 U.S. 156 (1946) ............................................................. 54, 55

*Wilkinson v. Johnson*,
  29 Ill. 2d 392 (1963) ............................................................. 44

*Wyoming Bank & Trust v. Haught*,
  76 P.3d 301 (Wyo. 2003) ...................................................... 40

**Statutes**

740 ILCS 160 ........................................................................ 60

765 ILCS 5/11 ....................................................................... 58

765 ILCS 5/30 ....................................................................... 58

11 U.S.C. § 506(b) .............................................................. 54, 55

11 U.S.C. § 550(b)(1) ......................................................... 37, 38, 41

15 U.S.C. § 77t(b) .................................................................. 1

15 U.S.C. § 77v ...................................................................... 1

15 U.S.C. § 78aa ................................................................. 1

15 U.S.C. § 78u(d) ............................................................. 1

15 U.S.C. § 78u(e) ............................................................. 1

28 U.S.C. § 754 ................................................................. 2

28 U.S.C. § 959 ................................................................. 2

28 U.S.C. § 1291 ............................................................... 4

28 U.S.C. § 1331 ............................................................... 1

28 U.S.C. § 1692 ............................................................... 2

**Other Authorities**

Fed. R. Civ. P. 66 ............................................................. 2

Local Rule 66.1 ................................................................ 55

## JURISDICTIONAL STATEMENT

In the proceeding below, the United States District Court for the Northern District of Illinois had jurisdiction over this action as a civil action arising under the laws of the United States pursuant to 28 U.S.C. § 1331.

More specifically, on August 15, 2018, the United States Securities Exchange Commission ("SEC") brought an enforcement action under the Securities Act of 1933 ("Securities Act") Section 20(b) [15 U.S.C. § 77t(b)] and the Securities Exchange Act of 1934 ("Exchange Act") Sections 21(d) and (e) [15 U.S.C. §§78u(d) and 78u(e)], alleging that Jerome and Shaun Cohen, through their real estate companies, Equitybuild, Inc. and EquityBuild Finance, LLC, engaged in a scheme to defraud investors in connection with real estate investments on the South Side of Chicago. (R.1) Thus, the District Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. (*Id.* at ¶ 9.)

On the same day, the SEC moved to appoint a receiver "to remove Defendants' control over investor funds, to secure the real estate and other assets obtained with investor proceeds, and to ultimately

recompense the defrauded investors." (R.3 at 2.) On August 17, 2018,
noting that it had "subject matter jurisdiction over this action and
personal jurisdiction over the Defendants, and [that] venue properly lies
in this District," the District Court granted the SEC's motion and issued
an order outlining the contours of the Receiver's appointment. (R.14
and R.16 at 1.) In the first instance, the District Court took "exclusive
jurisdiction and possession of the assets, of whatever kind and wherever
situated," of Jerome Cohen, Shaun Cohen, Equitybuild, Equitybuild
Finance and any of their affiliates. (R.16 at 1-2.)

The District Court further explained that "[t]he Receiver shall
have all powers, authorities, rights and privileges heretofore possessed
by the officers, directors, managers, members, and general and limited
partners of the Receivership Defendants under applicable state and
federal law, by the governing charters, by-laws, articles and/or
agreements in addition to all powers and authority of a receiver at
equity, and all powers conferred upon a receiver by the provisions of 28
U.S.C. §§ 754, 959, and 1692, Fed. R. Civ. P. 66, and this Order." (R.16
at 3-4.)

On February 9, 2021, the District Court further issued an order establishing a claims resolution process. (R.941.) Pursuant to that process, the properties at issue were organized into ten groups "to allow for the resolution of a manageable number of claims in each proceeding." (*Id.* at 2.)

On June 20, 2024, the District Court issued an opinion and entered an order "resolv[ing] competing claims for priority on properties that were grouped together as "Group 2." (A01 (the "Priority Order") .)

Two of the properties in Group 2 are 5450 S. Indiana and 7749 S. Yates. (A02.) With respect to these two properties, the District Court concluded that the Individual Investors' mortgages have priority over Shatar's mortgages. (A32 and A36.) The District Court further instructed the Receiver to "prepare proposed distribution orders consistent with" the Court's opinion and "submit them" to the Court "on or before July 12, 2024." (A43.)

On July 15, 2024, the District Court entered the Receiver's proposed disbursement order, approving the Receiver's recommendation of final distributions, pursuant to the Court's June 20, 2024 order "determining the priority of claimants to liquidated funds from the sales

of" 5450 S. Indiana and 7749 S. Yates. (A44 (the "Disbursement Order").)

The Notice of Appeal was filed with the District Court on July 17, 2024.

This appeal is taken following the order of the United States District Court for the Northern District of Illinois entered on July 15, 2024 by the Honorable Manish S. Shah, directing the Receiver to disburse the proceeds from the sale of the investment properties, "[p]ursuant to [the District Court's June 20, 2024 order] determining the priority of claimants to liquidated funds from the sale" of properties from Group 2, including 5450 S. Indiana and 7749 S. Yates. (R.1699 at 1.) The Disbursement Order confirmed that the District "Court intends that [the Disbursement Order] be a final distribution." (*Id.* at 5.) The District Court further confirmed that the "findings set forth in the Court's" Priority Order "are expressly incorporated" into the Disbursement Order and "that they have been correctly set forth in the Distribution Plans attached" to the Distribution Order. (R.1699 at 5.)

This Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. An order is appealable

by virtue of the collateral order doctrine if it "fall[s] [into] that small class [of decisions] which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To determine whether the requirements for a collateral order appeal are met, this Court does "not engage in an individualized jurisdictional inquiry," instead the "focus is on the entire category to which a claim belongs." *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1089 (7th Cir. 2014) (citing *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 107 (2009)).

The District Court's July 15, 2024 Disbursement Order satisfies the *Cohen* criteria and falls within an already-recognized category of collaterally appealable orders. This Court's decision in *SEC v. Wealth Management LLC*, 628 F.3d 323 (7th Cir. 2010), is particularly instructive. In *Wealth Management*, "[t]he receiver proposed to distribute the diminished assets" from failed investment vehicles subject to an SEC enforcement action, "on a pro rata basis," concluding

"that no investors were creditors . . . and thus [the receiver's] plan treated all investors equally." *Id.* at 329, 329. Two claimants objected to the receiver's proposed distribution plan, arguing they should be treated as creditors and thus were entitled to priority over other claimants. *Id.* at 329. The district court disagreed, and issued an order overruling the claimants' priority objections and approving the receiver's distribution plan. *Id.*

The objecting claimants appealed from the district court's priority and distribution order pursuant to the collateral order doctrine. *Id.* This Court concluded that the district court's order qualified as a reviewable collateral order because it satisfied all three criteria set out in *Cohen.* *Id.* at 330-31. The order "conclusively determine[d] the disputed question—how the recovered assets in the receivership [would] be distributed," the manner of distribution was "important to the defrauded investors," and such distribution was "independent of the merits of the underlying SEC enforcement action." *Id.* at 331. This Court thus joined the Fifth and Sixth Circuits in concluding "the collateral-order doctrine permits interlocutory review of a district-court order approving a receiver's plan of distribution." *Id.* at 330 (citing *SEC*

*v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657 (6th Cir. 2001) and

*SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325 (5th Cir. 2001)).

As in *Wealth Management*, the District Court's Disbursement

Order satisfies each of the criteria set out in Cohen. The District Court's

Disbursement Order "conclusively determines the disputed question—

how the recovered assets in the receivership will be distributed." *See*

*Wealth Mgmt., LLC*, 628 F.3d at 331. The manner in which the assets

will be distributed is paramount to the Group 2 claimants and is

independent from the merits of the underlying SEC enforcement action

against the Defendants. *Id.* Additionally, as was the case in *Wealth*

*Management*, the District Court's "order will be effectively

unreviewable after the court enters a final judgment because the assets

will have been distributed by that point." *Id.* Finally, and critically, like

the order in *Wealth Management*, the District Court's Disbursement

Order is an order approving the Receiver's plan of distribution and thus

falls within a category of collaterally appealable orders specifically

recognized by this Court.

Consistent with the above, this Court recognized Shatar's ability

to file such an appeal in reviewing BC57 LLC's appeal regarding Group

1 (*see* Appeal No. 23-1870, *SEC, et al. v. BC57, LLC*), explaining that it had "jurisdiction to consider an interlocutory appeal of a district court's distribution plan under the collateral order doctrine." *SEC v. EquityBuild, Inc.*, 101 F.4th 526, 530 n.2 (7th Cir. 2024) (citing *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 330-31 (7th Cir. 2010)).

Accordingly, this Court has jurisdiction over this appeal.

## STATEMENT OF ISSUES

1. Whether the District Court erred in concluding that the Individual Investors' mortgage has priority over Shatar's mortgage for 7749 S. Yates when **(a)** Shatar's mortgage was recorded almost three months prior to the Individual Investors' mortgage, **(b)** Shatar was promised a first lien position, and **(c)** any "diligent inquiry" Shatar could have conducted as to the existence of the Individual Investors' mortgage would have been based on communicating with individuals whose "entire business model operated to purposefully obfuscate responsibility and ownership."

2. Whether the District Court erred in concluding that the Individual Investors possessed equitable mortgages that have priority over Shatar's mortgage for 5450 S. Indiana when **(a)** "there was no

signed mortgage in favor of the Individual Investors at the time that Shatar made its loan to EquityBuild," **(b)** Shatar's funds were used to purchase 5450 S. Indiana, **(c)** Shatar's mortgage was recorded almost three months prior to the Individual Investors' mortgage, **(d)** Shatar was promised a first lien position, and **(e)** any "diligent inquiry" Shatar could have conducted as to the existence of any equitable mortgages would have been based on communicating with individuals whose "entire business model operated to purposefully obfuscate responsibility and ownership."

3.    Whether the District Court erred in **(a)** prohibiting first-priority secured investors from recovering any form of interest, fees, penalties, or costs permitted by their loan documents and Illinois law and **(b)** approving the Receiver's proposed net loss distribution.

## STATEMENT OF THE CASE

This appeal concerns a mortgage lien priority dispute between competing claimants—Shatar Capital Partners ("Shatar") and a collection of certain individual and entity investors (the "Individual Investors"). Each claims priority to funds liquidated by the Receiver's

sale of two properties based on mortgages issued to Shatar[1] and to the Individual Investors. Shatar recorded its mortgages for 7749 S. Yates and 5450 S. Indiana almost three months before the Individual Investors recorded their mortgages for these same properties. Further, at the time it recorded its mortgages, Shatar had no notice of the Individual Investors' mortgages. At stake is approximately $2.46 million ($603,362 for 7749 S. Yates and $1.85 million for 5450 S. Indiana) presently available for distribution in satisfaction of the claims. (R.1571 at 28, 30.)

## I.  The Competing Mortgage Liens

Equitybuild solicited investments from the Individual Investors in 5450 S. Indiana and 7749 S. Yates as early as December 2016 and February 2017, respectively. (R.1602-1 at 114-61.) At the time of their investment, the Individual Investors received promissory notes, Collateral Agency and Servicing Agreements appointing EBF as the

---

[1] Shatar's mortgages were issued to 1111 Crest Dr. LLC, Abraham Aaron Ebriani, Hamid Esmail, and Farsaa, Inc., and any subsequent assignees including Pakravan Living Trust. Shatar acted as a broker and loan servicer for these individuals and entities and Shatar submitted its proof of claim on their behalf, as the ultimate beneficiaries of the loan. For ease of reference, this brief will refer to the beneficiaries and Shatar Capital collectively as Shatar.

collateral agent, trustee, and loan servicer, and unexecuted mortgages (the mortgages were unsigned by any Equitybuild affiliate). (*See id.* at 66-114.) Thereafter, on March 14, 2017, Jerome Cohen signed a mortgage on 7749 S. Yates to the Individual Investors for $2,860,000. (R.1562-5.) On March 31, 2017, Jerome Cohen signed a mortgage on 5450 S. Indiana to the Individual Investors for $3,050,000. (R.1562-4.) Neither of the Individual Investor mortgages were recorded until June 23, 2017. (R.1562-4, 1562-5.)

Shatar was first introduced to Equitybuild in November 2016, when Ezri Namvar (one of Shatar's representatives) received an email from an EBF consultant soliciting investment on a property located at 7024 S. Paxton. (R.1537 at 177-78.) The same email contained information about Equitybuild's investment business generally, including that "[a]s with all other EBF notes, this private mortgage note [for 7024 S. Paxton] is fully secured by the Paxton property as collateral" and "lenders are further protected with a first lien position on the property." (*Id.*) In December 2016, Shatar requested additional detail relating to investing with Equitybuild, asking about the "properties we [are] looking at, and the amount of the loans," as well as

confirmation that Equitybuild's "refinancing of already closed deals are allowed and kosher," having "become aware of [Equitybuild's] business structure" and "assuming your previous deals have been closed with crowdfunding investors." (*Id.* at 179.) In response, Shaun Cohen indicated "[o]n all refinances we send out rollover documents to our lenders asking them if they would like their funds back or if they would like to rollover their funds into a new deal," offering samples of such documents. (*Id.* at 181.) Tyler DeRoo also responded, attaching the sample documents Cohen offered, including a template note, mortgage, and servicing agreements. (*Id.* at 180.) DeRoo further referenced "4 buildings we wish to finance," but only named 7024 S Paxton specifically. (*Id.*)

Discussions concerning 7749 S. Yates and 5450 S. Indiana, specifically, began in March 2017. On March 7, 2017, DeRoo emailed Shatar detailing anticipated closing dates and purchase prices for the two properties. (R.1537 at 248.) By March 14, 2017, Shatar and Equitybuild were finalizing the loan paperwork for the Yates and Indiana loans. (*Id.* at 250-55.) During those discussions, Equitybuild's

outside counsel (Rock Fusco & Connelly, LLC) indicated the 7749 S. Yates property purchase transaction had already closed. (*Id.*)

By the end of March 2017, Shatar and Equitybuild were preparing the loan closing documents for the 7749 S. Yates and 5450 S. Indiana loan. (R.1602-1 at 168-69.) During that exchange, an employee for the title insurance company indicated Equitybuild was receiving $86,000 from the loan closing. (*Id.* at 168.) Shatar responded "I thought the borrowers are putting over 1.5 mil in to close the purchases[.] Can someone explain this 2 me?" (*Id.*) Loan closing documents ultimately confirm Equitybuild's special-purpose entity for the loan received approximately $100,000 from the transaction. (R.1587-7 at 3.) On March 30, 2017, Equitybuild executed mortgages on both 7749 S. Yates and 5450 S. Indiana in favor of Shatar's beneficiaries for $3,600,000. (R.1562-2, 1562-3.) The mortgages, as well as Shatar's loan documents, also confirm Shatar is entitled to interest and certain fees, including attorney fees, in addition to the principal of its loan. (*See* R.1562-2, 1562-3, Ex. 11.) The loan documents further confirm Equitybuild was granting first lien positions on both properties to Shatar. (*See, e.g.,*

R.1562-2 at ¶ 19.8; R.1562-3 at ¶ 19.8.) Shatar's mortgages for the

Yates and Indiana properties were recorded on April 4, 2017. (*Id.*)

## II.    Proceedings Before The District Court

On August 15, 2018, the U.S. Securities and Exchange

Commission ("SEC") filed a complaint alleging Defendants Jerome and

Shaun Cohen, through their companies, Equitybuild and EBF, engaged

in a scheme to defraud investors in connection with real estate

investments on the South Side of Chicago, including the five previously

described properties. (R.1.) The SEC's complaint documents the lies the

Equitybuild Defendants, including the Cohens, told and facts they

intentionally withheld to execute their scheme. (*Id.*[2]) On the same day

---

[2] *See, e.g.*, (R.1 at ¶ 1 ("Defendants raised these funds by falsely promising safe investments, secured by income-producing real estate . . . ."); ¶ 3 ("Defendants falsely told investors that their impressive returns would be generated by profitable real estate."); ¶ 5 ("But Defendants concealed from new investors that most of the properties supposedly being acquired and renovated by new investor proceeds were the very same properties 'securing' the investments of earlier investors."); ¶ 7 ("On the brink of their scheme collapsing, Defendants recently started coming clean about their financial distress and inability to repay investors through revenue-producing real estate. But Defendants limited these disclosures only to earlier investors whose interest payments Defendants could no longer afford to make."); ¶ 37 ("Defendants' representations that they made money by keeping the difference between the mortgage payments of third-party purchasers and the Note investors' interest payments were false and misleading.");

the SEC filed its complaint, the SEC also filed an emergency motion for a temporary restraining order and "conduct-based injunction," justifying the need for such relief:

> Defendants' violations have gone unabated for many years, and will continue to do so absent an injunction. Indeed, by virtue of Defendants' customary business activities, their fraudulent securities offering remains ongoing. Rather than recognize their own culpability or provide assurances against future violations, Defendants currently prey on unwitting investors.

(R.4 at 15.)

The SEC further moved to appoint a receiver "to remove Defendants' control over investor funds, to secure the real estate and other assets obtained with investor proceeds, and to ultimately recompense the defrauded investors" (R.3), which the District Court granted on August 17, 2018 (R.14). On February 9, 2021, the District Court further issued an order establishing a claims resolution process. (R.941.) Pursuant to that process, the properties at issue were

---

¶ 41 ("Defendants deceived investors by falsely representing that the properties securing the Notes were profitable investments that generated positive cash flows."); ¶ 45 ("Defendants never told investors that they were relying on fresh investor funds . . . to finance the interest payments.")

organized into ten groups "to allow for the resolution of a manageable number of claims in each proceeding." *Id.* at 2.

The second group—"Group 2"—included the two properties at issue in this matter. On June 20, 2024, after reviewing position papers from Shatar, the Individual Investors, and the Receiver,[3] the District Court ruled that the Individual Investors had priority to the funds liquidated by a receiver's sale of 7749 S. Yates and 5450 S. Indiana. (A01-A43.) The District Court recognized that Shatar's mortgages for the two properties were recorded on April 4, 2017—almost three months before the Individual Investors' mortgages were recorded on June 23, 2017. (A07-08.) Nevertheless, as to 7749 S. Yates, the District Court concluded that Namvar, one of Shatar's principals, could "be charged with knowledge of an existing lien on 7749 S. Yates, so the Individual Investors' [Yates] lien takes priority over Shatar's [Yates] mortgage." (A32.)

As to 5450 S. Indiana, the District Court acknowledged that "there was no signed mortgage in favor of the Individual Investors at the time

---

[3] The SEC also submitted a position paper regarding Group 2, but took no position on the Yates and Indiana properties. (*See* R.1556.)

that Shatar made its loan to Equitybuild, and received and recorded its mortgage against the property." (A33.) The District Court then concluded that the Individual Investors had "equitable mortgages in 5450 S. Indiana," and that Shatar "is charged with knowledge of the Individual Investors' equitable mortgages in 5450 S. Indiana," such that Shatar's mortgage "takes a second-place position." (A34-36.)

The District Court also determined, as a general matter, that no secured claimants could recover any form of interest, fees, penalties or costs associated with their claims. (A17-18) Relatedly, the District Court "approve[d] of the Receiver's proposed net loss distribution plan," predicated on the Receiver's disclosure of avoidance claims, though no individual examination of whether Shatar's loans qualify as "Ponzi" scheme transactions had occurred. (A20.)

The District Court concluded its order with an instruction to the Receiver to "prepare proposed distribution orders consistent with" the District Court's opinion. (A43.) On July 15, 2024, the District Court entered an order disbursing the proceeds from the Group 2 properties, in accordance with its June 20, 2024 Priority Order. (*See* A44.)

## SUMMARY OF THE ARGUMENT

Shatar recorded its mortgages for 7749 S. Yates and 5450 S. Indiana almost three months before the Individual Investors recorded their mortgages for these same properties. By recording its mortgages first, Shatar attained priority and gave constructive notice of its liens to all others, including the Individual Investors. Further, at the time it recorded its mortgages, Shatar had no notice of the Individual Investors' mortgages.

The District Court erred in concluding otherwise. As to 7749 S. Yates, the District Court erred in finding that the Individual Investors' mortgage for 7749 S. Yates had priority over Shatar's already-recorded mortgage. Simply put, Shatar was not on inquiry notice that there were other investors who may have had a security interest in 7749 S. Yates. The information the District Court highlighted, much of which is abstract business information not actually tied in any way to that property, does not provide the "clear proof" required to render Shatar on inquiry notice.

More importantly, even if Shatar was on inquiry notice as to 7749 S. Yates, in the specific factual circumstances of this case, a "diligent

inquiry" at the time Shatar closed its loan would never have revealed the Individual Investors' mortgage for that property. The District Court erred in failing to meaningfully consider the real world impact of the fact that the very people Shatar would have reached out to at Equitybuild in conducting such an inquiry would never have simply admitted that the Individual Investors had any interest in 7749 S. Yates, much less provided Shatar with the names of such individuals so they could be contacted for verification. As this Court, the SEC, the District Court, and the Receiver all recognized, Equitybuild's "entire business model operated to purposefully obfuscate responsibility and ownership," and its personnel "ma[de] false or misleading statements of fact (or omitting to disclose material facts) to the SEC and to prospective private and institutional lenders." *See SEC v. EquityBuild, Inc.*, 101 F.4th 526, 533 (7th Cir. 2024); *Duff v. DeRoo, et al.*, 22-cv-04336 (N.D. Ill.), Dkt. 1, at ¶ 7.

The District Court also erred in finding that the Individual Investors' mortgages have priority over Shatar's mortgage in 5450 S. Indiana. As an initial matter with respect to 5450 S. Indiana, the District Court erred in concluding that the Individual Investors had

equitable mortgages for this property prior to Shatar's mortgage being recorded. Equitybuild did not own or have any interest in 5450 S. Indiana when it provided the materials to the Individual Investors—the hallmark of equitable mortgages under Illinois law—relied on by the District Court to find the existence of such equitable mortgages. Further, Equitybuild did not use any of the money it received from the Individual Investors to purchase 5450 S. Indiana. Instead, Equitybuild used Shatar's funds to purchase 5450 S. Indiana in March 2017, and, thereafter, executed its mortgage with Shatar prior to executing its mortgages with the Individual Investors. Thus, there were no mortgages, equitable or otherwise, for which Shatar could be on inquiry notice.

Even if the Individual Investors did have equitable mortgages in 5450 S. Indiana, the District Court further erred in concluding that Shatar was on inquiry notice as to the Individual Investors' interest in 5450 S. Indiana. All of the same points demonstrating Shatar was not on inquiry notice for 7749 S. Yates apply with equal, if not greater, force to 5450 S. Indiana. Indeed, Shatar had even less of a reason to "think twice" with respect to the 5450 S. Indiana transaction because the

record confirms Shatar knew that it was providing money to purchase that property in the first instance, through escrow, and directly to the third-party seller of 5450 S. Indiana, which was unaffiliated with Equitybuild.

Further, as is the case with 7749 S. Yates, any diligent inquiry regarding 5450 S. Indiana would never have revealed the Individual Investors' mortgages for that property. We know now, based on the observations of this Court, the SEC, the District Court and the Receiver, that Equitybuild would have told Shatar whatever lies they needed to or provide them with whatever documentation necessary to address any further inquiry, without disclosing their scheme.

Finally, the District Court further erred in limiting Shatar's recovery to "its principal using a net loss calculation method." (A37.) Specifically, the District Court erred, first, in limiting Shatar's recovery to its principal, because Shatar—the secured claimant holding first-in-time mortgages, recorded without notice—is contractually entitled to recover the entirety of its secured claims—as specified in its mortgages and loan documents. The District Court further erred in applying a "net loss" calculation to Shatar's recovery, because the Receiver has not met

its burden in establishing the "Ponzi scheme" presumption necessary to trigger application of the "net loss" rule.

## STANDARD OF REVIEW

Shatar appeals the District Court's Disbursement Order, which approved the Receiver's proposed plan of distribution based on the District Court's priority order. Orders of this genre are reviewed under an abuse of discretion standard. *See S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 332-33 (7th Cir. 2010). Legal questions in receivership proceedings, however, are subject to de novo review. *SEC v. EquityBuild, Inc.*, 101 F.4th 526, 530 (7th Cir. 2024). A clear error of fact or law is tantamount to an abuse of discretion. *Flinch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023).

## ARGUMENT

I. **The District Court Erred in concluding that the Individual Investors' mortgages have priority over Shatar's mortgages.**

Shatar recorded its mortgages for 7749 S. Yates and 5450 S. Indiana on April 4, 2017. The Individual Investors recorded their mortgages for these same properties almost three months later, on June 23, 2017. By recording its mortgages first, Shatar attained priority and gave constructive notice of its liens to all others, including the

Individual Investors. Further, at the time it recorded its mortgages, Shatar had no notice of the Individual Investors' mortgages. Thus, for the reasons explained below, Shatar respectfully submits that the District Court erred in concluding that the Individual Investors' mortgages have priority over Shatar's mortgages for 7749 S. Yates and 5450 S. Indiana.

A.  **The District Court erred in finding that the Individual Investors' mortgage has priority over Shatar's mortgage in 7749 S. Yates.**

Shatar—as the first to file its mortgage lien on 7749 S. Yates of record, without notice of the Individual Investor's mortgage in 7749 S. Yates—holds a first position secured interest in 7749 S. Yates, and the District Court erred in concluding otherwise. Specifically, the District Court erred in finding that Shatar was on inquiry notice that there were other investors who may have had an interest in 7749 S. Yates, and that a diligent inquiry, given the factual circumstances of this case, would have disclosed that other investors already had a mortgage against 7749 S. Yates (much less 5450 S. Indiana, explained in greater detail *infra*), such that the Individual Investors' lien takes priority over Shatar's mortgage.

1. **The District Court erred in concluding that Shatar was on inquiry notice that there were other investors who had an interest in 7749 S. Yates.**

While the first person to record a deed or mortgage has priority in Illinois, that is only the case if that person recorded his or her lien without notice of another party's lien, equitable or otherwise. *See In re Bruder*, 207 B.R. 151, 156 (N.D. Ill. Bankr. 1997). As the District Court explained, "[n]otice can be actual or constructive." (A28.) "[C]onstructive knowledge is knowledge that the law imputes to the purchaser." *Id.* (quoting Almazon *v. 7354 Corp.*, 2023 IL App (1st) 220794, ¶ 25). One form of constructive notice is "inquiry notice." (*Id.*) In Illinois, "a purchaser is placed on 'inquiry notice'" when the information available to the purchaser or mortgagee would cause a reasonable person "to think twice about completing the transaction." *Stump v. Swanson Dev. Co. LLC*, 2014 IL App (3d) 110784 ¶ 104. If a purchaser is on inquiry notice, then that purchaser is "chargeable with knowledge of facts that a diligent inquiry would have disclosed." *Peoples Nat'l Bank, N.A. v. Banterra Bank*, 719 F.3d 608, 612 (7th Cir. 2013).

The District Court relied on several pieces of information to determine that Shatar was on inquiry notice that there were other investors who had an interest in 7749 S. Yates. Specifically, the District Court highlighted:

● An email Shatar received regarding a different property, stating that Equitybuild Finance pooled money from individual investors to invest in a specific property and that it represented to those investors, "[a]s with all other EBF notes," they would have a "first lien position on the property." (R.1679 at 30.)

● Namvar's awareness that Equitybuild Finance was pooling smaller investors' loans to buy property, generally (but not 7749 S. Yates or 5450 S. Indiana specifically). (*Id.*)

● Namvar's receipt of Equitybuild's template note, mortgage, and servicing agreements that it provided to investors generally, which did not mention specific properties, let alone 7749 S. Yates or 5450 S. Indiana. (*Id.* at 31.)

● Shatar's knowledge that Equitybuild had already purchased 7749 S. Yates, so Shatar's loan was not being used to purchase the property. (*Id.*)

- Shatar's knowledge that Equitybuild was going to receive money from the closing of Shatar's loan, despite previously believing that Equitybuild had to bring money to the table to close the deal for 5450 S. Indiana and 7749 S. Yates. (*Id.*)

According to the Court, a "prudent person would have been alarmed to find out one of the properties which was supposed to be purchased with her loan had already been purchased—it suggests that the money for the purchase was supplied by someone else." (R.1679 at 31.) The Court further found that "[a] reasonably prudent person who believed that Shatar's loan was going to be used to purchase 5450 S. Indiana and pay off the purchase loan for 7749 S. Yates, *and* that Equitybuild needed to put up more money to complete the transaction, would be alarmed to learn that Equitybuild was actually getting money out of the transaction." (*Id.* at 31-32 (emphasis in original).)

Shatar respectfully submits that the District Court erred in concluding that Shatar was on inquiry notice that there were other investors who had an interest in 7749 S. Yates. As an initial matter, it is critical to note that at the time Shatar closed on its mortgage, the record index for 7749 S. Yates showed no prior liens and Equitybuild

represented in the loan documents that it was granting first lien positions on both properties to Shatar. (*See, e.g.*, R.1562-2 at ¶ 19.8; R.1562-3 at ¶ 19.8; *see also* R.1562-1 at 117:8-19.).

Additionally, the information the District Court highlighted, much of which is abstract business information, not actually tied *in any way* to the 7749 S. Yates property (or 5450 S. Indiana for that matter), does not provide the "clear proof" required to render Shatar on inquiry notice that there were other investors who had an interest in 7749 S. Yates. *U.S. Bank Nat'l Ass'n v. Villasenor*, 2012 IL App (1st) 120061, ¶ 59; see *also Krueger v. Oberto*, 309 Ill. App. 3d 358, 368 (2d Dist. 1999) ("It is well established that the burden of proof is upon the person charging notice.").

To start, the District Court acknowledged that the first email it relies on in finding Shatar was on inquiry notice related to a completely different property. (A30.) Additionally, the boilerplate materials Namvar received from Equitybuild in a subsequent email (R.1537 at 203-246), which Namvar did not read (R.1562-1 at 116-17), would not have told him anything about whether individual investors, or anyone else for that matter, had a mortgage with respect to 7749 S. Yates or

any other property. Indeed, those materials were blank, template documents. (R.1537 at 203-246.)

The fact that Equitybuild had already purchased 7749 S. Yates, such that Shatar's loan was not being used to purchase the property in the first instance, did not put Shatar on inquiry notice, either. Equitybuild promised Shatar a first lien position, regardless of whether Equitybuild had already purchased the property in the first instance. (*See* R.1562-2, 1562-3.) Further, Namvar explained that there were specific steps Shatar would take in the event a loan was *not* a purchase money loan—and those steps were taken here. Specifically, Namvar testified that if the loan was not a purchase money loan, he would have performed additional diligence in the form of viewing the property, so as to "determin[e] that the value was there." (R.1562-1 at 61-62.) Namvar's friend carried out this assessment for Shatar as to both properties. (*Id.*) Finally, the fact that Equitybuild received a relatively modest sum of money from the 5450 S. Indiana closing, which was a purchase money mortgage transaction, did not put Shatar on inquiry notice that there were Individual Investors with a mortgage on 7749 S. Yates.

This evidence does not rise to the level of "clear proof" required to establish inquiry notice. Not only are the aforementioned facts largely unrelated to 7749 S. Yates, they do not undercut Shatar's understanding that it would be receiving a first lien position as it was promised in the loan documentation, as was reflected in the land records, and as it understood throughout the transaction process, through loan closing. Thus, the District Court erred in concluding that Shatar was on inquiry notice as to the Individual Investors' mortgage for 7749 S. Yates.

> 2. **The District Court erred in concluding that a diligent inquiry would have revealed the Individual Investors' mortgages for 7749 S. Yates.**

Even if Shatar was on inquiry notice as to 7749 S. Yates, Shatar is only "chargeable with knowledge of facts that a diligent inquiry would have disclosed." *Peoples Nat'l Bank, N.A. v. Banterra Bank*, 719 F.3d 608, 612 (7th Cir. 2013). As explained below, in the specific factual circumstances of this case, a "diligent inquiry" at the time Shatar closed its loan would never have revealed the Individual Investors' mortgage for 7749 S. Yates.

The District Court concluded that "an inquiry into the relationship between the Individual Investors and Equitybuild would have uncovered" what we now know: "that Equitybuild was [also] promising a first position lien to the Individual Investors and sending loan documents with mortgages to the Individual Investors upon accepting their money." (A30.) Specifically, the District Court explained that "[i]f a lender knew that his loan was being used to re-finance an existing loan, it is reasonable to ask for proof that the prior loan was paid off." (A32.) While Namvar "asked a general question about re-financing loans, but just received blank copies of rollover forms," the District Court noted that "[t]here is nothing in the record to suggest that Namvar asked how Equitybuild purchased 7749 S. Yates or for proof that the prior loan on 7749 S. Yates had been paid off." *Id.* According to the District Court, "[i]f he had, he would have learned that the original loan was made by a group of smaller investors and that there were no rollover documents for those investors." *Id.* Moreover, the District Court concluded that if "Namvar had spoken with the Individual Investors, he would have learned that they believed they had a first position lien in

the property and that a signed mortgage granting a lien to the Individual Investors already existed." *Id.*

Respectfully, the District Court erred in its assessment of "[t]he facts that Shatar could have learned through a diligent inquiry." *Id.* Pursuant to Illinois law, "what further inquiry . . . may have shown," is necessarily a fact driven, case specific determination that cannot be made in the abstract. *Stump*, 2014 IL App (3d) 110784, ¶ 117. But the District Court's analysis nowhere acknowledges, much less meaningfully considers the real world impact of the facts underlying the observations of this Court, the SEC, the District Court itself, and the Receiver, regarding Equitybuild and its personnel. These facts demonstrate that any "diligent inquiry" Shatar would have conducted would not have revealed that "other investors already had a mortgage against 7749 S. Yates." (A32.)

Equitybuild was operated by professional liars, committed to doing whatever necessary to keep their scheme going. As this Court recently noted "the Cohens' entire business model operated to purposefully obfuscate responsibility and ownership." *SEC v. EquityBuild, Inc.*, 101 F.4th 526, 533 (7th Cir. 2024). Similarly, the

SEC's complaint not only documents the litany of lies the Cohens told and facts they intentionally withheld to execute their scheme, it highlights steps the Cohens took specifically "*to keep the scheme afloat.*" (*See* R.1 at 2) (emphasis added).  Indeed, the SEC sought an emergency motion for a temporary restraining order and "conduct-based injunction" against the Cohens and Equitybuild due to the persistent and ongoing nature of their deceptive conduct:

> "Defendants' violations have gone unabated for many years, and *will continue to do so absent an injunction*. Indeed, by virtue of Defendants' customary business activities, *their fraudulent securities offering remains ongoing*. Rather than recognize their own culpability or provide assurances against future violations, *Defendants currently prey on unwitting investors*.

(R.4 at 15 (emphasis added).)

Moreover, and of particular relevance here given the District Court's assessment of what Shatar would have supposedly learned if it had "asked how Equitybuild purchased 7749 S. Yates or for proof that the prior loan on 7749 S Yates had been paid off," (A32), is the District Court's own recognition of Equitybuild's efforts to conceal their fraud in analyzing the question of Group 1 priority. (*See* R.1386.) Specifically, the District Court explained that the releases BC57 received from the

Cohens "were signed by Equitybuild Finance and Shaun Cohen instead of the individual-investor mortgagees" even though they "lacked the authority to do so." (*Id.* at 14.)

Just as importantly, the Receiver sued Shatar's other contact at Equitybuild, Tyler DeRoo, accusing him of "play[ing] [an] integral role[] in the perpetuation of the EquityBuild Ponzi scheme by, among other things: . . . *making false or misleading statements of fact (or omitting to disclose material facts) to the SEC and to prospective private and institutional lenders*." *Duff v. DeRoo, et al.*, 22-cv-04336 (N.D. Ill.), Dkt. 1, at ¶ 7 (emphasis added). The Receiver similarly noted that DeRoo "proposed a plan to avert the imminent stream of defaults *by refinancing the properties without the knowledge or consent of some investors*, and converting their debt to equity." (*Id.* at ¶ 27 (emphasis added).)

The above observations underscore the specific circumstances of this case that should be taken into account in determining what facts Shatar would have learned pursuant to a diligent inquiry. More pointedly, these observations demonstrate that Equitybuild would never have simply admitted that the Individual Investors had an

unrecorded mortgage against 7749 S. Yates, much less provided Shatar with the names of such individuals so they could be contacted. There was no means for Shatar to determine who the Individual Investors were, let alone obtain their contact information, *other than through Equitybuild*. With Equitybuild having promised Shatar a first lien position in order to get Shatar's loan funds, there is no realistic argument that Equitybuild would have admitted their scheme and acknowledged the Individual Investors existed, let alone given out their names and contact information. Instead, just as they did in every other instance, Equitybuild would have continued "to purposefully obfuscate responsibility and ownership." *EquityBuild, Inc.*, 101 F.4th at 533. We know now, based on the observations of this Court, the SEC, the District Court and the Receiver, that Equitybuild would have told Shatar whatever lies they needed to tell them or provide them with whatever documentation necessary to address any further inquiry, *without disclosing their scheme*. Critically, this is not speculation. It is based on Equitybuild's actual conduct.

Equitybuild's actual conduct further undermines the District Court's reliance on *Stump* in shaping the contours of what a diligent

inquiry might look like and the information that would result from such an inquiry. (A29.) Specifically, the District Court analogized the inquiry in *Stump* to the hypothetical inquiry Shatar could have made to Equitybuild. (*Id.*) But, unlike in *Stump*, where the prospective lender could have inquired with the plaintiff—someone unaffiliated with the fraud—here the Individual Investors were unknown to Shatar (and not of record in any way), and any inquiry to **Equitybuild** would never have revealed the competing mortgage liens.

In *Stump*, the Illinois Appellate Court considered, among other things, whether inquiry notice could apply to an equitable vendor's lien. 2014 IL App (3d) 110784. As relevant here, the court considered "what further inquiry by the bank may have shown" in the context of inquiry notice. *Id.* at ¶ 117. The court explained that had the bank "spoke[] with Stump"—an individual unaffiliated with the *Stump* fraudsters and unaware of the defendants' fraud scheme—"or otherwise followed up on any of the information Stump now claims was available to it, it would have found nothing that would have disclosed Stump's vendor's liens." *Id.* The court concluded that had the bank questioned Stump, "[t]here would have been nothing in this discovery to cause a prudent lender to

suspect the existence of vendor's liens or to refuse to make the loans." *Id.* at ¶ 118. Specifically, Stump would have reported "a plan that was apparently being carried out as the parties to the development projects had envisioned." *Id.*

By contrast, as explained herein, Shatar's points of contact were the Equitybuild defendants themselves, individuals focused on "purposefully obfuscat[ing] responsibility and ownership," *EquityBuild, Inc.*, 101 F.4th at 533, who made "false or misleading statements of fact (or omitt[ed] to disclose material facts) to the SEC and to prospective private and institutional lenders." *See Duff v. DeRoo, et al.*, 22-cv-04336 (N.D. Ill.), Dkt. 1, at ¶ 7. As such, the facts underlying *Stump* are so fundamentally different than those of this case that the Illinois Appellate Court's assessment of what a "prospective lender" would have learned in the circumstances of that case are not relevant.

Indeed, the facts of Equitybuild's particular fraud—and Shatar's encounters with Equitybuild's fraudulent enterprise in making its loan—are unusual and guiding precedent is limited. Nevertheless, the Sixth Circuit's decision in *In re First Independence Capital Corp.,* 181 Fed. Appx. 524 (6th Cir. 2006),  provides a persuasive and analogous

example of the importance of accounting for the fact-specific circumstances of a given situation in determining what information would actually be learned from an inquiry like the one the District Court considered in this case.

First Independence was a company that had declared bankruptcy and sought to recover fraudulent transfers from Merrill Lynch. In each instance, First Independence made the transfers at issue to Michael and Sandra Baumhaft, who owned First Independence, acted as the company's president and vice-president respectively, were the company's only two directors, and Sandra Baumhaft was the company's sole shareholder. Thereafter, the Baumhafts presented checks to Merrill Lynch, requesting that the funds be deposited into their personal brokerage account. The bankruptcy court held that Merrill Lynch, a subsequent transferee, took the fraudulent transfers for value, in good faith, and without knowledge of the transfers' voidability, such that, pursuant to 11 U.S.C. § 550(b)(1), First Independence could not recover the transfers from Merrill Lynch.

On appeal, First Independence argued, *inter alia*, that it should recover the transfers because Merrill Lynch "possessed the requisite

knowledge of the transfers' voidability." *Id.* In particular, First

Independence contended that Merrill Lynch "should have questioned

the propriety of the transfers," and that certain facts, including its own

"check-acceptance policy," "placed Merrill Lynch on notice of the

transfers' illegitimacy." *Id.*

The Sixth Circuit disagreed and affirmed the bankruptcy court's

holding. The Court noted that "[i]f a transferee possesses knowledge of

facts that suggest a transfer may be fraudulent, *and further inquiry by*

*the transferee would reveal facts sufficient to alert him that the*

*property is recoverable*, he cannot sit on his heels, thereby preventing a

finding that he has knowledge." *Id.* at 529 (citation omitted) (emphasis

added). However, the appellate court concluded that "the facts

surrounding the Baumhafts' deposits would not lead a reasonable

person to believe that the transfers were voidable." *Id.* Specifically, the

Court first agreed with the bankruptcy court that "[t]here was a range

of legitimate scenarios under which the Baumhafts were entitled to

funds from [First Independence] for their own personal use." *Id.* Second,

and of particular relevance here, the Sixth Circuit explained:

> [A]s the bankruptcy court noted, "[t]here was no
> one other than the Baumhafts themselves to ask

whether these funds were paid for a legitimate purpose." *Any inquiry into the legitimacy of the transfer would have been obviously circular in this case because the party seeking to use the funds for his own benefit was also the only party to whom the bank could make inquiry*.

*Id*. at 529-30 (emphasis added). Accordingly, the Sixth Circuit held that Merrill Lynch "did not know 'facts that would lead a reasonable person to believe that the property transferred was recoverable,' . . . *and any inquiry that it conducted into whether First Independence actually authorized the transfers would have been patently futile*." *Id*. at 530 (citation omitted) (emphasis added).

While the Sixth Circuit's analysis was conducted in a different legal context than the "diligent inquiry" assessment at issue here, the Court's observation regarding the "patently futile" nature of any inquiry into First Independence's transfers based on the real world impact of the Baumhafts' role at First Independence underscores the error in assuming Equitybuild would have disclosed the Individual Investors' competing interests to Shatar. As explained above, the observations of this Court, the SEC, the District Court itself and the Receiver all

demonstrate that any "diligent inquiry" by Shatar would have been "circular" and "patently futile."[4] *Id.*

This Court has similarly recognized the importance of accounting for the fact-specific circumstances of a given situation in determining what information would actually be learned from an inquiry. In *In re Equip. Acquisition Res., Inc.*, 803 F.3d 835 (7th Cir. 2015), the plan administrator for Equipment Acquisition Resources ("EAR"), Brandt, sought to avoid and recover fraudulent transfers made to the Horseshoe Casino. *Id.* at 837. Brandt alleged that EAR made fraudulent transfers to Sheldon Player, the original owner of EAR, and that Player used

---

[4] Courts in other jurisdictions have employed this inquiry futility concept in the context of bona fide purchaser analyses in real property disputes. *See, e.g., Wyoming Bank & Trust v. Haught*, 76 P.3d 301 (Wyo. 2003) (reversing lower court on issue of inquiry notice because diligent inquiry would never have revealed existence of liens on real estate tracts despite bank's knowledge of certain facts indicative of mortgagee's intent to evade creditors where liens were unrecorded and obtained by settlement of a lawsuit, the filings and settlement agreement of which did not refer to the tracts at issue). And other courts consider futility in assessing the existence of inquiry notice in other contexts. *See, e.g., Littlefield v. Bamberger*, 32 P.3d 615 (Colo. App. 2001) (holding plaintiffs were not on inquiry notice that a strip of land was a public road where a reasonable search prior to purchase would have been futile because neither the previous owner, plaintiffs' neighbors, nor a map in the county plat book would have provided information leading to that fact).

these funds at Horseshoe. *Id.* The District Court granted Horseshoe's motion for summary judgment pursuant to § 550(b)(1)'s good faith defense. *Id.*

On appeal, Brandt challenged, *inter alia*, whether Horseshoe took the transfers "without knowledge of the voidability of the transfer avoided." *Id.* at 840. Brandt argued that Horseshoe was on inquiry notice that these transfers were voidable, pointing to certain "red flags," which he argued should have alerted Horseshoe that it was receiving fraudulent transfers. *Id.* at 841. This Court was "not convinced that these red flags [we]re sufficient to impose a duty on Horseshoe to investigate transfers from EAR to Player." *Id.* Crucially, this Court further explained that "[e]ven assuming that Horseshoe was put on inquiry notice of a fraudulent transfer, a reasonable inquiry would have turned up nothing indicating that the transfers were voidable." *Id.* at 842. Specifically, this Court observed that "[a]t the time of these transfers, EAR's creditors and advisors, who had complete access to EAR's books and records, were unaware of the ongoing fraud and financial distress." *Id.* Rather, "[i]t took FTI Consulting, a forensic accounting firm, nearly three months to discover the fraud." *Id.*

Like the Sixth Circuit's analysis in *First Independence*, this Court's analysis in *In re Equip. Acquisition Res. Inc.*, accounted for the specific circumstances of the given situation in determining what information would actually be revealed from a reasonable inquiry— something the District Court did not consider. The facts actually imputed to Shatar should be based on the reality of the circumstances of this case, not hypothetical possibilities that conflict with the documented behaviors of the parties involved. Shatar is only "chargeable with knowledge of facts that a diligent inquiry would have disclosed," *Peoples Nat'l Bank, N.A.*, 719 F.3d at 612, and those facts demonstrate that a diligent inquiry through Equitybuild—Shatar's only source of information about and sole connection to the Individual Investors—would not have disclosed that the Individual Investors had an unrecorded mortgage for 7749 S. Yates.

**B.** **The District Court erred in finding that the Individual Investors' mortgage has priority over Shatar's mortgage in 5450 S. Indiana.**

The District court further erred in concluding that the Individual Investors have priority over Shatar's secured interest in 5450 S. Indiana. Specifically, the District Court erred in finding that the

Individual Investors had equitable mortgages in 5450 S. Indiana prior to Shatar's mortgage being recorded, that Shatar was on inquiry notice with respect to such equitable mortgages, and that a diligent inquiry, given the factual circumstances of this case, would have disclosed the equitable mortgages, such that those equitable mortgages take priority over Shatar's mortgage.

> 1.    **The District Court erred in concluding that the Individual Investors had equitable mortgages in 5450 S. Indiana.**

The District Court recognized that "there was no signed mortgage" for 5450 S. Indiana "in favor of the Individual Investors at the time that Shatar made its loan to Equitybuild, and received and recorded its mortgage against the property." (A33.) Nevertheless, the District Court found that the Individual Investors "had equitable mortgages in 5450 S. Indiana," prior to Shatar's mortgage being recorded in April 2017, despite the Individual Investors never raising this argument and the Receiver mentioning it only in passing for the first time in surresponse.[5]

_____

[5] Shatar requested leave to file a surreply to the new arguments raised in the Receiver's surresponse brief. The District Court denied Shatar's request but noted it would request surreply if necessary. (R.1614.)

(*Id.*; *see also* R.1602-1 at 8-9.) In so finding, the Court pointed to the fact that Equitybuild solicited investments from Individual Investors as early as December 2016, and returned a signed servicing agreement and unsigned mortgage and promissory note dated February 6, 2017 to these investors. (*Id.*) The Court found these documents to be "clear and convincing evidence that the parties intended that 5450 S. Indiana secure the Individual Investors' mortgage." (A34-A35.) Shatar respectfully submits that the Court erred in finding the Individual Investors had equitable mortgages in 5450 S. Indiana.

Under Illinois law, an equitable mortgage "arises in a situation where money is loaned or credit given in reliance upon the security of property of the debtor but pledged by him in such manner as not to be enforceable as a mortgage at law." *Wilkinson v. Johnson*, 29 Ill. 2d 392, 398–99 (1963). "Equity intervenes in these cases for exactly the same reason which caused equitable relief in legal mortgage cases, *viz.*, to relieve from the forfeiture otherwise resulting if the grantee should refuse to reconvey on tender to him of the debt." *Hargrove v. Gerill Corp.*, 124 Ill. App. 3d 924, 930 (2nd Dist. 1984) (quoting *Wilkinson*, 29 Ill. 2d at 398-99). "A court may find an equitable mortgage when a

written agreement evinces an intent that 'the property therein described is to be held, given, or transferred as security for the obligation.'" (A33 (quoting *Hibernian Banking Ass'n v. Davis*, 295 Ill. 537, 543 (1920).)

Given the nature of and reasoning underlying equitable mortgages, Illinois case law demonstrates that equitable mortgages are typically found in instances where the party agreeing to provide the mortgage to secure the receipt of funds already owns or has an existing interest in the property being pledged. *See, e.g.*, *First Illinois Bank v Hans*, 143 Ill. App. 3d 1033 (2d Dist. 1986) (finding plaintiff possessed equitable mortgages in two parcels of land where defendants obtained two loans from plaintiff, assigning their existing equitable title to the two parcels to plaintiff as security for the two loans).

Illinois courts have also recognized, however, that an equitable mortgage can exist where a party pledging the underlying property in exchange for the receipt of funds does not yet actually own that property. In these instances, the party that provided the funds for the purchase of the property being pledged may be found to have a "springing" equitable mortgage after the property was in fact

purchased. The Illinois Appellate Court explained the concept of an equitable mortgage in this context:

> It has been held in a number of cases that where one advances money for the purpose of buying a specific tract of land, on the oral promise of the borrower to secure its repayment by a mortgage upon the property when title thereto is obtained, and, *after the conveyance has been procured by the use of the money*, the borrower refuses to execute the mortgage, equity will regard that as done which the borrower agreed should be done, and which ought to be done, and will treat the transaction as creating an equitable mortgage upon the land in favor of the lender.

*Boucek v. Pondelicek*, 259 Ill. App. 59, 63 (1st Dist. 1930) (emphasis added) (citing *Grigaitis v. Gaidauskis*, 214 Ill. App. 111, and others).

Importantly for purposes of this appeal, where Illinois courts have found a party to have such a "springing" equitable mortgage, the funds provided were in fact used to purchase the property being pledged. *See, e.g.*, *Grigaitis* (finding there to be an equitable mortgage where plaintiff loaned defendants $1,500 to purchase real estate, defendants promised to either repay the loan or execute and deliver a mortgage on the property to secure the loan, and defendants used the $1,500 to purchase the property); *Boucek*, 259 Ill. App. at 63-64 (finding there to be an equitable mortgage after plaintiff loaned defendant's husband $2,000 to

purchase real estate, defendant's husband promised to execute a note for $2,000 and a mortgage on the property to secure the same, and defendant's husband used the $2,000 to purchase the land, of which defendant and her husband took title as joint tenant); *Silas v. Robinson*, 131 Ill App. 3d 1058 (1st Dist. 1985) (affirming trial court's finding of an equitable mortgage where the money Silas loaned to Robinson was used to "purchase the property" at issue).

As noted above, in finding that the Individual Investors had equitable mortgages in 5450 S. Indiana, the District Court relied on written materials Equitybuild provided to the Individual Investors, dated February 6, 2017, "stat[ing] that the debt would be secured by a mortgage in 5450 S. Indiana." (A34.) But, unlike an Illinois equitable mortgage, Equitybuild did not own or have any interest in 5450 S. Indiana when it provided those materials to the Individual Investors. Further, unlike an Illinois "springing" equitable mortgage, Equitybuild did not use any of the money it received from the Individual Investors to purchase 5450 S. Indiana. Instead, Equitybuild used *Shatar's* funds to purchase 5450 S. Indiana in March 2017, with Shatar using escrow to deliver the funds directly to the third party seller. (*See* R.1587-7).

Further, Equitybuild executed its mortgage with Shatar prior to executing its mortgages with the Individual Investors. As such, the Individual Investors did not have equitable mortgages—"springing" or otherwise—in 5450 S. Indiana.

Finally, in the event this Court were to determine that a "springing" equitable mortgage could, in theory, exist here, despite the Individual Investors' funds not going to the purchase of 5450 S. Indiana, Shatar respectfully submits that there is no support in the law or equity for giving such a mortgage priority over Shatar's actual, recorded purchase money mortgage, the funds for which were sent through escrow directly to the third party seller of the property (the facts of which are discussed below). Indeed, absent Shatar's funding to purchase the property, there would be nothing to which the Individual Investors' equitable mortgages could attach.

### 2. The District Court erred in concluding that Shatar was on inquiry notice that there were other investors who had equitable mortgages in 5450 S. Indiana.

Because the Individual Investors did not have equitable mortgages in 5450 S. Indiana, this Court need not address inquiry notice—Shatar has priority with its recorded purchase-money

mortgage. However, Shatar will briefly address why it respectfully submits the District Court erred in concluding that Shatar was on inquiry notice that there were Individual Investors with mortgages on 5450 S. Indiana.

The explanation provided *supra* for why Shatar was not on inquiry notice as to the Individual Investors' mortgage on 7749 S. Yates applies with even greater force to 5450 S. Indiana. Shatar knew that it was providing money to purchase 5450 S. Indiana at the outset of the transaction through loan closing. That is undisputed. And those funds went directly from Shatar's lenders, through escrow, to the third-party seller of 5450 S. Indiana, which was unaffiliated with Equitybuild. (*See* R.1587-7; R.1587 at 7, n.4 & n.5; R.1587-10.) This context demonstrates that Shatar would have had no reason to doubt that it was getting the first lien position it was promised, when it funded the purchase of the property by utilizing escrow wherein its funds went directly to a third-party seller. This is true regardless of whether Equitybuild was receiving approximately $100,000 as an "overdeposit to borrower" in connection with the transaction. (R.1587-7 at 3.) Thus, even if this Court were to find that the Individual Investors had equitable

mortgages in 5450 S. Indiana, Shatar was not on inquiry notice that there were Individual Investors with mortgages on 5450 S. Indiana.

> ### 3. The District Court erred in concluding that a diligent inquiry would have revealed the Individual Investors' equitable mortgages for 5450 S. Indiana.

The District Court concluded that Shatar was "charged with knowledge of the Individual Investors' equitable mortgages in 5450 S. Indiana." (A36.) In reaching this conclusion, the District Court posited that "had Shatar inquired whether Equitybuild was getting money from another source to invest in 5450 S. Indiana, the documents existing at that time included the promissory notes, mortgages, and servicing agreements granting the Individual Investors an interest in 5450 S. Indiana." (A36.) Shatar respectfully submits that the District Court erred in reaching this conclusion.

For the reasons provided *supra* as to 7749 S. Yates, a diligent inquiry as to 5450 S. Indiana, which would consist of reaching out to individuals at Equitybuild, who "purposefully obfuscate[d] responsibility and ownership," *EquityBuild, Inc.*, 101 F.4th at 533, and who made "false or misleading statements of fact (or omitt[ed] to disclose material facts) . . . to prospective private and institutional

lenders," *Duff v. DeRoo, et al.*, 22-cv-04336 (N.D. Ill.), Dkt. 1, at ¶ 7, would not have revealed the Individual Investors' equitable mortgages for that property. Thus, the District Court erred in finding that Shatar is charged with knowledge of the Individual Investors' equitable mortgages in 5450 S. Indiana and takes a second-place position to the Individual Investors' interest in the property.

## II. The District Court erred in denying Shatar's recovery of amounts Shatar is contractually entitled to as a secured claimant, and approving the Receiver's net loss distribution plan.

After concluding the Individual Investors had priority over Shatar as to both 7749 S. Yates and 5450 S. Indiana, the District Court ordered that Shatar "should recover its principal using a net loss calculation method" for any funds remaining in the 5450 S. Indiana account[6] after distribution to the Individual Investors. (A37.) The District Court's order contains two errors in this regard. First, the District Court erred in limiting Shatar's recovery to its principal. Shatar—the secured claimant holding first-in-time mortgages, recorded without notice as

---

[6] Distribution to the Individual Investors pursuant to the District Court's distribution order would exhaust the funds in both the 5450 S. Indiana bank account and the 7749 S. Yates bank account. (*See* R.1699, Exs. 2, 3.)

explained *supra*—is contractually entitled to recover the entirety of its secured claims as specified in its mortgages and loan documents, as a matter of law. Second, the District Court erred in applying a "net loss" calculation to Shatar's recovery, because the Receiver has not met its burden in establishing the "Ponzi scheme" presumption necessary to trigger application of the "net loss" rule.

## A. The District Court erred in limiting Shatar's recovery to its principal where Shatar is contractually entitled to complete recovery of its secured claim.

Shatar's mortgages and loan documents confirm that in addition to its outstanding principal, Shatar is entitled to pre- and post-Receivership interest, default interest, and other fees. (*See* R.1587 & 1562.) Despite these contractual rights, the District Court erroneously limited Shatar's recovery to its principal.

While a district court enjoys broad discretion to fashion remedies in federal receivership matters, it is well-established that a "receiver appointed by a federal court takes property subject to all liens, priorities or privileges existing or accruing under the laws of the State." *Marshall v. New York*, 254 U.S. 380, 385 (1920). The District Court noted, however, that "the law of equitable receiverships does not require

a receiver to distribute the assets of the receivership estate in accordance with state law—instead the distribution plan should treat similarly situated claimants similarly." (A12.)

The District Court erred in disallowing the contract-based amounts to which Shatar, as the first-priority lienholder to both 7749 S. Yates and 5450 S. Indiana, is entitled in the name of equitable distribution. The United States Supreme Court has held that a court's equitable powers do not rise to the level of disallowing interest to a secured creditor in order to benefit unsecured creditors:

> [T]o the extent one debt is secured and another is not there is manifestly an inequality of rights between the secured and unsecured creditors, which cannot be affected by the principle of equality of distribution . . . and interest accruing after insolvency may not be withheld on account of that principle.

*Ticonic v. Nat. Bank v. Sprague*, 303 U.S. 406, 411-12 (1938) (describing difference between a personal claim against the free assets in the care of a receiver and a claim in rem against the security). A claim against secured assets "continues as a claim in rem against that same security." *Id.* The Tenth Circuit Court of Appeals has also held, in a receivership context, that a secured creditor is entitled to interest on its claim to the extent of its security, regardless of whether that interest accrues before

or after insolvency. *See Grubb v. Fed. Deposit Ins. Corp.*, 833 F.2d 222, 226 n.2 (10th Cir. 1987).

At least one court has explicitly considered whether a court administering an equitable receivership has "general authority to ignore state law in the name of equity" in order to distribute receivership proceeds on a pro rata basis, rather than in accordance with state law priority rules. *In re Real Prop Located at [Redacted] Jupiter Drive*, No. 2:05-CV-01013-DB, 2007 U.S. Dist. LEXIS 65276 (Utah D. Ct. Jun. 7, 2007). The District Court discounted *Jupiter*— discussed in greater detail *infra*—however, stating that the District Court "disagree[d] that disallowing interest results in a preference of junior creditors over senior creditors . . . find[ing] that *Vanston*, *Duff*, and *Byers*," rather than *Jupiter*, "better articulate and apply the rules for distributing the assets of a federal equitable receivership." (A14.)

But *Vanston*, *Duff*, and *Byers* are distinguishable. While *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946), "has never . . . been legislatively or judicially overruled," it has been "superseded in the respects that section 506(b) provides." *In re Urban Communicators PCS Ltd. P'ship*, 379 B.R. 232, 252-53 (Bankr. S.D.N.Y.

2007), *rev'd on other grounds*. For its part, section 506(b)—which applies with full force in these proceedings[7]—dictates that "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim," a secured claimant is allowed "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose." 11 U.S.C. § 506(b). Further, the *Vanston* case was limited to challenging the potential recovery of interest on interest in which the subordinate creditors "concede[d] that the first mortgage bondholders should receive simple interest on the principal due them." *Vanston*, 329 U.S. at 159. *S.E.C. v. Byers* involved approval of a liquidation in which secured creditors were denied the right to pursue deficiency claims after the secured assets were extinguished by their claims. The court did not

---

[7] The District Court concluded the Bankruptcy "Code is not binding on this proceeding" and discounted the persuasive value of § 506(b) on these proceedings. (A13, A15.) Local Rule 66.1 provides "the administration of estates by receivers or other officers shall be similar to that in bankruptcy cases," thus bringing Section 506(b) reasonably into the District Court's consideration. Moreover, as the Seventh Circuit has recognized, "when a specific [Bankruptcy] Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993).

hold, and did not discuss, whether a district court may disallow a secured creditor's contractual right to interest or other fees, to be paid from the secured asset, in the name of equity. 637 F. Supp. 2d 166 (S.D.N.Y. 2009). And *Duff v. Cent'l Sleep Diagnostics, LLC*, similarly did not involve the question of a secured claimant's entitlement to interest where there are secured funds or assets sufficient to cover interest. Instead, *Duff* involved a question of whether an attorney (a creditor based on unpaid legal bills) could recover the full amount of his claim—obtained in "flagrant[]" violation of the district court's stay of all civil matters against the receivership defendants—even though the receivership estate had been fully distributed and the receivership closed. 801 F.3d 833, 836 (7th Cir. 2015).

By contrast, *In re Real Prop. Located at [Redacted] Jupiter Drive*, which involved allegations of fraud, and which cited and relied upon *Grubb* and *Ticonic, supra*, is instructive and the District Court erred in discounting its applicability to the instant case. In *Jupiter*, the court[8]

_____

[8] The substance of the opinion in *Jupiter* was drafted by a Special Master, whom the court appointed to determine which investors were entitled to what portion of what remained in the investment pool. After conducting "a *de novo* review of the [Special Master's] Report and Recommendation and the objections to it," the court adopted the Special

confirmed it did not have such broad authority "to ignore state law in the name of equity," rejecting an argument that the "the district court's discretion in supervising a receivership includes the ability to deny 'state law remedies' in dealing with receivership assets." *Id.* at *11 (quoting competing investor's brief). Citing Supreme Court authority for the proposition that it is "well-established that a 'receiver appointed by a federal court takes [a] property subject to all liens, priorities or privileges existing or accruing under the laws of the State," the court agreed it was "governed by the general rule that state law regarding lien priorities is to be respected in receiverships." *Id.* at *12. Further observing that "[t]he United States Constitution specifically states that contractual rights are not to be impaired," the court explained that "[t]he consequences may be harsh for the [competing secured] Investors, but the law is clear. Equity has its limits." *Id.* at *26-27 (citing U.S. Const. Art. I, § 10, cl. 1).

---

Master's report. *In re Real Prop. Located at [Redacted] Jupiter Drive*, No. 2:05-CV-01013-DB (Utah D. Ct.), "Order Adopting the First Report and Recommendation of the Special Master, Dkt. 272 at 1-2. In light of the district court's adoption of the Special Master's report, and for ease of reference, Shatar refers to the *Jupiter* opinion as coming from the court.

Applying *Jupiter*'s reasoning, the District Court erred in abandoning Illinois lien priority rules in favor of equity. Illinois law is clear that the recording of a mortgage creates a security interest in real estate for the payment of the underlying indebtedness. *See* 765 ILCS 5/11 ("Such mortgage, when otherwise properly executed, shall be deemed and held a good and sufficient mortgage in fee to secure the payment of the moneys therein specified."); *see also Ogle v. Koerner*, 140 Ill. 170, 179 (1892) ("A mortgage . . . vests in the party secured a lien upon the mortgage premises" and "[b]y virtue of that lien the mortgagee is entitled to . . . the proceeds of the sale [of the property in foreclosure] applied to the payment of the debt secured."). Illinois law further explicitly deems mortgages effective from and after the time of filing on the record, and "not before." *See* 765 ILCS 5/30 ("[M]ortgages . . . shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record."). Accordingly, as the first to record its mortgage liens without notice, Illinois law entitles

Shatar to the payment of the amounts specified in its mortgages, including interest and fees.

## B.  The District Court erred in applying the "netting rule."

The District Court erred in applying the netting rule to reduce Shatar's secured claim by payments Shatar received from Equitybuild. Specifically, the District Court erred in applying the netting rule before the Receiver met his burden to establish a fraudulent transfer, which is necessary to invoke the "Ponzi scheme" presumption triggering the application of the netting rule. (A18-20.)

"A party seeking to raise a [Ponzi scheme] presumption has the burden of *proving* the predicate facts that give rise to the presumption." *See In re Taneja*, 2012 Bankr. LEXIS 3554, *14 (Bankr. E.D. Va. July 30, 2012) (emphasis added). Here, the Receiver could not and did not meet his burden to establish a fraudulent transfer—instead he simply disclosed an intention to pursue a fraudulent transfer claim if the District Court granted Shatar (or other Institutional Investors) priority ahead of the Individual Investors. (R.1537.)

Further, the two cases offered by the Receiver purporting to support the notion that netting should apply *without* the Receiver

having met his burden of proof are distinguishable and the District Court erred in concluding otherwise. (A20.) Both of these cases analyze whether netting was appropriate **assuming proof and application of the applicable Uniform Fraudulent Transfer statute had already been established**. *See Scholes v. Lehmann*, 56 F.3d 750, 757-58 (7th Cir. 1995) (analyzing whether netting was appropriate by applying predecessor statute to Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160, while also discussing analysis under current statute); *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) (analyzing netting while applying California's Uniform Fraudulent Transfer Act). Indeed, it is well settled that to establish the Ponzi scheme presumption "the Receiver must prove that a Ponzi scheme existed." *SEC v. Mgmt. Solutions, Inc.*, 2013 U.S. Dist. LEXIS 120277, *26 (D. Utah Aug. 22, 2013).

To meet this burden, the Receiver "must prove by a preponderance of the evidence *the sine qua non* of a Ponzi scheme: that returns to earlier investors were paid by funds from later investors." *Id.* at *66. Critically, "[a]n effort to apply such a 'Ponzi presumption' in <u>all</u> securities fraud cases which have some Ponzi scheme characteristics is

inappropriate." *Id.* at *70 (emphasis in original). "[P]roposed blanket finding[s]" that a Ponzi scheme existed in complex cases such as this where "it is difficult to characterize all of [the] transactions as Ponzi-related" may unfairly "penalize innocent action . . . not for Ponzi-related and inappropriate action on their part, if any, but for the [Cohens'] actions, not their own." *Id.* at *70-71 (emphasis added). Accordingly, the "time, context, the nature of the specific transactions, and the knowledge of parties" need "to be examined on an individual basis" before the Receiver has met its burden to establish the existence of a Ponzi scheme. *Id.* at *82.

When the District Court ordered a distribution under the netting rule, the Receiver had not undertaken the requisite analysis to prove by a preponderance of the evidence that Shatar's transactions were Ponzi-related. Instead, the Receiver disclosed his intention to pursue avoidance of Shatar's claims pursuant to a fraudulent transfer theory in the event the District Court concluded Shatar's secured claims were entitled to first lien position. This disclosure, particularly given Shatar has never had an opportunity to respond to such avoidance claims, is insufficient to meet the Receiver's burden to trigger appropriate

application of the netting rule. While the Cohens' consent judgment is sufficient to establish proof of Ponzi activity as against the Cohens, for example, it does not obviate the need for "examin[ation] on an individual basis" as "to intervening objectors and others who may be subject to claw back," such as Shatar. *Management Solutions*, 2013 U.S. Dist. LEXIS 120277 at *72. Similarly, evidence of Ponzi-like activity in relation to other transactions does not suffice. As the court in *Management Solutions* described:

> Burdensome as it may be, fairness demands individual examination. Due process does as well. Presumption is but a tool. It is not a shortcut or substitute for proof. In the finding of Ponzi schemes, it is applicable where appropriate and if not, then proof of inappropriate activity on the part of a target, not the mere affixing of a label by the Receiver, is required.

*Id.* at *82.

The importance of individual examination rings particularly true here. For example, as to 5450 S. Indiana, Shatar's funds went directly from the Shatar lenders, through escrow, to the third party seller of the Indiana property, who was unaffiliated with the Equitybuild defendants. (*See, e.g.*, R.1587 at 7.) In other words, the 5450 S. Indiana loan bears none of the hallmarks of a Ponzi scheme. Shatar's funds were used to purchase the property, not to provide "returns to [earlier]

investors." *Management Solutions*, 2013 U.S. Dist. LEXIS 120277 at *66.

Accordingly, limiting distributions to the return of principal less any amounts already recovered from Equitybuild is, at best, premature given that the Receiver has not yet met his burden in establishing the Ponzi scheme presumption applies to the reserves and distributions made to Shatar in connection with 7749 S. Yates and 5450 S. Indiana to trigger the "netting rule."

Further, to the extent the District Court applied "netting" based on equitable powers, or the theory of equality of distribution, there is no precedent where a district court has done so and eliminated a secured creditor's recovery against the secured asset. In fact, doing so would run afoul logically of the authorities discussed *supra*, that confirm secured creditors are entitled to recover their interest, both pre- and post-receivership, against the secured asset.

## CONCLUSION

Consistent with the foregoing, Appellant Claimant Shatar Capital Partners ("Shatar"), on behalf of 111 Crest Dr. LLC, Abraham Aaron Ebriani, Hamid Esmail and Farsaa Inc., and any subsequent assignees

including Pakravan Living Trust, respectfully requests this Court enter an order reversing the District Court's priority determination and remanding with instruction to enter an order finding Shatar's mortgage liens have priority to the sales proceeds of 5450 S. Indiana (Property 4) and 7749 S. Yates (Property 5) over the Individual Investors' claims.

Dated: February 21, 2025

/s/ *Andrew R. DeVooght*
Andrew R. DeVooght
   COUNSEL OF RECORD
Alexandra J. Schaller
LOEB & LOEB LLP
321 N. Clark St., Suite 2300
Chicago, Illinois 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111
adevooght@loeb.com
aschaller@loeb.com

*Attorneys for Appellant Shatar Capital Partners*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Fed. R. App. P. 32(a)(7)(B), that this brief contains 12,632 words, excluding Fed. R. App. P. 32(f)'s exclusions. I also certify, pursuant to Fed. R. App. P. 32(a)(5), that this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century.

Dated:  February 21, 2025

/s/ *Andrew R. DeVooght*
Andrew R. DeVooght
   COUNSEL OF RECORD
Alexandra J. Schaller
LOEB & LOEB LLP
321 N. Clark St., Suite 2300
Chicago, Illinois 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111
adevooght@loeb.com
aschaller@loeb.com

*Attorneys for Appellant Shatar Capital Partners*

## CERTIFICATE OF SERVICE

I certify that, on February 21, 2025, I filed the foregoing via the Court's ECF system, which will send notice to all users registered with that system.

Dated: February 21, 2025

/s/ *Andrew R. DeVooght*
Andrew R. DeVooght
   COUNSEL OF RECORD
Alexandra J. Schaller
LOEB & LOEB LLP
321 N. Clark St., Suite 2300
Chicago, Illinois 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111
adevooght@loeb.com
aschaller@loeb.com

*Attorneys for Appellant Shatar Capital Partners*

## CIRCUIT RULE 30(d) STATEMENT

I certify that the appendix bound with this brief contains all materials required by Circuit Rule 30(a) and that the appendix filed along with this brief contains all materials required by Circuit Rule 30(b).

Dated: February 21, 2025

/s/ *Andrew R. DeVooght*
Andrew R. DeVooght
   COUNSEL OF RECORD
Alexandra J. Schaller
LOEB & LOEB LLP
321 N. Clark St., Suite 2300
Chicago, Illinois 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111
adevooght@loeb.com
aschaller@loeb.com

*Attorneys for Appellant Shatar Capital Partners*

# CIRCUIT RULE 30(a) APPENDIX TABLE OF CONTENTS

District Court's Opinion and Order on Group 2 Lien Priority
Filed June 20, 2024 ..................................................................... A01

District Court's Order Approving Distribution of Group 2
Proceeds
Filed July 15, 2024 ................................................................... A44

District Court's Exhibits 1-4 to Order Approving
Distribution
of Group 2 Proceeds
Filed July 15, 2024 ................................................................... A50

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

Plaintiff,

v.

EQUITYBUILD, INC., EQUITYBUILD
FINANCE, LLC, JEROME H. COHEN, and
SHAUN D. COHEN,

Defendants.

No. 18 CV 5587

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Jerome and Shaun Cohen ran a Ponzi scheme through their real estate investment companies, Equitybuild, Inc. and Equitybuild Finance, LLC. The SEC sued them, they consented to judgment against them, and a receiver was appointed to take over the Cohens' and the companies' assets and advise the court on how to equitably distribute them to defrauded investors. The Cohens' scheme is described in *S.E.C. v. Equitybuild, Inc.*, No. 18-cv-5587, 2023 WL 2018906, at **1–4 (N.D. Ill. Feb. 15, 2023) and *S.E.C. v. EquityBuild, Inc.*, 101 F.4th 526, 528 (7th Cir. 2024). This opinion resolves competing claims for priority on properties that were grouped together as "Group 2."

I.    **Legal Standards**

District courts have broad discretion in approving a plan for distributing receivership funds. *See S.E.C. v. Wealth Mgmt. LLC,* 628 F.3d 323, 332–33 (7th Cir. 2010); *see also S.E.C. v. First Choice Mgmt. Svcs. Inc.*, 743 Fed. App'x 33, 35 (7th Cir.

A1

2018). A district court's primary job in supervising an equitable receivership is to ensure that the receiver's proposed plan of distribution is "fair and reasonable." *Wealth Mgmt.*, 628 F.3d at 332.

## II. Facts

There are five properties in Group 2: 6160–6212 Martin Luther King Dr., 5450 South Indiana Ave., 7749–59 South Yates Blvd., 1700–08 Juneway Terrace, and 6949 South Merrill Ave. All five properties have been sold and the receiver is holding the proceeds of those sales in separate bank accounts; none of the accounts hold sufficient funds to pay all the claimants in full. *Compare* [1652-1] at 2, 5, 6, 8 *with* [1571] at 26, 28, 30, 32, 34–37.[1] The Receiver negotiated a settlement of the dispute over 6949 S. Merrill Ave., [1678], and resolution of the claims against that property will wait until claimants have had an opportunity to object to the settlement.

As part of the fraud scheme, Equitybuild gave out multiple mortgages on the same property, recording mortgages out of sequence or recording a purported release in order to present a clean chain of title to future lenders. In addition, many of the mortgages secured loans that were for more money than the recent sale price of the property, meaning the loans were not fully secured. [1] ¶¶ 38, 40.

Individuals invested in Equitybuild by contributing to a pool of funds that Equitybuild advertised would be used to invest in a particular property; in return for their investment, the individuals were promised a first position lien on the property.

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings.

[1] ¶¶ 20–24; [1537] at 177 ("As with all other EBF notes, this private mortgage note is fully secured by the Paxton property as collateral, and lenders are further protected with a first lien position on the property."). The mortgage in favor of individual investors named the lender/mortgagee as "The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC"; Exhibit A to the mortgage listed the names of the individual investors for the particular property. *See* [1537] at 314–22 (6160 S. MLK); [1537] at 306–13 (7749 S. Yates); [1562-4] at 2–10 (5450 S. Indiana); [1563-3] at 2–10 (1700 W. Juneway). I refer generally to the lenders in these transactions as "Individual Investors."

Institutional lenders also invested in Equitybuild but usually did so as the only lender in a transaction and secured their loan with a mortgage on one or two properties. An institutional lender claims priority in each of the Group 2 properties based on mortgages recorded first in time or after a prior mortgage was purportedly released.

### A.    Direct Lending Partners LLC and 6160–6212 MLK Drive

Equitybuild, Inc. executed a mortgage in favor of Individual Investors on the property located at 6160–6212 Martin Luther King Drive on November 9, 2016. [1537] at 314–322. The mortgage listed the mortgagee/lender as "The Persons Listed on Exhibit A to the Mortgage C/O EquityBuild Finance, LLC" and was recorded on January 3, 2017. [1537] at 314–15.[2]

---

[2] A correction to the mortgage was filed the next day. *See* [1537] at 323–33.

In the spring of 2018, Equitybuild, Inc. sought funding from Direct Lending Partner LLC for a large construction loan and offered to secure the loan with mortgages in 6160 MLK and another property. *See* [1557-7].[3] Equitybuild provided a purported release of the Individual Investors' mortgage; the release was executed in the name of "Equitybuild Finance, LLC" and signed by Shaun Cohen as president of Equitybuild Finance, LLC. [1602-1] at 179–80. After being pressed by the title insurance company, Shaun Cohen also provided an "affidavit of lost note," which stated he was the lender/mortgagee on the Individual Investors' mortgage and the original promissory note "was lost and cannot be located." [1557-9] at 3. Cohen signed the affidavit in his personal capacity. *Id*. at 4.

The purported release of the Individual Investors' mortgage on 6160 MLK was recorded on June 11, 2018, the same day a mortgage in favor of Direct Lending Partners was recorded against the property. *See* [1602-1] at 179; [1559-3] at 2–27.

### B. Shatar Capital, LLC and 5450–52 Indiana Ave. & 7749–59 S. Yates Blvd.

Equitybuild had been soliciting individual investments in 5450 S. Indiana since at least December 2016. *See* [1602-1] at 114. Those investors received promissory notes and mortgages (unsigned by Equitybuild) and signed Collateral Agency and Servicing Agreements from Equitybuild at the time of their investment. *See* [1602-1] at 66–114 (individual investor's loan package for 5450 S. Indiana).

---

[3] The original lender was "Arena DLP Lender, LLC" but no one has disputed that Direct Lending Partner LLC is the successor in interest to that entity and I refer to the lender, and now claimant, as Direct Lending Partners.

A4

Equitybuild solicited investments from individual investors for 7749 S. Yates at least as early as February 2017. *See* [1602-1] at 115–161.

Shatar Capital LLC was a private lender (and sometimes broker) introduced to Equitybuild in November 2016. *See* [1537] at 177–78.[4] Ezri Namvar, one of Shatar's principals, received an email from an Equitybuild Finance consultant with information on Equitybuild Finance's investment model for individual investors. *Id*.[5] This email stated, in part: "As with all other EBF notes, this private mortgage note is fully secured by the Paxton property as collateral, and lenders are further protected with a first lien position on the property." [1537] at 177. The email represented that Equitybuild would handle all of the rehabilitation, leasing, and property management of the investment properties and that Equitybuild had over $100 million of lender/clients' funds under asset management. *Id*. at 177–78.

By December 2016, Shatar and Equitybuild were engaged in discussions about a different type of loan, in which Shatar was the sole lender of much more money. *See* [1537] at 179. In a December 2016 email, Namvar wrote to Equitybuild (original in all caps):

---

[4] Namvar testified that Shatar helped to "arrange" loans, connecting people or entities that wished to invest money with entities looking for investors. [1537] at 32 (11:17–21), 41–43 (20:16–22:4). The 7749 S. Yates and 5450 S. Indiana loan were made with capital from four entities for whom Shatar acted as agent and "servicer." [1537] at 90–92 (69:13–72:24); [1587-1]; [1587-2]; [1587-3]; [1587-4].

[5] Ezri Namvar testified that he was never an officer or employee of Shatar, but he served as Shatar's corporate representative for a Fed. R. Civ. P 30(b)(6) deposition. *See* [1537] at 28–32 (7:9–11:14). Namvar was involved in the Shatar-Equitybuild transaction and had decision-making authority for Shatar. *Id*. at 32–36 (11:1–15:19), 56–62 (35:9–40:20), 68 (47:2–19), 75 (54:4–22).

> Since we have become aware of your business structure, assuming your previous deals have been closed with crowdfunding investors, we need to make sure your refinancing of already closed deals are allowed and kosher, in case the proceeds is not distributed and/or going toward new deals—in that regard please provide any document u can—depending on our underwriting we may need a strong opinion letter from your attorney[.]

[1537] at 179. Shaun Cohen responded to the email, telling Namvar that on refinances Equitybuild asked its investors if they wanted their funds returned or to rollover their funds into a new deal and sent Namvar a blank copy of the rollover forms. *See* [1537] at 180–83. Tyler DeRoo, an Equitybuild employee, sent Namvar blank copies of the standard lender documents including wire instructions, mortgage, servicing agreement, and note, but Namvar did not read the documents. [1537] at 203–246; [1537] at 116–17 (95:20–96:14).

On March 7, 2017, DeRoo emailed Namvar about the Indiana and Yates properties with information on the purchase prices and closing dates for each property. *See* [1537] at 248.

On March 14, 2017, Equitybuild, acting through 7749-59 S Yates LLC, purchased 7749 S. Yates for $1,550,000.00. [1602-1] at 164. Jerome Cohen executed a mortgage on 7749 S. Yates to the Individual Investors for $2,860,000.00 on the same day. [1537] at 306–313.

Shatar and Equitybuild agreed to terms for a loan of $1,800,000.00 to be secured by 5450 S. Indiana and 7749 S. Yates. [1602-1] at 162–63. While preparing the loan documents, Equitybuild's real estate attorney's office shared the information that the purchase transaction for 7749 S. Yates had already closed. *See* [1602-1] at

170–73. Namvar then wrote DeRoo asking him to call "ASAP." *Id.* at 170. There is no evidence in the record about what occurred during that phone call.

Later in March 2017, while preparing the closing documents for 5450 S. Indiana, an employee for the title insurance company shared via email with Shatar, Equitybuild, and Equitybuild's real estate attorney that Equitybuild was receiving $86,000.00 from the closing. *See* [1602-1] at 168. Namvar responded to the email, "What??? I thought the borrowers are putting over 1.5 mil in to close the purchases[.] Can someone explain this 2 me?" *Id.* The closing documents for the 5450 S. Indiana purchase reflect that the borrower (Equitybuild's property-specific LLC) received approximately $100,0000.00 from the transaction. *See* [1587-7] at 3.[6]

On or about March 30, 2017, Jerome Cohen executed mortgages on both 7749 S. Yates and 5450 S. Indiana in favor of Shatar Capital's lenders for a maximum lien of $3,060,000.00. *See* [1537] at 268–305 *and* [1562-2] at 2–39. These mortgages secured a March 28, 2017 promissory note from the Shatar Lenders to Equitybuild for $1,800,000.00. [1587-11] at 2–9.

On March 31, 2017, Cohen signed a mortgage on 5450 S. Indiana to the Individual Investors for $3,050,000.00. [1562-4] at 2–10.

Shatar's mortgages on 7749 S. Yates and 5450 S. Indiana were recorded on April 4, 2017. [1562-3] at 2 (7749 S. Yates); [1562-2] at 2 (5450 S. Indiana). The

---

[6] Equitybuild purchased 5450 S. Indiana for $1,675,000.00 on or about March 31, 2017. [1587-8] at 2. The escrow disbursement statement for the transaction shows that the title insurance company received $1,800,000.00 from the Shatar lenders and paid out origination fees to Daniel Namvar and Shatar Holdings, LLC. [1587-7] at 2.

Individual Investors' mortgages in the same properties were recorded on June 23, 2017. [1562-5] at 2 (7749 S. Yates); [1562-4] at 2 (5450 S. Indiana).

### C. Thorofare Asset Based Lending REIT Fund IV, LLC and 1700–08 Juneway Terrace

Equitybuild followed a similar pattern with the purchase and financing of 1700–08 Juneway Terrace. It began collecting funds for the property from Individual Investors as of at least March 1, 2017. *See* [1602-1] at 18–65. After accepting money from the Individual Investors, Equitybuild would send the individuals a promissory note and mortgage, unsigned by Equitybuild, and a signed Collateral Agency and Servicing Agreement. *Id.*

Through a promissory note dated April 6, 2017, Equitybuild borrowed $2,175,000.00 from Thorofare to purchase 1700 Juneway. [1588-7] at 2–13. Jerome Cohen executed an April 6, 2017 mortgage in favor of Thorofare, *see* [1563-1] at 2–55, which was recorded on April 11, 2017. [1563-1] at 2.[7] Thorofare held back $839,877.50 at the closing for tax, interest, capital expenditures, repair, and insurance reserves, fees, and the partial month's interest payment. [1602-1] at 176. The property was purchased for $2,400,000.00 and the title company's settlement statement reflects that Equitybuild had to come up with an additional $1,008,850.02 to close the transaction. [1602-1] at 176–77.

On the same day, April 6, 2017, Equitybuild signed a different mortgage for 1700 Juneway in favor of Individual Investors and in the amount of $4,120,000.00;

---

[7] A corrected mortgage was recorded one day later that had the correct exhibits setting out approved repairs and servicing costs. *See* [1563-2] at 2–55.

but waited until June 23, 2017, to record the Individual Investors' mortgage. [1563-3] at 2–10.

### III.    Analysis

The Cohens, through Equitybuild, Inc., Equitybuild Finance, and other subsidiaries, perpetrated a Ponzi scheme by using money from later investors to pay returns to earlier investors. *See* [1386] at 4–6; [492] at 1, 3, 11–12 (report and recommendation); [603] at 2–3, 6 (order adopting report and recommendation); [5] ¶¶ 48, 58–59, 69. This receivership was set up to "marshal[] and preserv[e] all assets of Defendants Equitybuild, Inc., Equitybuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen." [16] at 1. The proceeding is now at the point of distributing the proceeds of the liquidated assets among the victims of the scheme.

### A.    Equitable Receiverships after a Ponzi Scheme

"In supervising an equitable receivership, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *S.E.C. v. Wealth Mgmt., LLC*, 628 F.3d 323, 332 (7th Cir. 2010). One of the guiding principles in creating a fair and reasonable distribution is that claimants who are similarly situated should be treated similarly. *Id.* at 333; *see also*, *Cunningham v. Brown*, 265 U.S. 1, 13 (1924). "District courts have broad equitable power" in supervising an equitable receivership in a securities fraud enforcement action. *Wealth Mgmt.*, 628 F.3d at 333.

While a federal statute requires receivers to "manage and operate the property in [their] possession … according to the requirements of the valid laws of the State in

9

A9

which such property is situated," *see* 28 U.S.C. § 959(b), that requirement is not applicable to the liquidation of the estate. *See Wealth Mgmt.*, 628 F.3d at 334. The Federal Rules of Civil Procedure require a receiver to administer an estate in "accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. The Northern District of Illinois's local rule states that administration of estates by receivers should be similar to bankruptcy cases but gives courts the discretion to "direct the manner in which the estate shall be administered, including the conduct of its business, the discovery and acquirement of its assets, and the formation of reorganization plans." N.D. Ill. L.R. 66.1(a)(2). Indeed, receivership cases are not bankruptcies and are "not governed by the Bankruptcy Code." *Duff v. Cent'l Sleep Diagnostics, LLC*, 801 F.3d 833, 844 (7th Cir. 2015).

Equitable receiverships inhabit a middle ground where, in an effort to craft a fair and reasonable distribution plan, some legal principles and contractual rights are respected, and others are not. The parties disagree about which rules should apply here regarding security, priority, collection of interest and costs, and calculating relief.

### 1. *Retaining Secured Interests and Priority*

A receiver takes the property in the estate subject to the "liens, priorities or privileges existing or accruing under the laws of the state." *Marshall v. People of New York*, 254 U.S. 380, 385 (1920). Whether a claimant has a secured interest in an asset legally distinguishes claimants and make them "differently situated" from one

A10

another. *See Ticonic Nat. Bank v. Sprague*, 303 U.S. 406, 412 (1938).[8] Because the claimants are differently situated, it is appropriate for federal equitable receiverships to treat secured claimants differently than unsecured claimants and respect rules of priority. *See, for example, Wealth Mgmt.*, 628 F.3d at 333 n. 6 (explaining distinction between creditor and investor claimants and why receiver's plan properly prioritized distributions to creditors before investors); *S.E.C. v. Elliott*, 953 F.2d 1560, 1573 (11th Cir. 1992) ("A claimant is not treated better in the eyes of the law if the controlling facts surrounding his or her case lead to a different legal conclusion … it is incorrect to say the law prefers one claimant if that claimant's situation differs in a legally cognizable way."); *S.E.C. v. Byers*, 637 F.Supp.2d 166, 171–72 (S.D.N.Y. 2009) (secured creditors given higher priority than unsecured creditors), *aff'd sub nom. S.E.C. v. Orgel*, 407 Fed. App'x 504 (2d Cir. 2010) *and S.E.C. v. Malek*, 397 Fed. App'x 711 (2d Cir. 2010). Finally, this court approved of a claims resolution process that would determine classification and priority of claimants' interests and distribute assets accordingly. *See* [941] at 2.

Consistent with historical practice in receiverships and the case's own history, the distribution plan for Group 2 will prioritize secured creditors' claims and use Illinois law to determine the priority of secured claimants' interests in the proceeds of the sale of a property.

---

[8] Secured creditors can recover through two mechanisms—an action against the property in which they have an interest and an action against the entity who signed the loan contract; unsecured creditors can only enforce their right to payment against the entity who signed or guaranteed the loan contract. *Ticonic Nat. Bank*, 303 U.S. at 411–12. Market forces value a secured creditor's interest differently than an unsecured creditor; a secured creditor's investment likely reflects some kind of premium in exchange for its status.

2.      *Interest, Fees, and Costs*

The Receiver proposes that claimants should not receive interest, penalties, attorneys' fees or any other costs. *See* [1571] at 11. The Institutional Lenders argue that Illinois law requires a secured creditor to recover all of the money owed to it under the terms of the note and that their promissory notes and mortgages provide for interest, attorneys' fees, and costs. *See* [1588] at 10 (citing 765 ILCS 5/11). Relying on the precept that "equity follows the law," the Institutional Lenders assert that the distribution plan must allow them to recover all of the amounts to which they are entitled under their contract and Illinois law.[9] But the law of equitable receiverships does not require a receiver to distribute the assets of the receivership estate in accordance with state law—instead the distribution plan should treat similarly situated claimants similarly. *See Wealth Mgmt.*, 628 F.3d at 334, 333. In this case, the Receiver's proposal is that no secured creditors should receive interest, penalties, attorneys' fees or any other costs, so the proposal treats all similarly situated claimants—secured creditors with contractual rights to collect interest, penalties,

---

[9] The Institutional Lenders cite to *In re BNT Terminals, Inc.*, for the aphorism "equity follows the law." *See* 125 B.R. 963, 979–80 (Bankr. N.D. Ill. 1990) (opinion on motion to reconsider published in 1991). *BNT Terminals* is a bankruptcy adversary proceeding in which courts must follow state law to determine the nature of interests held by parties in the adversary proceeding. *Id.* at 970. As discussed above, liquidation of federal receiverships is not governed by state law. The *BNT Terminals* court used the adage about equity following the law in reference to the idea that the bankruptcy court could not give the adversary defendant a legal position that it did not already have (that of creditor), i.e., it could not create a legal right that did not previously exist. *Id.* at 978–80. A court, even one sitting in equity, does not have the power to create a legal interest from whole cloth. But a court sitting in equity can determine which contractual rights should be strictly enforced when trying to remedy fraud. *Cf. Hedges v. Dixon County*, 150 U.S. 182, 189 (1893) ("[A] court of equity, in the absence of fraud, accident, or mistake, cannot change the terms of a contract.").

and costs—the same. In the context of a securities fraud enforcement case, the court of appeals has approved in passing of a receiver's plan to disallow all penalties, interest, and attorneys' fees. *See Duff*, 801 F.3d at 844 ("To treat the claimants equally across the board, the final distribution plan reasonably excluded claim amounts attributable to penalties, interest, and attorney's fees.").

It is reasonable to disallow claims for penalties, interest, and fees. Courts overseeing receiverships may limit the contractual (and equitable) rights of higher priority claimants so that lower priority claimants can recover some portion of their principal. Creditors have been denied the right to default interest and to credit bid on a property, *S.E.C. v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154, at **1, 11–12 (C.D. Cal. Oct. 13, 2015), to interest on accrued interest, *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163 (1946), to penalties, interest, and attorney's fees, *Duff*, 801 F.3d at 844, and to deficiency claims, *see Byers*, 637 F.Supp.2d at 183.

Underlying these cases is the "general rule [that] after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds." *Vanston*, 329 U.S. at 163–64 (1946).[10] "In the context of interest-bearing debts, the equitable principle … rests at bottom on an awareness of the inequity that would result if, through the continuing accumulation

---

[10] The Institutional Lenders argue that *Vanston* has been superseded by Section 506(b) of the Bankruptcy Code, which allows for post-petition interest in certain situations. *See* [1588] at 11. But the Code is not binding on this proceeding and *Vanston* addresses a receivership-turned-bankruptcy, so its holding is relevant to the principles that should govern a federal equitable receivership. *See Vanston*, 329 U.S. at 158–59.

A13

of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate." *Nicholas v. United States*, 384 U.S. 678, 683–84 (1966) (pre-Bankruptcy Code opinion holding that interest may run against debtor-in-possession seeking to reorganize up until the entity files for liquidation). Courts have denied claimants' contractual rights due to a concern about how secured creditors' ability to recover more would affect junior and unsecured creditors' recovery. *See Capital Cove Bancorp*, 2015 WL 9701154, at *12; *Byers*, 637 F.Supp.2d at 183.

The Institutional Lenders rely heavily on *In re Real Property Located at Redacted Jupiter Drive*, No. 2:05-CV-1013, 2007 WL 7652297 (D. Utah Sept. 4, 2007), in which the court allowed interest to accrue on secured claims during the receivership. *Id.* at **7–8. I disagree that disallowing interest results in a preference of junior creditors over senior creditors, *see id.*, and find that *Vanston*, *Duff*, and *Byers* better articulate and apply the rules for distributing the assets of a federal equitable receivership. Other cases hold that a claim in a receivership may accrue interest, but many of those cases arise out of non-securities fraud receivership cases. *See, for example*, *Ticonic Nat'l Bank*, 303 U.S. at 410–14 (creditors entitled to interest from receivership of national bank that went into voluntary liquidation). Because those receiverships did not deal with claimants who were all victims of fraud, it was reasonable to uphold contractual rights and damages; but where the vindication of those rights comes at the expense of other victims because of insufficient funds, a

14

A14

different rule should apply in an effort to treat victims equitably. *See Vanston*, 329 U.S. at 164–65 ("[T]he touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.").

The Institutional Lenders also point to Section 506(b) of the Bankruptcy Code to argue that they are entitled to interest, fees and costs up to the amount available in each property's bank account. Section 506(b) of the Bankruptcy Code allows fully secured creditors to be paid interest on their claim and "any reasonable fees, costs or charges provided for under the agreement … under which such claim arose." 11 U.S.C. § 506(b).

But the local rules give me the discretion to direct the manner in which the receivership estate should be administered. *See* N.D. Ill. L.R. 66.1(a)(2). Bankruptcy principles, especially those used in liquidations, can be helpful guides to crafting a distribution plan, but the distribution plan is not governed by the Bankruptcy Code. *See Duff*, 801 F.3d at 844. The underlying equities and goals of a receivership arising out of a Ponzi scheme are different than the equities and goals in a bankruptcy, so it is reasonable for the rules to differ as well. *See Byers*, 637 F.Supp.2d at 175 ("The reason the Wextrust entities are in shambles is not—as is typical in a bankruptcy case—because of poor economic conditions or garden variety mismanagement. The reason is fraud."). For that reason, many of the cases upon which the Institutional Lenders rely are not persuasive. *See, for example*, *In re Fesco Plastics Corp.*, 996 F.2d 152, 154–56 (7th Cir. 1993) (creditors in Chapter 7 case cannot rely on equity to argue

for recovery of fees and interest because there are specific provisions of the Code that address when fees and interest can be recovered); *In re Cella III, LLC*, 625 B.R. 19, 25–26 (Bankr. E.D. La. 2020) (recognizing over-secured creditor's right to fees and interest under § 506(b) but calculating that amount of equity in the underlying asset was not sufficient to pay out both in Chapter 11 case); *In re Croatan Surf Club, LLC*, No. 11-00194-8-SWH, 2012 WL 1906386, at **6–7 (Bankr. E.D.N.C. May 25, 2012) (analyzing § 506(b) in a Chapter 11 proceeding); *In re Broomall Printing Corp.*, 131 B.R. 32, 35 (Bankr. D. Md. 1991) (same); *Liberty Nat'l Bank & Trust Co. of Louisville v. George*, 70 B.R. 312, 315–16 (W.D. Ky. 1987) (same).

The final consideration is whether the prohibition on interest should apply to interest that accrued before the receivership was instituted. *Vanston* and its progeny only discuss interest accruing after the institution of the receivership. On the other hand, the court of appeals has approved of a distribution plan that reduced claims by "late penalties, accrued interest, and/or attorney's fees," and a review of the distribution plan in that case indicates that "accrued interest" included *all* interest. *See Duff*, 801 F.3d at 844; *see also* 10-cv-06162, Docket No. [379] at 16 (N.D. Ill.). A distribution plan preventing secured creditors from recovering their "deficiency" claim, a fundamental contractual right for secured creditors, has also been approved by federal courts. *See Byers*, 637 F.Supp.2d at 183.

The general rule of treating similarly situated claimants similarly favors disallowing the recovery of all interest (and penalties, fees, or costs). All of the secured claimants who have been determined to have priority thus far in the Receivership

16

A16

have only been able to recover their principal (minus amounts previously received from Equitybuild). *See* [1451] at 3, [1451-1] at 2–13 (order approving Group 1 distribution to Individual Investors with no interest, fees, or costs to be paid); [1552] at 4, 7–11 (order approving Group 3 distribution to Institutional Lenders who had secured interests with no interest, fees, or costs to be paid); [1627] at 4–6, [1626] at 10–17, [1671] (Receiver's recommendations for Groups 4 and 5 to omit all interest, fees, penalties to secured creditors, whether Individual Investors or Institutional Lenders, and order approving the recommendations). All secured claimants, whether Individual Investors or Institutional Lenders, had a contractual right to accrue interest on their loan. Nevertheless, the distribution plans thus far have not allowed the recovery of any interest (and required the return of "interest payments"), so it is equitable to prohibit secured claimants in Group 2 from recovering any interest, fees, or penalties from the estate.

A final benefit to the blanket prohibition on the recovery of interest is that it is easier to administer than a rule that distinguishes between pre and post receivership interest. "Receivers have a duty to avoid overly costly investigations, and at a certain point, the costs of such individualized determinations outweigh the benefits." *Wealth Mgmt.*, 628 F.3d at 336. Some secured claimants have already disputed what interest should or should not be included, including whether they were paid interest in the first place. *See, for example*, [1588] at 14–15.

Because there are insufficient funds to pay all the claimants and first-position secured claimants are more likely to recover something, it is equitable to prohibit

them from recovering any form of interest, fees, penalties, or costs associated with their claim. This applies to all secured claimants, whether they be Individual Investors or Institutional Lenders.

### 3. *Netting Rule*

Some Institutional Lenders argue that their claims should not be set off by payment they received from Equitybuild. They make two arguments in support of the position: (a) that funds lent to Equitybuild went to the seller of the properties, so the Lenders' funds were not part of a Ponzi scheme, and (b) that netting is inappropriate when the Receiver is not making a fraudulent conveyance claim.

Even if the Institutional Lenders' loan proceeds did not go directly to Equitybuild, the loans benefitted Equitybuild because it did not have to use other money to purchase the real estate properties. Because money is fungible, Equitybuild could use the Institutional Lenders' loan proceeds to purchase properties and use the money taken from Individual Investors to make "interest payments" to other investors and continue its scheme. Additionally, the evidence is that in at least one case Equitybuild (through a property-specific LLC) did receive cash proceeds from the transaction. The closing documents for 5450 S. Indiana reflect that the Shatar lenders' loan was for $1.8 million, the purchase price and closing costs was approximately $1.69 million, and the borrower (Equitybuild) received $109,751.13 from the transaction. [1587-7] at 2–3. Similarly, Thorofare held back $585,845.00 for capital expenditures and allowed Equitybuild to draw on that reserve after the closing. *See* [1571] at 37. All of the institutional lenders' loans were made to benefit Equitybuild and allowed it to further its fraudulent scheme.

Distribution plans in the aftermath of a securities fraud enforcement action regularly deduct amounts previously received by the particular claimant from their recovery. *See S.E.C. v. Huber*, 702 F.3d 903, 904–07 (7th Cir. 2012) (discussing two ways of calculating an investors' recovery in securities fraud enforcement receivership, both of which account for money previously received); *see also S.E.C. v. Capital Consultants*, 397 F.3d 733, 737–41 (9th Cir. 2005) (approving of distribution plan that only allowed recovery of net loss and offsets that recovery by 50% of amounts received by third parties); *C.F.T.C. v. Topworth Intern., Ltd.*, 205 F.3d 1107, 1115–16 (9th Cir. 1999) (approving distribution plan in commodities fraud context that returned claimants' investment less any amounts returned to claimant and/or trading profits reinvested or credited to a claimant); *S.E.C. v. Credit Bancorp, Ltd.*, No. 99 CIV 11395 RWS, 2000 WL 1752979, **40–42 (S.D.N.Y. Nov. 29, 2000) *aff'd*, 290 F.3d 80 (2d Cir. 2002).

The Institutional Lenders point out that the cases the Receiver cites in his brief are claw-back cases brought under a state or federal Fraudulent Transfer Act and suggest that netting a recovery should only happen when a fraudulent conveyance has occurred. *See Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) *and Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008). These cases articulate the general principle that Ponzi schemes result in an inherent inequity between earlier investors and later investors because early investors may have received some return on their investment, not from a legitimate source but from the money solicited by later investors. *Scholes*, 56 F.3d at 757–58; *Donell*, 533 F.3d at 770. And both cases hold that earlier investors

are not entitled to those returns because the entire scheme was fraudulent, and the goal of the law is to provide all the defrauded investors some portion of their principal. *Scholes*, 56 F.3d at 757; *Donnell*, 533 F.3d at 770. The Institutional Lenders do not articulate why these general principles should be applied differently to the distribution plan at the end of a federal receivership. In both a clawback and a liquidation, the court is working to allocate limited assets among many fraud victims.

I agree that no investors, individual or institutional, should be allowed to retain the so-called "interest payments" or any form of return on their investment and approve of the Receiver's proposed net loss distribution plan, a decision well within my discretion. *See Huber*, 702 F.3d at 908.

### B.    Direct Lending Partners and 6160–6212 S. Martin Luther King

Both DLP and Individual Investors claim a first position lien in the proceeds of 6160–6212 S. Martin Luther King via the existence of a recorded mortgage in their favor. A purported release of the Individual Investors' mortgage was recorded on the same day as DLP's mortgage. *See* [1602-1] at 179–80; [1559-3] at 2. DLP argues that the release is valid, so its mortgage is in primary position. The Individual Investors argue that the release is invalid because they neither released the mortgage themselves nor did they authorize Shaun Cohen or Equitybuild Finance to do so on their behalf.[11]

---

[11] As both parties note, this legal issue was addressed at length in the opinion for the Group 1 properties. While decisions on one group of properties do not have preclusive effect for other groups, *see* [941] at 7, applying the law to a similar set of facts will garner a similar result. As with Group 1, I am considering whether a purported release should be binding upon mortgagees who did not sign the release themselves.

"[A] perfected mortgage lien remains in effect unless released pursuant to the Mortgage Act." *Federal Nat'l Mortgage Ass'n v. Kuipers*, 314 Ill.App.3d 631, 637 (2d Dist. 2000). Upon full payment of the note underlying a mortgage, "[e]very mortgagee of real property, his or her assignee of record, or other legal representatives … shall make, execute and deliver to the mortgagor … an instrument in writing releasing such mortgage … or shall deliver that release to the recorder or registrar for recording or registering." 765 ILCS 905/2. The terms of the statute require a release to be signed by either the mortgagee, her assignee, or her legal representative. *Id*.

The mortgage to the Individual Investors was in favor of "The Persons Listed on Exhibit A c/o EquityBuild Finance Co." [1537] at 315. The release of the mortgage was executed by Shaun Cohen as president of Equitybuild Finance. [1602-1] at 179–80. Equitybuild Finance Co. is a different entity than "The Persons Listed on Exhibit A," and is not listed as a mortgagee on the mortgage; it could not release the mortgage unless it was the Individual Investors' assignee or legal representative. DLP argues that Equitybuild Finance had the authority, actual or apparent, to sign the release and was therefore a proper signatory as the Individual Investors' legal representative.

Actual authority can be express or implied. *See Peterson v. Devita*, 2023 IL App (1st) 230356, ¶ 40 (opinion not yet published in permanent law reporters). Express authority exists when a principal grants power to the agent to perform a particular act. *Id*. "Implied authority happens when the conduct of the principal, reasonably interpreted, causes *the agent* to believe that the principal wants him or her to act on

21

A21

the principal's behalf." *Id*. (citing to Restatement (Second) of the Law of Agency § 26) (emphasis added).

DLP argues that the Individual Investors gave Equitybuild Finance actual authority to release their mortgage by authorizing Equitybuild Finance to be their "Collateral Agent" in the Collateral Agency and Servicing Agreements. [1559] at 4 n.2. The language of the Servicing Agreement says that Equitybuild Finance is authorized to exercise rights and powers "as are specifically granted or delegated to the Collateral Agent by the terms hereof" and then limits the Collateral Agent from "tak[ing] any other action with respect to the collateral or any part thereof" without "written instructions from the required lenders." [1559-7] at 5–6 (§§ 2(a), 3); *see also* [1559-7] at 7 (§ 6(a): "the Collateral Agent shall act only on written instructions from all Lenders with respect to the amendment or termination of the Mortgage.").

The language of the Servicing Agreement prohibits Equitybuild Finance from releasing the Mortgage absent written instructions from all Lenders. The only written instruction from Individual Investors to Equitybuild Finance regarding the release of the Mortgage is the "Authorization Document," which states that "Equitybuild Finance … has been authorized by the above listed lenders to … execute a release of said mortgage, upon payment in full of any outstanding balance." [1559-8] at 2. There is no evidence that the balance on the note was paid off and DLP does not argue that the proceeds of its loan should count as such a payment. The Servicing Agreement did not give Equitybuild Finance actual express authority to release the Mortgage without written instructions and it (along with the Authorization

Document) could not serve as the basis for Equitybuild Finance to reasonably believe that the Individual Investors authorized it to release the Mortgage without payment.

Apparent authority "is the authority which a reasonably prudent person, exercising diligence and discretion, in view of *the principal's* conduct, would naturally suppose the agent to possess." *Brayboy v. Advoc. Health & Hosp. Corp.*, 2024 IL App (1st) 221846, ¶ 24 (opinion not yet published in permanent law reporters) (emphasis added); *see also*, *Wing v. Lederer*, 77 Ill.App.2d 413, 417 (2d Dist. 1966). Apparent authority requires (a) the principal's consent or knowing acquiescence to the agent's exercise of authority, (b) the third party's knowledge and good-faith belief that the agent possessed such authority, and (c) the third party's detrimental reliance on the agent's apparent authority. *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill.App.3d 383, 390 (1st Dist. 1991).[12] "One dealing with an assumed agent is duty bound to acertain [sic] the extent of the agent's authority … anyone dealing with such agent must, at his own peril, ascertain not only the fact of the agency, but also the extent of the agent's authority." *Wing*, 77 Ill.App.2d at 417.

DLP argues that the Individual Investors acquiesced to Equitybuild Finance acting on their behalf because the Mortgage lists the lenders as "care of Equitybuild Finance." DLP points to only one case to support that a reasonable interpretation of the term "care of" is that the first party is consenting to the second party's exercise of

---

[12] "Apparent authority" can also be called "authority by estoppel," because "[a] principal that places an agent in a situation where the agent may be presumed to have authority to act is estopped as against a third party from denying the agent's apparent authority." *Weil*, 219 Ill.App.3d at 390.

A23

authority. That case, *5201 Washington Invs., LLC & Arthur Bertrand v. Equitybuild, Inc.*, is a Cook County Circuit Court opinion, which is not binding authority on this court. *Id.*, No. 22-CH-1268, 2023 Ill. Cir. LEXIS 79 (Cir. Ct. of Cook Cnty. May 18, 2023). I disagree with that court's conclusion that listing the lenders as "care of" Equitybuild Finance on the Mortgage indicates that the Individual Investors granted Equitybuild Finance authority to release the Mortgage on their behalf. *See Weil*, 218 Ill.App.3d at 391 (analyzing whether the principal consented to or knowingly acquiesced to the specific exercise of authority). I also note that the determinative question in *5201 Washington Investors* was whether the mortgage and release, considered together, should have put a subsequent purchaser on notice that there might be an issue with the chain of title. *See 5201 Wash. Invs.*, 2023 Ill. Cir. LEXIS 79, at **10–15 (determining that the defendants were bona fide purchasers because they lacked notice that the release was fraudulent).[13] That is a different inquiry than whether Equitybuild Finance had apparent authority to execute the release of the Individual Investors' mortgage, such that the Individual Investors should be estopped from denying the validity of the release.

DLP points to no other evidence of the *Individual Investors'* actions that would lead it to believe that they had consented to Equitybuild Finance releasing the

---

[13] The other case cited by DLP, *Bank of New York v. Langman*, concerns a forged release but there is no discussion of who signed the release, so it is not relevant to a determination of whether a release signed by someone other than the mortgagee is valid. *See id.*, 2013 IL App (2d) 120609, ¶¶ 17–20. Furthermore, *Langman* is about whether subsequent purchasers could rely on the release or whether it should have put them on inquiry notice; again, that is a different legal question than whether a mortgage's language creates a reasonable basis to believe that a party other than the mortgagee has the authority to release the mortgage.

A24

mortgage on their behalf. The principal's actions must be the basis for the reasonable belief that an agent has the requisite authority. *See Schoenberger v. Chicago Transit Auth.*, 84 Ill.App.3d 1132, 1136 (1st Dist. 1980); *Weil*, 218 Ill.App.3d at 390. For that reason, neither Equitybuild's real estate attorney's opinion letter, nor the affidavit of lost note prepared and signed by Equitybuild Finance is evidence of Equitybuild Finance's apparent authority. The same is true for the title commitment and the closing protection letter issued by the title insurance company.

It is DLP's burden to show that Equitybuild Finance had the authority, actual or apparent, to release the Individual Investors' mortgage. *Schoenberger*, 84 Ill.App.3d at 1136. DLP has not done so. The release of the Individual Investors' mortgage was signed by someone other than the mortgagee or their legal representative, so it is not valid. The Individual Investors have a first-position secured interest in the proceeds of 6160–6212 S. Martin Luther King Drive and should receive *pro rata* shares of those proceeds, using a net loss calculation method.

### C. Shatar Capital LLC and 5450 S. Indiana Ave. & 7749 S. Yates Ave.

Equitybuild solicited funds to invest in 5450 S. Indiana Ave. and 7749 S. Yates Ave. from both Individual Investors and Shatar Capital and represented to both that they had a first-position lien in the properties to secure their loans. The Receiver recommends that Shatar's claim be considered an equity investment because the Shatar and the Cohens agreed to a *heter iska*; the parties also dispute who has the senior lien in the properties.

### 1. *Heter Iska*

A *heter iska* is an agreement under Jewish law that treats money loaned to another as an investment in a business venture. The owner of the venture, i.e., the borrower, pays a fixed monthly return to the lender as a share of profits from the venture. This agreement allows religious Jews to lend and borrow money to one another without formally charging interest, which is prohibited by Jewish law. *See In re Venture Mortg. Fund, L.P.*, 245 B.R. 460, 466 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002); *see also Barclays Discount Bank, Ltd. v. Levy*, 743 F.2d 722, 724 n.2 (9th Cir. 1984). When other contracts exist that define the relationship between two parties, the *heter iska* does not supersede the language of the underlying contract. *See Edelkind v. Fairmont Funding, Ltd.*, 539 F.Supp.2d 449, 454 (D. Mass. 2008), *abrogated on other grounds by Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282 (1st Cir. 2013); *cf. Colby v. Newman*, No. CV 11-07413 JGB(RZx), 2013 WL 12124390, at *12 (C.D. Cal. June 11, 2013) (if religious agreement is the only contract between the parties, then it can be enforceable).

In this case, Shatar and Equitybuild contracted through the note and mortgage; the *heter iska* was something that Daniel Namvar requested to ensure he was complying with Jewish law, not an agreement to change the terms of the parties' contract. Because the note and mortgage define the Shatar lenders as secured creditors, that is how the secular courts treat them.

### 2. *Lien Priority*

Both Shatar and the Individual Investors claim priority in the proceeds of Indiana and Yates properties. For mortgages, deeds, and other instruments of writing

to be enforceable against third parties, they must be recorded: "[A]ll such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." 765 ILCS 5/30. This means that the first person to record a deed or mortgage has priority. The case law further recognizes:

> the statute gives a priority to the deed first recorded only where the grantee of the recorded deed has acted fairly and in good faith. A subsequent purchaser who has notice before he buys a particular parcel that a deed has been executed to another person is bound by the former deed even though his own deed be recorded first.

*Reed v. Eastin*, 379 Ill. 586, 592 (Ill. 1942) (cleaned up).[14] A subsequent purchaser or mortgagee "having notice of facts which would put a prudent man on notice is chargeable with knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation." *Id*. The party charging notice has the burden of proof. *Id*.

The Individual Investors' mortgage on 7749 S. Yates was executed first, then the Shatar Lenders' mortgages on 7749 S. Yates and 5450 S. Indiana were executed, and lastly the Individual Investors' mortgage on 5450 S. Indiana was executed. The

---

[14] Although much of the case law is about purchase of property, courts recognize that similar rules apply to liens against a property. *See Life Sav. & Loan Ass'n of America v. Bryant*, 125 Ill.App.3d 1012, 1019 (1st Dist. 1984) ("Where, however, the mortgagee, at the time of taking the mortgage, has knowledge or legal notice of a prior conveyance, it is not entitled to the protection of a bona fide purchaser."); *see also US Bank N.A. v. Villasenor*, 2012 IL App (1st) 120061, ¶¶ 58–60, 54 (finding that bank was not a bona fide mortgagee because it had inquiry notice of prior owner's continuing interest in the home).

A27

Shatar Lenders' mortgages were both recorded on April 4, 2017, close in time to the actual transactions. The Individual Investors' mortgages were recorded on June 23, 2017. Following the rule of first-in-time to record takes priority, Shatar would have the priority lien in both properties. However, Shatar's mortgages only have priority if they recorded their liens without notice of the Individual Investors' liens (or any potential equitable lien).

Notice can be actual or constructive; actual notice is self-explanatory—what did the party know at the time of the transaction? *Almazan v. 7354 Corp.*, 2023 IL App (1st) 220794, ¶ 25. "[C]onstructive knowledge is knowledge that the law imputes to the purchaser," and is divided into two sub-types—record notice and inquiry notice. *Id*. Record notice is the information kept by the office of the recorder of deeds or registrar. *Id*. Inquiry notice occurs when the information available to the purchaser or mortgagee would cause a prudent person "to think twice"; the law imputes "knowledge of facts that he or she would have discovered by diligent inquiry" to a purchaser or mortgagee on inquiry notice. *Id*. at ¶ 26; *see also AS1, LLC v. Celtic Home Solutions, LLC*, 2022 IL App (1st) 220485, ¶ 33 ("A purchaser of real estate may rely on the public record of conveyances and instruments affecting title unless he has notice or is chargeable with notice of a claim or interest that is inconsistent with the record."); *U.S. Bank N.A. v. Johnston*, 2016 IL App (2d) 150128, ¶ 45 ("a purchaser having notice of facts that would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry").

Shatar (and other institutional lenders) argue that the knowledge imputed to those on inquiry notice is limited to what a purchaser or mortgagee would have found through a "title search" and because there was no mortgage in the records at the time, Shatar can't be charged with notice of another lien. But inquiry notice is different than record notice—all purchasers and mortgagees are charged with knowledge of what was in the recorder of deeds' public records at the time of the transaction. *In re County Collector*, 397 Ill.App.3d 535, 549 (1st Dist. 2009). Inquiry notice is about what information could be found out during the "title search process," but nowhere is "title search process" defined so narrowly that it's only what exists in the public records. *See County Collector*, 397 Ill.App.3d at 549; *Stump v. Swanson Dev. Co. LLC*, 2014 IL App (3d) 110784, ¶ 104.

In *Stump*, the court analyzed whether a lender's mortgage was valid because plaintiff Stump conveyed title to properties to his business partner and relied on a promise that he would be paid for the properties when their redevelopment plan became profitable. 2014 IL App (3d) 110784, ¶¶ 3–6. The business partner borrowed money using the properties as collateral and used the loan proceed for costs other than the development project. *Id*. at ¶¶ 5–9. The court asked what information the prospective lender would have found had it inquired into Stump's interest and concluded that, had the bank talked to Stump and examined the documents then existing between Stump and the business partner, it would have learned that the plan was "working"—that Stump thought he would be paid back from profits from the development of the property and there was no indication that the business

29

partner was going to behave differently. *Id*. at ¶¶ 117–19.[15] In this case, however, an inquiry into the relationship between the Individual Investors and Equitybuild would have uncovered that Equitybuild was promising a first position lien to the Individual Investors and sending loan documents with mortgages to the Individual Investors upon accepting their money.

For 7749 S. Yates, Shatar was on inquiry notice that there were other investors who had an interest in the property. First, Shatar received an email stating that Equitybuild Finance pooled money from individual investors to invest in a specific property and that it represented to those investors, "[a]s with all other EBF notes," they would have a "first lien position on the property." [1537] at 177. Shatar argues that because the email was sent in relation to a different property, it is not relevant to Shatar's knowledge about Yates and Indiana. I agree that it is not direct evidence that Shatar knew that there were other investors in Yates and Indiana, but the email is evidence that Shatar knew that Equitybuild Finance had a business model where it promised a first lien position to "all other" individual investors who had pooled their money to invest in a property.

Second, Namvar sent an email to Equitybuild confirming that he understood Equitybuild Finance was pooling smaller investors' loans to buy property: "Since we have become aware of your business structure, assuming your previous deals have

---

[15] The business partner "defaulted" on a promised payment to Stump about two months before the business partner obtained the last loan on the property, so for most of the transactions there was no delinquency or indication that the business partner was not following his promises. *Stump*, 2014 IL App (3d) 110784, ¶ 118.

been closed with crowdfunding investors, we need to make sure your refinancing of already closed deals are allowed and kosher[.]" [1537] at 179. Third, Equitybuild sent Namvar the template note, mortgage and servicing agreements for individual investors, which gave notice that individual investors were getting a mortgage to secure their loans. [1537] at 203–46. Namvar testified that he did not read those documents, [1537] at 116–17 (95:20–96:14), but Namvar can't disclaim notice just because he did not read through an email sent to him by the potential borrower.

Most importantly, Shatar knew that Equitybuild had already purchased 7749 S. Yates, so its loan was not being used to purchase the property. *See* [1602-1] at 170–74 (March 14, 2017 email that purchase transaction for 7749 S. Yates had already closed); *see also* [1602-1] at 162–63 (internal March 20, 2017 Shatar email stating Yates had been purchased).[16] A prudent person would have been alarmed to find out one of the properties which was supposed to be purchased with her loan had already been purchased—it suggests that the money for the purchase was supplied by someone else. Namvar knew that Equitybuild was going to receive money from the closing of Shatar's loan and he had previously believed that Equitybuild had to bring money to the table to close the deal for 5450 S. Indiana and 7749 S. Yates. See [1602-1] at 168. A reasonably prudent person who believed that Shatar's loan was going to be used to purchase 5450 S. Indiana and pay off the purchase loan for 7749 S. Yates,

---

[16] In his deposition, Namvar states he thought it could have been a "desktop closing," but does not explain why that means there would not be money from another source to fund the purchase. *See* [1537] at 68–69 (47:17–48:07). Namvar acknowledges that these types of closings are "very rare"—if Namvar thought something out of the norm was happening, he needed to investigate to find out the truth of the situation.

*and* that Equitybuild needed to put up more money to complete the transaction, would be alarmed to learn that Equitybuild was actually getting money out of the transaction.

The facts that Shatar could have learned through a diligent inquiry would have led it to know that other investors already had a mortgage against 7749 S. Yates. *See Johnston*, 2016 IL App (2d) 150128, ¶ 45 (person on notice is charged with facts that could be learned from diligent inquiry). If a lender knew that his loan was being used to re-finance an existing loan, it is reasonable to ask for proof that the prior loan was paid off. Namvar asked a general question about re-financing loans, but just received blank copies of rollover forms. *See* [1537] at 180–83. There is nothing in the record to suggest that Namvar asked how Equitybuild purchased 7749 S. Yates or for proof that the prior loan on 7749 S. Yates had been paid off. If he had, he would have learned that the original loan was made by a group of smaller investors and that there were no rollover documents for those investors. If, as the court in *Stump* posited, Namvar had spoken with the Individual Investors, he would have learned that they believed they had a first position lien in the property and that a signed mortgage granting a lien to the Individual Investors already existed. *See* [1537] at 306–313.

Namvar can be charged with knowledge of an existing lien on 7749 S. Yates, so the Individual Investors' lien takes priority over Shatar's mortgage. *See Bryant*, 125 Ill.App.3d at 1019 ("One who takes a mortgage upon property with knowledge, either actual or constructive, of an earlier although unrecorded conveyance of it, takes

it subject thereto and will not be permitted by placing his mortgage first on the record to gain priority over the earlier lien."). The Individual Investors should receive *pro rata* shares of the money in the 7749 S. Yates bank account, using a net loss calculation method.

For 5450 S. Indiana, there was no signed mortgage in favor of the Individual Investors at the time that Shatar made its loan to Equitybuild, and received and recorded its mortgage against the property. The legal questions, therefore, are what, if any, legal interest did the Individual Investors hold in 5450 S. Indiana at that time, can inquiry notice be applied to that kind of legal interest, and did Shatar have inquiry notice of the Individual Investors' interest in the property?

The Individual Investors and Receiver posit two legal theories that the Individual Investors had a cognizable interest in 5450 S. Indiana before Shatar—that the Individual Investors had (1) an equitable mortgage or (2) an equitable lien. An equitable mortgage arises when "money is loaned or credit given in reliance upon the security of property of the debtor but pledged by him in such manner as not to be enforceable as a mortgage at law." *Wilkinson v. Johnson*, 29 Ill.2d 392, 398–99 (Ill. 1963). A court may find an equitable mortgage when a written agreement evinces an intent that "the property therein described is to be held, given, or transferred as security for the obligation." *Hibernian Banking Ass'n v. Davis*, 295 Ill. 537, 543 (Ill. 1920); *see also Grigaitis v. Gaidauskis*, 214 Ill.App. 111, 117 (1st Dist. 1919) ("Pursuant to the maxim that equity will consider that which ought to be done as already in being, the promise to give a mortgage to secure a loan may be treated as

33

A33

an actual mortgage."). The intent that a written instrument should serve as an equitable mortgage must be shown by "clear, satisfactory and convincing evidence." *Wilkinson*, 29 Ill.2d at 399.

Equitybuild began soliciting investments from Individual Investors as early as December 2016 and returned a signed servicing agreement and unsigned mortgage and promissory note to those individuals. *See* [1602-1] at 66–107. The promissory note was dated February 6, 2017, and stated that the debt would be secured by a mortgage in 5450 S. Indiana Ave. Chicago, IL 60615. [1602-1] at 66–67. Each Individual Investor signed Exhibit A to the promissory note with the amount of their loan and the monthly interest amounts to be received. [1602-1] at 75. The unsigned mortgage listed the total amount of the Individual Investors' loan and specifically referred to 5450 S. Indiana as the property in which an interest was being granted; a final page was signed by each Individual Investor with the percentage of the total loan and the amount of monthly interest to be received. [1602-1] at 76, 82. Finally, the Collateral Agency and Servicing Agreement between Equitybuild Finance and each Individual Investor referenced the February 2, 2017 note and defined the "Mortgage" as how it was specified in the "Note" and gave the term "Collateral" the meaning defined in the Mortgage. [1602-1] at 84–86. All three documents evince that the parties intended the Individual Investors to be granted an interest in 5450 S. Indiana to secure their loan. These documents are clear and convincing evidence that the parties intended that 5450 S. Indiana secure the Individual Investors' mortgage

34

A34

and I find that the Individual Investors had equitable mortgages in 5450 S. Indiana and do not reach whether they had a distinct equitable lien.[17]

A second-in-time mortgagee who had notice of an equitable interest in a property can have its interest subordinated to that equitable interest. *See Villasenor*, 2012 IL App (1st) 120061, ¶¶ 58–59, 63–64, 71 (relying on possession by someone other than record title holder to find that second-in-time mortgagee was on inquiry notice and subordinating the second-in-time mortgage to an equitable mortgage). As discussed above, Shatar knew of Equitybuild Finance's general business model of pooling money from smaller investors and granting those investors a lien in the property; Namvar had the template documents in his possession. [1537] at 177, 203–246. Shatar also knew that Equitybuild was getting cash from the closing of the purchase of 5450 S. Indiana, when it had believed that its loan was going to be used to purchase 5450 S. Indiana. [1602-1] at 168.

While it is possible that the money out to Equitybuild was "coming from" the portion of the Shatar loan that was secured by 7749 S. Yates, the very fact that Equitybuild was getting cash out should have put Shatar on notice that the deal was different than expected. *See Reed*, 379 Ill. at 592 ("[E]very unusual circumstance is a

---

[17] "Equitable lien" and "equitable mortgage" are often used interchangeably. *See, for example*, *Pacini v. Ragopoulos*, 281 Ill.App.3d 274, 282 (1st Dist. 1996). An "equitable mortgage" requires a writing, and in turn gives the grantee more rights vis-à-vis that property: "where an instrument manifests an intent to charge or pledge property as security for a debt, and the property is identified, a lien will be recognized in equity." *Trustees of Zion Methodist Church v. Smith*, 335 Ill.App. 233, 237 (4th Dist. 1948). An "equitable lien" on the other hand can arise without a writing (although rarely) and is simply "the right to have property subjected to the payment of a claim. It is neither a debt nor a right of property, but a remedy for a debt." *Cole Taylor Bank v. Cole Taylor Bank*, 224 Ill.App.3d 696, 703–04 (1st Dist. 1992) (internal citation omitted).

35

ground of suspicion and demands investigation."). Finally, had Shatar inquired whether Equitybuild was getting money from another source to invest in 5450 S. Indiana, the documents existing at that time included the promissory notes, mortgages, and servicing agreements granting the Individual Investors an interest in 5450 S. Indiana. Shatar is charged with knowledge of the Individual Investors' equitable mortgages in 5450 S. Indiana and takes a second-place position.[18]

The Institutional Lenders point to *Stump* for the proposition that an equitable mortgage cannot supersede a recorded mortgage because *Stump* held that the doctrine of inquiry notice does not apply to implied vendor liens, an equitable lien. *See* 2014 IL App (3d) 110784, ¶¶ 94–102. But *Stump* relied on the fact that an implied vendor lien is "not an interest or estate in the property" nor is it an "instrument of writing which is authorized to be recorded," so it is not implicated by the Illinois Conveyances Act (and the resulting application of inquiry notice). *Id.* at ¶ 100. Unlike an implied vendor lien, however, equitable mortgages are recognized by the Illinois Mortgage Foreclosure law as "mortgages." *See Gandy v. Kimbrough*, 406 Ill.App.3d 867, 876 (1st Dist. 2010). Equitable mortgages therefore fall within the Conveyances

---

[18] Shatar, and other Institutional Lenders argue that the Individual Investors must show they have the right to equitable subrogation in order to supersede the Institutional Lender's lien. Equitable subrogation is appropriate when a later lender's loan is used to pay an earlier loan and the later lender's lien is treated as taking the position of the first lender's lien (often over a lien that was recorded between the time of the first and second loan). *See Aames Capital Corp. v. Interstate Bank of Oak Forest*. 315 Ill.App.3d 700, 705–07 (2d Dist. 2000) (ultimately holding that conventional subrogation applied to mortgage refinancing agreement). This is not a case where one lender is taking the lien position of another, instead the issue is whose lien should have priority, i.e., whether the Institutional Lenders' liens should be subordinated to the Individual Investors' liens due to the Institutional Lenders being on inquiry notice.

Act's recordation rules and the exception for a purchaser or mortgagee who is on notice of an earlier deed or interest. *Gandy*, 406 Ill.App.3d at 876–78 (finding that equitable mortgage superseded interest of third-party purchaser who was on inquiry notice).

The Individual Investors should receive *pro rata* shares of the money in the 5450 S. Indiana bank account, using a net loss calculation method. If there are funds remaining, then Shatar should recover its principal using a net loss calculation method.

### D.   Thorofare Capital, Inc. and 1700–08 Juneway Terrace

#### 1.   *Lien Priority*

Equitybuild began soliciting money from individual investors for 1700 Juneway as early as March 1, 2017, and sent investors signed Servicing Agreements, and unsigned copies of the mortgage and promissory, *see* [1602-1] at 18–65, but did not execute a mortgage in favor of the Individual Investors until April 6, 2017. [1563-3] at 2–10. The Individual Investors' mortgage was not recorded until June 23, 2017. [1563-3] at 2.

Equitybuild borrowed $2,175,000.00 from Thorofare Capital, Inc; some of the money was used to purchase 1700 Juneway Terrace and $600,000.00 was put into a capital expenditure reserve to be drawn on for improvements to the property. [1602-1] at 176–77.[19] Equitybuild's purchase of 1700 Juneway Terrace closed on April 6,

---

[19] Equitybuild put up $1 million of its own money to close the deal. [1602-1] at 176. There were also reserves (money held back from the loan) for taxes, interest, immediate repairs, and insurance. [1602-1] at 176.

2017, and Equitybuild executed a mortgage to Thorofare Capital on the same day. *See* [1563-1] at 2–55. Thorofare's mortgage was recorded on April 11, 2017. *Id.* at 2.

The Individual Investors argue that Thorofare was on inquiry notice of their interest in 1700 Juneway at the time that it made the loan to Equitybuild so its lien should be subordinated to theirs. As with the facts described above for 7749 S. Yates and 5450 S. Indiana, the Individual Investors had been making investments for some time before Thorofare gave a promissory note to Equitybuild on April 6, 2017. *See* [1588-7] at 2–13. While the record does not reveal which mortgage was executed first on April 6, 2017, the facts support a finding that the Individual Investors obtained an equitable mortgage in 1700 Juneway when they sent money to Equitybuild and received the mortgages, notes, and servicing agreements.

The next issue is whether Thorofare was on inquiry notice of the Individual Investors' prior lien when it made the loan to Equitybuild and obtained its interest in Juneway. Thorofare apparently commissioned a background investigation into Jerome Cohen. [1571] at 51–59. The document relates that Equitybuild "syndicates its real estate deals to investors and markets itself as 'a way for hard working people to secure their financial future.'" [1571] at 53. The investigation uncovered that Cohen had been sought by the police in 1993 and went through a lengthy bankruptcy beginning in 1994. [1571] at 55, 58. The background report also reflected that the State of Florida's Office of Financial Regulation had filed suit against Cohen in 2013, but that a hearing in 2014 was cancelled and the case was listed as "disposed." [1571] at 57.

Aside from the general statement that Equitybuild acted as a syndicator for smaller investors, there is nothing in this report that would put Thorofare on notice that there was another party (or parties) with an interest in 1700 W. Juneway. The record does not reflect whether Thorofare knew that Equitybuild was going to put up a portion of its own money as part of the transaction. All of the other negative information in the background report was about Cohen's creditworthiness, real estate tax issues, and criminal history. While relevant to a determination of whether Thorofare wanted to lend to Cohen, this information is not about the 1700 W Juneway deal and is not a basis to find that Thorofare was on inquiry notice of the Individual Investors' lien. As such, Thorofare has a first-position lien in the proceeds of 1700 W. Juneway.[20]

### 2. *Calculating Recovery*

Thorofare challenges the Receiver's application of the netting rule to its loans. For 1700 Juneway, Thorofare argues that it should be able to recover the $54,375 loan origination fee, $5,000 processing fee, and $10,973.50 prepaid interest because those amounts were loaned to Equitybuild and not paid back. [1588] at 14. But that money was not an outlay from Thorofare. The fees and pre-paid interest may have been normal parts of the transaction if Equitybuild were legitimate, ongoing concern, but that is not the case here. The distribution plan is attempting to ensure that as many people receive some kind of recovery on the money that left their "pockets" and

---

[20] This analysis also applies to Deborah Mullica's argument about equitable subordination made in her position statement. *See* [1555].

went to Equitybuild. *See Capital Consultants*, 397 F.3d at 737 (describing net loss recovery as "money-in, money-out" calculation). Because Thorofare received the fees and prepaid interest from Equitybuild at the closing, *see* [1602-1] at 176, they do not count as part of Thorofare's principal and are not losses to be compensated from the receivership estate. As for funds held in reserve, those funds never left Thorofare, so do not count as part of Thorofare's loss.

Because I find that no secured party should be able to recover accrued interest, I do not address Thorofare's arguments about how interest should be calculated. Finally, to the extent that Thorofare disputes the amount of interest payments it received from Equitybuild, it should have disclosed the correct amounts in its initial proof of claim; I accept the Receiver's estimate as a reasonable calculation of the interest payments received by Thorofare.

### E. Miscellaneous Issues

I accept the Receiver's recommendations as to the following miscellaneous issues. First, that claimants who rolled over their secured investment in specific properties into an equity position or an unsecured promissory note should be treated as unsecured creditors. *See* [1571] at 19 (list of properties and related investors who rolled funds over). Second, I agree that claimants whose funds were not actually rolled from a secured to an unsecured investment should retain their secured interests. *See* [1571] at 20 (list of properties and related voided rollovers). Finally, I will address claimants Optima Property Solutions and Eleven St. Felix Realty Corp's claims that were originally to 5450 S. Indiana when I address the properties in which

A40

their money was finally invested.[21] Finally, Entrust Group FBO Daniel Matthews IRA executed a release of its lien, which was recorded in the chain of title for 6160 S. Martin Luther King, so it does not have a secured interest in the property. *See* [1537] at 360–63.

Participants in the fraudulent scheme should not receive any money from the receivership. *See S.E.C. v. Enterprise Trust Co.*, No. 08-cv-1260, 2008 WL 4534154, at *6 (N.D. Ill. Oct. 7, 2008) *aff'd*, 559 F.3d 649 (7th Cir. 2009). I have previously denied John Allred's claim because of his participation in the fraud. *See* [1528] (order disallowing Allred's claim in Group 3 due to his participation in the scheme); *see also* [1602-1] at 109, 114 (John Allred cc'ed on signature documents for individual lender and email confirming receipt of funds). Furthermore, in response to the Receiver's recommendation, Allred did not dispute that he was part of the fraudulent scheme. I accept the Receiver's recommendation and disqualify Allred's claim.

I also accept the Receiver's recommendation that CLD Construction, Inc., CLC Electric, Inc., and Bauer Latoza Studio, Ltd. should be treated as unsecured claimants and those unsecured claims be disallowed where the claimants provided insufficient records to support their claim.

Claimant Paul Harrison moved to reinstate his claim to the proceeds of 5450 S. Indiana and that motion was approved. *See* [1600] *and* [1614]. Harrison's claim

---

[21] This does not affect Eleven St. Felix Street Realty Corp.'s claim to 6160–6212 S. Martin Luther King.

should be included as part of the Individual Investors' claims against 5450 S. Indiana and treated accordingly.

Because I find that DLP and Shatar's liens do not have priority under Illinois law, I do not address whether their liens could be voided as fraudulent conveyance. Both parties' motions for discovery on fraudulent conveyance issues, [1546] and [1547], are denied as moot.

## IV.    Conclusion

The Individual Investors (of each respective property) have a first-position lien in the proceeds of 6160–6212 S. Martin Luther King Drive, 7749 S. Yates, and 5450 S. Indiana Ave. DLP has a second-position lien in the proceeds of 6160 S. Martin Luther King; Shatar has a second-position lien in the proceeds of 7749 S. Yates and 5450 S. Indiana Ave. Thorofare has a first-position lien in the proceeds of 1700–08 Juneway Terrace. The Individual Investors have a second-position lien in the proceeds of 1700–08 Juneway. Any objections to the notice of settlement for Property 101 (6949–59 S. Merrill Ave.) must be filed by July 5, 2024.

All secured claimants in first position should recover a *pro rata* share of the proceeds, based on the amount of their original principal, minus any amounts received from Equitybuild. If any proceeds remain, then secured claimants in second position should be entitled to the same type of distribution. Any proceeds remaining after that should be transferred to the Receiver's general account for later distribution to unsecured claimants and administrative expenses. The motions for discovery, [1546] and [1547], are denied as moot.

The Receiver shall prepare proposed distribution orders consistent with this opinion and submit them to proposed_order_shah@ilnd.uscourts.gov on or before July 12, 2024.

ENTER:

Manish S. Shah
United States District Judge

Date: June 20, 2024

A43

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:18-cv-5587 |
| v. | Hon. Manish S. Shah |
| EQUITYBUILD, INC., et al., | |
| Defendants. | |

**ORDER APPROVING DISTRIBUTION OF PROCEEDS
FROM THE SALES OF GROUP 2 PROPERTIES 1, 4, 5 AND 79**

Pursuant to this Court's Memorandum Opinion and Order (Dkt. 1679) determining the priority of claimants to liquidated funds from the sales of the four estate properties located at 1700-08 W Juneway Terrace ("1700 Juneway" or "Property 1"), 5450-52 S Indiana Avenue ("5450 Indiana" or "Property 4"), 7749-59 S Yates Boulevard ("7749 Yates" or "Property 5"), 6160-6212 S Martin Luther King Drive ("6160 MLK" or "Property 79") (collectively, the "Subject Properties"), the Court hereby finds and ORDERS:

1.      Following due notice to all potentially interested claimants:

    a)   6160 MLK was sold by the Receiver free and clear of all liens pursuant to the Court's Order entered April 24, 2019 (Dkt. 346);

    b)   7749 Yates was sold by the Receiver free and clear of all liens pursuant to the Court's Order entered February 21, 2020 (Dkt. 633);

A44

c)  5450 Indiana was sold by the Receiver free and clear of all liens pursuant to the Court's Order entered June 16, 2020 (Dkt. 715); and

d)  1700 Juneway was sold by the Receiver free and clear of all liens pursuant to the Court's Order entered September 25, 2020 (Dkt. 802).

2.      Pursuant to the foregoing Orders, the net proceeds from the sale of these Group 2 Properties were deposited into a separate interest-bearing account for each property. Additionally, pursuant to the Court's Orders (Dkt. 796, 1372, 1433, 1452, 1504), additional funds were transferred into or out of these accounts, and all such additions and subtractions have been detailed in the Receiver's quarterly status reports.  (Dkt. 624, 698, 757, 839, 930, 985, 1017, 1077, 1164, 1243, 1280, 1328, 1379, 1448, 1516, 1535, 1589, 1652)  The balances in the accounts held by the Receiver for each property as of July 11, 2024 are set forth in Exhibits 1 to 4 to this Order.

3.      The Court approved a claims process as to which fair and adequate notice was provided to all potentially interested persons and all were provided a full and fair opportunity to submit claims and supporting information.  (*E.g.,* Dkt. 941)  The Court also determined that a summary process for adjudication of allegedly competing secured claims as to those properties, addressing claims against groups of properties on a seriatim basis, was necessary, appropriate, and afforded due process to all claimants and interested persons.  (*Id.*)

4.      The Court initiated the summary process for the resolution of Group 2 claims in May, 2023, setting a claims process schedule that was later extended by Court order.  (Dkt. 1476, 1532), and pursuant to that process:

a)  on November 8, 2023, the Receiver filed his Group 2 Disclosure of his position that the security interest given by EquityBuild, Inc. ("EquityBuild") to (i)

2

A45

Shatar Capital Inc. a/k/a Shatar Capital Partners, 1111 Crest Dr. LLC, Abraham Aaron Ebriani1, Hamid Esmail, and Farsaa Inc. (collectively "Shatar") with respect to 5450 Indiana and 7749 Yates and (ii) Direct Lending Partner LLC (successor to Arena DLP Lender LLC and DLP Lending Fund LLC (hereinafter "DLP") related to 6160 MLK, constitute voidable fraudulent transfers under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160 or are otherwise voidable under applicable law (Dkt. 1537);

b) on November 29, 2023, Plaintiff Securities and Exchange Commission ("SEC") filed a position statement with respect to 6160 MLK (Dkt. 1556, 1557), DLP filed a position statement asserting a first lien position on 6160 MLK (Dkt. 1559), Shatar filed a position statement asserting first lien positions on 5450 Indiana and 7749 Yates (Dkt. 1562), and Thorofare Asset Based Lending REIT Fund IV, LLC ("Thorofare") filed a position statement asserting a first lien position on 1700 Juneway (Dkt. 1554). Additionally, on the same date, investor lender claimants LMJ Sales (Dkt. 1553), Spectra Investments LLC and the Estate of Deborah L. Mullica (Dkt. 1555), Kirk Road Investments LLC (Dkt. 1558), Capital Investors, LLC, (Dkt. 1560), and Certain Individual Investors (Dkt. 1564), filed position statements with respect to the Group 2 properties in which they assert an interest, and on December 4, 2023, the Receiver filed an additional 101 position statements that had been submitted directly to the Receiver by other investor-lender claimants (Dkt. 1566);

3

A46

c) on December 20, 2023, the Receiver filed his Submission on Group 2 Claims, which included recommendations as to each of the claims asserting an interest in the Subject Properties (Dkt. 1571);

d) on January 10, 2024, Reply Statements were filed by the SEC (Dkt. 1583), DLP (Dkt. 1585), Shatar (Dkt. 1587), Thorofare (Dkt. 1588), Certain Individual Investors (Dkt. 1582), Capital Investors (Dkt. 1586), and LMJ Sales & Kirk Road Investments (Dkt. 1584); and

e) on February 22, 2024, the Receiver moved for leave to file a Sur-Response (Dkt. 1602), which motion was granted by the Court on March 1, 2024 (Dkt. 1614).

5. On June 20, 2024, the Court issued a Memorandum Opinion and Order regarding the Group 2 claims relating to the Subject Properties. (Dkt. 1679)

6. Adequate and fair notice has been provided to all interested and potentially interested parties (including lienholders in the chain of title), and these potentially interested parties, including all claimants asserting an interest in the Subject Properties, have had a full and fair opportunity to participate in the claims process established by the Court for the resolution of disputed claims and determination of secured interests.

7. Adequate and fair notice of the Receiver's motions to approve the allocation of legal fees to estate properties, including the Subject Properties, for the period from August 2018 through June 2022 has been provided to all claimants. (Dkt. 1107, 1321) All claimants have had a full and fair opportunity to assert their interests and any objections to the allocations in the Receiver's fee allocation motions and to Magistrate Judge Kim's orders granting the

4

A47

Receiver's fee allocation motions and overruling objections thereto (Dkt. 1381, 1419, 1490, 1491).

8.      Adequate and fair notice of the Receiver's fee applications and proposed  fee allocations for the period from July 2022 – March 2024 also has been provided to all claimants. (Dkt. 1332, 1384, 1478, 1517, 1538, 1594, 1660)  All claimants have had a full and fair opportunity to assert their interests and any objections to the allocations in the Receiver's fee applications for this period.

9.      The findings set forth in the Court's Memorandum Opinion and Order (Dkt. 1679) are expressly incorporated herein and the Court finds that they have been correctly set forth in the Distribution Plans attached hereto as Exhibits 1-4.  Additionally, the Court approves the distributions recommended for claims 1-2018 and 5-2018 of Darrell and Frances Duty, which were not previously addressed in the Receiver's Submission on Group 2 Claims (Dkt. 1571) or the Court's prior order (Dkt. 1679).

10.     The Court approves the Receiver's recommendation of final distributions as set forth in Exhibits 1 to 4 to this Order.  Because the Court intends that this be a final distribution, there will not be any holdbacks of professional fees or expenses associated with the Receiver's fee applications or fee allocation motions upon the distribution of proceeds to claimants.  The amounts for professional fees previously ordered to be held back with respect to the Subject Properties, which are set forth in Exhibits 1-4, are no longer held back and shall be distributed to Rachlis Duff & Peel as reflected in the Receiver's first through twenty-third fee applications. Additionally, the Court approves the payment of additional fees of $2,000.00 per property to cover reasonably estimated fees incurred after March 31, 2024 through the final distributions on the Subject Properties.  Following the distributions ordered herein, any residual interest hereafter

accruing shall be transferred to the Receiver's account for use in the administration of the Receivership Estate and/or as otherwise ordered by the Court.

Entered:

Manish S. Shah
United States District Court Judge

Date: July 15, 2024

6

A49

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| First Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Thorofare Asset Based Lending REIT IV | 1-1188 | $ 2,175,000.00 | $ 2,175,000.00 | | | | $ 656,739.71 | $ 1,518,260.29 | | | | $ 1,518,260.29 |

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Agee Family Trust c/o Scott R. Agee | 1-2001 | $ 40,000.00 | $ 40,000.00 | | | $ 6,592.05 | $ 6,592.05 | $ 33,407.95 | $ - | | 1.02% | $ 12,958.97 |
| Alcalli Sabat | 1-786 | $ 10,000.00 | $ 10,000.00 | | | $ 1,128.86 | $ 1,128.86 | $ 8,871.14 | $ - | | 0.27% | $ 3,441.12 |
| Aluvelu Homes LLC | 1-879 | $ 20,000.00 | $ 20,000.00 | | | $ 3,507.73 | $ 3,507.73 | $ 16,492.27 | $ - | | 0.50% | $ 6,397.36 |
| American Estate and Trust FBO Layne Jones IRA | 1-707 | $ 20,000.00 | $ 20,000.00 | | | $ 3,227.74 | $ 3,227.74 | $ 16,772.26 | $ - | | 0.51% | $ 6,505.97 |
| Asians Investing in Real Estate LLC | 1-503 | $ 15,000.00 | $ 15,000.00 | | | $ 2,605.83 | $ 2,605.83 | $ 12,394.17 | $ - | | 0.38% | $ 4,807.71 |
| Capital Investors, LLC | 1-1490 | $ 250,000.00 | $ 250,000.00 | | | $ 64,933.00 | $ 64,933.00 | $ 185,067.00 | $ - | In addition to interest and a bonus received on this investment, the Receiver recommends deducting $24,000 that EquityBuild paid "for marketing." | 5.64% | $ 71,787.64 |
| Chuck Denton \| Denton Real Estate Company Inc. 401k | 1-379 | $ 25,000.00 | $ 25,000.00 | | | $ 4,068.10 | $ 4,068.10 | $ 20,931.90 | $ - | | 0.64% | $ 8,119.50 |
| CLC Electric, Inc. (Costel Dumitrescu) | 1-1477 | $ 36,000.00 | $ - | $ 36,000.00 | | $ - | $ - | $ - | $ - | Unsecured trade creditor - The Receiver recommends no distribution from unencumbered funds due to a failure of documentation supporting the claim either submitted by claimant or located in EquityBuild records. | 0.00% | $ - |
| CLD Construction, Inc. (Doru Unchias) | 1-1454 | $ 70,000.00 | $ - | $ 5,000.00 | | $ - | $ - | $ - | $ 5,000.00 | Unsecured trade creditor | 0.00% | $ - |
| Clearwood Funding, LLC | 1-1276 | $ 50,000.00 | $ 50,000.00 | | | $ 8,346.83 | $ 8,346.83 | $ 41,653.17 | $ - | | 1.27% | $ 16,157.30 |
| CLOVE, LLC | 1-723 | $ 5,000.00 | $ 5,000.00 | | | $ 940.23 | $ 940.23 | $ 4,059.77 | $ - | | 0.12% | $ 1,574.79 |
| Coppy Properties, LLC | 1-1381 | $ 50,000.00 | $ 50,000.00 | | | $ 8,627.74 | $ 8,627.74 | $ 41,372.26 | $ - | | 1.26% | $ 16,048.33 |
| Cross 5774 Holdings LLC - Cross Global Funding Group | 1-860 | $ 50,000.00 | $ 50,000.00 | | | $ 8,544.40 | $ 8,544.40 | $ 41,455.60 | $ - | | 1.26% | $ 16,080.66 |
| Dana Speed | 1-684 | $ 40,000.00 | $ 40,000.00 | | | $ 6,306.70 | $ 6,306.70 | $ 33,693.30 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.03% | $ 13,069.66 |
| Danielle DeVarne | 1-679 | $ 50,000.00 | $ 50,000.00 | | | $ 8,619.40 | $ 8,619.40 | $ 41,380.60 | $ - | | 1.26% | $ 16,051.57 |
| David R Trengove | 1-481 | $ 35,000.00 | $ 35,000.00 | | | $ 5,578.58 | $ 5,578.58 | $ 29,421.42 | $ - | | 0.90% | $ 11,412.59 |
| Dee Ann Nason | 1-453 | $ 50,000.00 | $ 50,000.00 | | | $ 8,811.07 | $ 8,811.07 | $ 41,188.93 | $ - | | 1.26% | $ 15,977.22 |
| Dennis & Mary Ann Hennefer | 1-355 | $ 50,000.00 | $ 50,000.00 | | $ 4,670.29 | $ 6,933.37 | $ 11,603.66 | $ 38,396.34 | $ - | Pre-rollover distributions on loan secured by 7024 S Paxton | 1.17% | $ 14,893.97 |
| Duty, Darrell and Frances | 1-2018 | $ 10,000.00 | $ 10,000.00 | | | $ 1,625.59 | $ 1,625.59 | $ 8,374.41 | $ - | | 0.26% | $ 3,248.44 |
| Elaine Sison Ernst | 1-1029 | $ 30,000.00 | $ 30,000.00 | | | $ 5,066.67 | $ 5,066.67 | $ 24,933.33 | $ - | | 0.76% | $ 9,671.66 |
| Elizabeth A. Monnot-Chase | 1-1252 | $ 105,000.00 | $ 105,000.00 | | | $ 17,511.11 | $ 17,511.11 | $ 87,488.89 | $ - | | 2.67% | $ 33,937.01 |

**Exhibit 1**

A50

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Evans & Associates LLC (Will Evans) | 1-410 | $ 50,000.00 | $ 50,000.00 | | | $ 8,077.74 | $ 8,077.74 | $ 41,922.26 | $ | | 1.28% | $ 16,261.68 |
| Gary R Burnham FBO Raegan D Burnham Roth IRA | 1-1065 | $ 1,000.00 | $ | $ 1,000.00 | | $ 425.09 | $ 425.09 | $ | $ 574.91 | Claimant agreed to rollover this loan to SSDF1 on 6/26/17 | 0.00% | $ - |
| Gary R Burnham Jr. Family HSA (custodian iPLAN Group LLC) | 1-1066 | $ 9,000.00 | $ | $ 9,000.00 | | $ 395.00 | $ 395.00 | $ | $ 8,605.00 | Claimant agreed to rollover this loan to SSDF1 on 6/17/17 | 0.00% | $ - |
| Gilbert D Sherman Declaration of Trust 7/30/2013 | 1-92 | $ 50,000.00 | $ 50,000.00 | | | $ 8,077.74 | $ 8,077.74 | $ 41,922.26 | $ | | 1.28% | $ 16,261.68 |
| GRACE Ndungu | 1-609 | $ 50,000.00 | $ 50,000.00 | | | $ 8,330.52 | $ 8,330.52 | $ 41,669.48 | $ - | | 1.27% | $ 16,163.63 |
| Gregory R Scott and Gene X Erquiaga | 1-697 | $ 50,000.00 | $ 50,000.00 | | | $ 8,627.74 | $ 8,627.74 | $ 41,372.26 | $ - | | 1.26% | $ 16,048.33 |
| Helene D Kapsky | 1-1149 | $ 100,000.00 | $ 100,000.00 | | | $ 17,122.26 | $ 17,122.26 | $ 82,877.74 | $ - | | 2.53% | $ 32,148.34 |
| HIROYUKI ROY CHIN & LILLIAN S CHIN JTWROS | 1-1274 | $ 24,000.00 | $ 24,000.00 | | | $ 4,621.33 | $ 4,621.33 | $ 19,378.67 | $ - | | 0.59% | $ 7,517.00 |
| iPlan Group Agent for Custodian FBO Andrew Brooks IRA Account 3301018 | 1-203 | $ 20,000.00 | $ 20,000.00 | | | $ 4,474.42 | $ 4,474.42 | $ 15,525.58 | $ - | | 0.47% | $ 6,022.39 |
| iPlanGroup Agency for Custodian FBO Charles Powell IRA | 1-413 | $ 15,250.00 | $ 15,250.00 | | | $ 1,277.62 | $ 1,277.62 | $ 13,972.38 | $ - | | 0.43% | $ 5,419.90 |
| IRA Services Trust Company CFBO Melbourne Kimsey II | 1-661 | $ 50,000.00 | $ 50,000.00 | | | $ 8,561.07 | $ 8,561.07 | $ 41,438.93 | $ - | | 1.26% | $ 16,074.19 |
| JANICE BURRELL | 1-689 | $ 87,000.00 | $ 87,000.00 | | | $ 14,084.33 | $ 14,084.33 | $ 72,915.67 | $ - | | 2.22% | $ 28,284.05 |
| Jason Ragan - TSA | 1-1133 | $ 10,000.00 | $ 10,000.00 | | | $ 1,593.92 | $ 1,593.92 | $ 8,406.08 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 0.26% | $ 3,260.73 |
| Jason Ragan - TSA | 1-796 | $ 20,000.00 | $ 20,000.00 | | | $ 3,194.40 | $ 3,194.40 | $ 16,805.60 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 0.51% | $ 6,518.91 |
| Jill Meekcoms (Halverson) | 1-548 | $ 50,000.00 | $ 50,000.00 | | | $ 8,010.60 | $ 8,010.60 | $ 41,989.40 | $ - | | 1.28% | $ 16,287.72 |
| JLO Enterprises LLC | 1-726 | $ 37,000.00 | $ 37,000.00 | | | $ 5,870.05 | $ 5,870.05 | $ 31,129.95 | $ - | | 0.95% | $ 12,075.33 |
| JML Roth LLC | 1-725 | $ 4,000.00 | $ 4,000.00 | | | $ 740.25 | $ 740.25 | $ 3,259.75 | $ - | | 0.10% | $ 1,264.46 |
| John A Martino | 1-1494 | $ 100,000.00 | $ 100,000.00 | | | $ 17,205.59 | $ 17,205.59 | $ 82,794.41 | $ - | | 2.52% | $ 32,116.02 |
| Juliette Farr-Barksdale & Thomas Farr | 1-2074 | $ 300,000.00 | $ 300,000.00 | | | $ 52,916.57 | $ 52,916.57 | $ 247,083.43 | $ - | | 7.53% | $ 95,843.86 |
| Kameda Investments, LLC (Sole Owner/Manager - Arnold Kunio Kameda) | 1-121 | $ 100,000.00 | $ 100,000.00 | | | $ 17,222.26 | $ 17,222.26 | $ 82,777.74 | $ - | | 2.52% | $ 32,109.55 |
| Madison Trust Company Custodian FBO Brian Shaffer IRA Account # M1608073 and M1703059 | 1-411 | $ 100,000.00 | $ 100,000.00 | | | $ 15,922.26 | $ 15,922.26 | $ 84,077.74 | $ - | | 2.56% | $ 32,613.82 |
| Mark A. Miller ATF Domaskin Revocable Trust, August 8th, 2006 | 1-2040 | $ 100,000.00 | $ 100,000.00 | | | $ 17,088.93 | $ 17,088.93 | $ 82,911.07 | $ - | | 2.53% | $ 32,161.27 |
| May M. Akamine for Aurora Investments, LLC (assets formerly under MayREI, LLC) | 1-1412 | $ 110,000.00 | $ 110,000.00 | | | $ 18,494.00 | $ 18,494.00 | $ 91,506.00 | $ - | | 2.79% | $ 35,495.25 |
| Melanie T. or Gary M. Gonzales | 1-207 | $ 250,000.00 | $ 250,000.00 | | | $ 41,562.54 | $ 41,562.54 | $ 208,437.46 | $ - | | 6.35% | $ 80,853.06 |

A51

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Borgia IRA | 1-705 | $ 125,000.00 | $ 125,000.00 | | | $ 20,215.00 | $ 20,215.00 | $ 104,785.00 | $ - | | 3.19% | $ 40,646.19 |
| Michael C. McClane | 1-941 | $ 100,000.00 | $ 100,000.00 | | | $ 16,888.92 | $ 16,888.92 | $ 83,111.08 | $ - | | 2.53% | $ 32,238.86 |
| Mona M. Leonard SD ROTH - 2692021 | 1-123 | $ 50,000.00 | $ 50,000.00 | | | $ 8,736.07 | $ 8,736.07 | $ 41,263.93 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 1.26% | $ 16,006.31 |
| Patrick Connely | 1-939 | $ 50,000.00 | $ - | $ 50,000.00 | | $ 2,352.77 | $ 2,352.77 | $ - | $ 47,647.23 | Claimant agreed to rollover this loan to SSDF1 on 6/1/17 | 0.00% | $ - |
| Paul N. Wilmesmeier | 1-300 | $ 25,000.00 | $ 25,000.00 | | | $ 4,326.43 | $ 4,326.43 | $ 20,673.57 | $ - | | 0.63% | $ 8,019.29 |
| Paul S. Applefield, Trustee, Paul S. Applefield, DDS, 401k P | 1-2087 | $ 45,000.00 | $ 45,000.00 | | | $ 7,725.00 | $ 7,725.00 | $ 37,275.00 | $ - | | 1.14% | $ 14,459.00 |
| Paula Tucker | 1-1427 | $ 29,370.00 | $ 29,123.90 | | $ 3,151.93 | $ 4,072.64 | $ 7,224.57 | $ 21,899.33 | $ - | The Receiver recommends disallowing the pro-rata share of accrued interest rolled from 4611 S. Drexel, and deducting the pro-rata share of pre-rollover distributions from the loan secured by 4611 S Drexel | 0.67% | $ 8,494.77 |
| Pioneer Valley Properties LLC | 1-878 | $ 50,000.00 | $ 50,000.00 | | | $ 8,466.63 | $ 8,466.63 | $ 41,533.37 | $ - | | 1.27% | $ 16,110.83 |
| QUEST IRA INC. FBO REBECA E. SAVORY-ROMERO IRA ACCOUNT #1552 | 1-804 | $ 10,500.00 | $ 10,500.00 | | | $ 1,718.50 | $ 1,718.50 | $ 8,781.50 | $ - | | 0.27% | $ 3,406.35 |
| Quest Trust Company FBO Paul Applefield Roth IRA#16413-21 | 1-2088 | $ 6,500.00 | $ 6,500.00 | | | $ 1,128.07 | $ 1,128.07 | $ 5,371.93 | $ - | | 0.16% | $ 2,083.78 |
| Quest Trust Company FBO Robin Applefield Roth IRA#25164-21 | 1-2089 | $ 6,500.00 | $ 6,500.00 | | | $ 1,128.07 | $ 1,128.07 | $ 5,371.93 | $ - | | 0.16% | $ 2,083.78 |
| R D Meredith General Contractors Llc | 1-1138 | $ 100,000.00 | $ 100,000.00 | | | $ 14,833.73 | $ 14,833.73 | $ 85,166.27 | $ - | | 2.60% | $ 33,036.07 |
| R.D.Meredith General Contractors llc 401k | 1-528 | $ 40,000.00 | $ 40,000.00 | | | $ 5,933.37 | $ 5,933.37 | $ 34,066.63 | $ - | | 1.04% | $ 13,214.47 |
| Ricardo Acevedo Lopez | 1-746 | $ 15,000.00 | $ 15,000.00 | | | $ 2,618.33 | $ 2,618.33 | $ 12,381.67 | $ - | | 0.38% | $ 4,802.86 |
| Rise Up Real Estate Group, LLC | 1-1484 | $ 144,046.00 | $ 144,046.00 | | | $ 23,663.60 | $ 23,663.60 | $ 120,382.40 | $ - | | 3.67% | $ 46,696.43 |
| RLD Denouement Holding Company, LLC | 1-483 | $ 20,000.00 | $ 20,000.00 | | | $ - | $ - | $ 20,000.00 | $ - | | 0.61% | $ 7,758.02 |
| Robert Potter | 1-1389 | $ 79,274.00 | $ 79,274.00 | | | $ 13,441.38 | $ 13,441.38 | $ 65,832.62 | $ - | | 2.01% | $ 25,536.53 |
| Scott Eaton | 1-1470 | $ 25,000.00 | $ 25,000.00 | | | $ 4,272.27 | $ 4,272.27 | $ 20,727.73 | $ - | | 0.63% | $ 8,040.30 |
| Serva Fidem, LLC | 1-1425 | $ 34,930.00 | $ 34,930.00 | | | $ 5,738.26 | $ 5,738.26 | $ 29,191.74 | $ - | | 0.89% | $ 11,323.50 |
| Simon Usuga | 1-681 | $ 45,000.00 | $ 45,000.00 | | | $ 7,350.00 | $ 7,350.00 | $ 37,650.00 | $ - | | 1.15% | $ 14,604.47 |
| Source One Funding, LLC | 1-691 | $ 50,000.00 | $ 50,000.00 | | | $ 8,411.07 | $ 8,411.07 | $ 41,588.93 | $ - | | 1.27% | $ 16,132.38 |
| Spectra Investments LLC/ Deborah L. Mullica | 1-1220 | $ 110,000.00 | $ 110,000.00 | | | $ 17,551.15 | $ 17,551.15 | $ 92,448.85 | $ - | | 2.82% | $ 35,860.98 |
| STEVEN R. BALD | 1-399 | $ 60,000.00 | $ 60,000.00 | | | $ 10,393.33 | $ 10,393.33 | $ 49,606.67 | $ - | | 1.51% | $ 19,242.47 |
| Teresita M. Shelton | 1-330 | $ 20,630.00 | $ 20,630.00 | | $ 2,732.52 | $ 2,406.80 | $ 5,139.32 | $ 15,490.68 | $ - | Pre-rollover distributions on loan secured by 4611 S Drexel | 0.47% | $ 6,008.85 |

A52

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tiger Chang Investments LLC | 1-164 | $ 10,000.00 | $ 10,000.00 | | | $ 1,743.93 | $ 1,743.93 | $ 8,256.07 | $ - | | 0.25% | $ 3,202.54 |
| Vladimir Matviishin - iPlanGroup Agent for Custodian FBO Vladimir Matviishin | 1-1294 | $ 7,500.00 | $ 7,500.00 | | | $ 1,195.42 | $ 1,195.42 | $ 6,304.58 | $ - | | 0.19% | $ 2,445.55 |
| VLADIMIR RAUL GARCIA MELIJOV | 1-75 | $ 100,000.00 | $ 100,000.00 | | | $ 16,255.59 | $ 16,255.59 | $ 83,744.41 | $ - | | 2.55% | $ 32,484.52 |
| William H. Akins, Jr. | 1-2003-1 | $ 20,000.00 | $ 20,000.00 | | | $ 3,259.71 | $ 3,259.71 | $ 16,740.29 | $ - | | 0.51% | $ 6,493.57 |
| William H. Akins, Jr. (CAMA SDIRA LLC FBO Bill Akins IRA) | 1-2003-2 | $ 25,000.00 | $ 25,000.00 | | | $ 3,878.63 | $ 3,878.63 | $ 21,121.37 | $ - | | 0.64% | $ 8,193.00 |
| William Hooper | 1-278 | $ 54,800.00 | $ - | $ 54,800.00 | | $ 5,985.36 | $ 5,985.36 | $ - | $ 48,814.64 | Claimant agreed to rollover this loan to SSDF4 on 11/21/17 | 0.00% | $ - |
| XUWEN LIN | 1-648 | $ 8,700.00 | $ 8,700.00 | | | $ 1,504.48 | $ 1,504.48 | $ 7,195.52 | $ - | | 0.22% | $ 2,791.15 |
| Zahra (Nina) Mofrad | 1-1024 | $ 25,000.00 | $ 25,000.00 | | | $ 4,305.60 | $ 4,305.60 | $ 20,694.40 | $ - | | 0.63% | $ 8,027.37 |
| | | $ 4,191,000.00 | $ 3,969,953.90 | $ 155,800.00 | | | | $ 3,280,186.04 | $ 110,641.78 | | 100.00% | $ 1,272,386.82 |

Total Distributions $ 2,790,647.11

| Calculation of Funds Available for Distribution | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fee Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution | Thorofare Distribution (1st Position) | Amount available for Distribution (2nd Position) |
| 1700-08 Juneway Terrace | 1 | $ 2,820,127.34 | $ 27,480.23 | $ 2,000.00 | $ 2,790,647.11 | $ 1,518,260.29 | $ 1,272,386.82 |

A53

Ex. 2 - 5450-52 S Indiana Avenue (Property 4)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aksel Allouch | 4-90 | $ 50,000.00 | $ 50,000.00 | | | $ 9,130.60 | $ 9,130.60 | $ 40,869.40 | $ - | | 1.83% | $ 32,799.34 |
| Alcalli Sabat (iPlan Group FBO Alcalli Sabat Roth 3320274) | 4-786-2 | $ 10,000.00 | $ 10,000.00 | | | $ 1,839.40 | $ 1,839.40 | $ 8,160.60 | $ - | | 0.37% | $ 6,549.21 |
| Alcalli Sabat (iPlanGroup FBO Alcalli Sabat IRA 4300293) | 4-786-1 | $ 20,000.00 | $ 20,000.00 | | | $ 3,718.93 | $ 3,718.93 | $ 16,281.07 | $ - | | 0.73% | $ 13,066.21 |
| Aluvelu Homes LLC | 4-879 | $ 20,000.00 | $ 20,000.00 | | | $ 4,102.27 | $ 4,102.27 | $ 15,897.73 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 0.71% | $ 12,758.57 |
| Anjie Comer | 4-612 | $ 10,000.00 | $ 10,000.00 | | | $ 1,192.81 | $ 1,192.81 | $ 8,807.19 | $ - | | 0.39% | $ 7,068.12 |
| Annie Chang | 4-475 | $ 15,000.00 | $ 15,000.00 | | $ 2,956.25 | $ 1,072.50 | $ 4,028.75 | $ 10,971.25 | $ - | Pre-rollover distributions on loan secured by 4533 S Calumet | 0.49% | $ 8,804.87 |
| Arthur and Dinah Bertrand | 4-890 | $ 50,000.00 | $ 50,000.00 | | | $ 9,000.00 | $ 9,000.00 | $ 41,000.00 | $ - | | 1.84% | $ 32,904.15 |
| Bernadette Chen Eleven St. Felix Street Realty Corp. | 4-2012 | $ 50,000.00 | $ - | | | $ - | $ - | $ - | $ - | The funds claimant wired for this investment were applied to a loan secured by 8326 S Ellis, as acknowledged by claimant in contemporaneous correspondence. | 0.00% | $ - |
| BLUE MOUNTAIN VENTURES PSP 401K, GEORGE SAMUEL | 4-491 | $ 150,000.00 | $ 150,000.00 | | | $ 27,541.66 | $ 27,541.66 | $ 122,458.34 | $ - | | 5.49% | $ 98,277.74 |
| Bluebridge Partners Limited | 4-727 | $ 100,000.00 | $ 100,000.00 | | | $ 21,177.73 | $ 21,177.73 | $ 78,822.27 | $ - | | 3.53% | $ 63,258.04 |
| Bonnie Young | 4-1223 | $ 50,000.00 | $ 50,000.00 | | | $ 5,822.25 | $ 5,822.25 | $ 44,177.75 | $ - | | 1.98% | $ 35,454.42 |
| Bright Venture, LLC | 4-84 | $ 40,000.00 | $ 40,000.00 | | | $ 8,204.40 | $ 8,204.40 | $ 31,795.60 | $ - | | 1.43% | $ 25,517.25 |
| CLD Construction, Inc. (Doru Unchias) | 4-1454 | $ 2,500.00 | $ - | $ 2,500.00 | | $ - | $ - | $ - | $ 2,500.00 | Unsecured trade creditor | 0.00% | $ - |
| David R Trengove | 4-481 | $ 44,266.00 | $ 44,233.60 | | | $ 8,832.72 | $ 8,832.72 | $ 35,400.88 | $ - | | 1.59% | $ 28,410.63 |
| Denise Renee Wilson | 4-1492 | $ 90,000.00 | $ 90,000.00 | | | $ 12,295.58 | $ 12,295.58 | $ 77,704.42 | $ - | | 3.48% | $ 62,360.92 |
| Distributive Marketing Inc. | 4-806 | $ 50,000.00 | $ 50,000.00 | | | $ 10,205.60 | $ 10,205.60 | $ 39,794.40 | $ - | | 1.78% | $ 31,936.61 |
| Donald Freers aka Meadows Advisors LLC | 4-72 | $ 50,000.00 | $ 50,000.00 | | | $ 4,838.92 | $ 4,838.92 | $ 45,161.08 | $ - | | 2.02% | $ 36,243.58 |
| Douglas Nebel and Narine Nebel | 4-1080 | $ 65,000.00 | $ - | | $ 65,000.00 | $ 5,775.00 | $ 5,775.00 | $ - | $ 59,225.00 | Claimant agreed to rollover this loan to SSDF4 on 9/1/17 | 0.00% | $ - |
| Ed A Bancroft (iPlan Group FBO Ed Bancroft IRA 3300405) | 4-2008-1 | $ 5,800.00 | $ 5,800.00 | | | $ 1,062.00 | $ 1,062.00 | $ 4,738.00 | $ - | | 0.21% | $ 3,802.44 |
| Ed A. Bancroft | 4-2008-2 | $ 3,171.00 | $ 3,171.00 | | | $ 384.79 | $ 384.79 | $ 2,786.21 | $ - | | 0.12% | $ 2,236.05 |
| Erika Dietz IRA account (Madison Trust Company Custodian FBO Erika Dietz Acct # M1612085) | 4-1301 | $ 102,666.66 | $ 100,000.00 | | | $ 20,511.06 | $ 20,511.06 | $ 79,488.94 | $ - | The Receiver recommends disallowing $2,666.66 accrued interest claimant added to principal amount of loan | 3.56% | $ 63,793.07 |
| Girl Cat Capital West LLC, Valentina Salge, President | 4-350 | $ 50,000.00 | $ 50,000.00 | | | $ 8,761.76 | $ 8,761.76 | $ 41,238.24 | $ - | | 1.85% | $ 33,095.34 |
| Graystone Realty, LLC | 4-1210 | $ 50,000.00 | $ 50,000.00 | | | $ 10,197.27 | $ 10,197.27 | $ 39,802.73 | $ - | | 1.78% | $ 31,943.29 |
| Harendra Pal | 4-1125 | $ 8,932.00 | $ 8,932.00 | | | $ 1,785.86 | $ 1,785.86 | $ 7,146.14 | $ - | | 0.32% | $ 5,735.06 |
| HIROYUKI ROY CHIN & LILLIAN S CHIN JTWROS | 4-1274 | $ 26,000.00 | $ 26,000.00 | | | $ 4,084.21 | $ 4,084.21 | $ 21,915.79 | $ - | | 0.98% | $ 17,588.30 |
| Howard and Doris Bybee | 4-1039 | $ 15,000.00 | $ 15,000.00 | | | $ 937.08 | $ 937.08 | $ 14,062.92 | $ - | | 0.33% | (illegible) |

Exhibit 2

A54

Ex. 2 - 5450-52 S Indiana Avenue (Property 4)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IG Investment Trust | 4-1061 | $ 25,000.00 | $ 25,000.00 | | | $ 4,969.40 | $ 4,969.40 | $ 20,030.60 | $ - | | 0.90% | $ 16,075.36 |
| Influx Investments LLC | 4-744 | $ 25,000.00 | $ 25,000.00 | | | $ 5,156.90 | $ 5,156.90 | $ 19,843.10 | $ - | | 0.89% | $ 15,924.89 |
| iPlanGroup Agency for Custodian FBO Charles Powell IRA | 4-413 | $ 2,310.00 | $ 2,310.00 | | | $ 193.56 | $ 193.56 | $ 2,116.44 | $ - | | 0.09% | $ 1,698.53 |
| iPlanGroup Agent for Custodian FBO Charles Michael Anglin | 4-331 | $ 15,000.00 | $ 15,000.00 | | | $ 1,880.00 | $ 1,880.00 | $ 13,120.00 | $ - | | 0.59% | $ 10,529.33 |
| iPlanGroup Agent for Custodian FBO Rajanikanth Tanikella IRA | 4-829 | $ 10,000.00 | $ 10,000.00 | | | $ 1,914.40 | $ 1,914.40 | $ 8,085.60 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.36% | $ 6,489.02 |
| IRA Services Trust Custodian FBO Ronald Stephen Klein | 4-301 | $ 50,000.00 | $ 50,000.00 | | | $ 10,247.27 | $ 10,247.27 | $ 39,752.73 | $ - | | 1.78% | $ 31,903.16 |
| James Anthony Ande | 4-591 | $ 25,000.00 | $ - | $ 25,000.00 | | $ 1,273.60 | $ 1,273.60 | $ - | $ 23,726.40 | Claimant agreed to rollover this loan to SSDF1 on 7/26/17 | 0.00% | $ - |
| Julie Patel | 4-409 | $ 10,000.00 | $ 10,000.00 | | $ 967.43 | $ 1,386.63 | $ 2,354.06 | $ 7,645.94 | $ - | Pro-rata share of pre-rollover distributions on loan secured by 7024 S Paxton | 0.34% | $ 6,136.17 |
| Karl R. DeKlotz | 4-1179 | $ 150,000.00 | $ 150,000.00 | | | $ 32,066.66 | $ 32,066.66 | $ 117,933.34 | $ - | | 5.29% | $ 94,646.24 |
| Kirk Road Investments, LLC | 4-755 | $ 121,855.00 | $ 100,000.00 | $ - | $ 7,016.83 | $ 33,211.57 | $ 40,228.40 | $ 59,771.60 | $ - | The Receiver recommends disallowing the accrued interest that was rolled into this investment and deducting the pro-rata share of pre-rollover distributions on loan secured by 4611 S Drexel | 2.68% | $ 47,969.11 |
| LMJ Sales, Inc. | 4-1346 | $ 100,000.00 | $ 100,000.00 | | | $ 19,994.39 | $ 19,994.39 | $ 80,005.61 | $ - | | 3.59% | $ 64,207.72 |
| Luna D. and Jerry E. Ellis | 4-2020 | $ 41,066.65 | $ 40,000.00 | | | $ 7,911.07 | $ 7,911.07 | $ 32,088.93 | $ - | The Receiver recommends disallowing $1,066.65 accrued interest claimant added to principal amount of loan | 1.44% | $ 25,752.66 |
| Mark DeLuca | 4-485 | $ 110,000.00 | $ 110,000.00 | | | $ 21,223.93 | $ 21,223.93 | $ 88,776.07 | $ - | | 3.98% | $ 71,246.36 |
| Mark P. Mouty | 4-165 | $ 20,000.00 | $ 20,000.00 | | | $ 4,078.94 | $ 4,078.94 | $ 15,921.06 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.71% | $ 12,777.29 |
| MID LLC by Carolyn Mize | 4-524 | $ 50,000.00 | $ 50,000.00 | | | $ 9,513.93 | $ 9,513.93 | $ 40,486.07 | $ - | | 1.82% | $ 32,491.70 |
| Mike Dirnberger | 4-443 | $ 10,000.00 | $ 10,000.00 | | | $ 2,057.73 | $ 2,057.73 | $ 7,942.27 | $ - | | 0.36% | $ 6,373.99 |
| Moran Blueshtein and Upender Subramanian | 4-95 | $ 20,000.00 | $ 20,000.00 | | | $ - | $ - | $ 20,000.00 | $ - | | 0.90% | $ 16,050.80 |
| Mountain West LLC IRA FBO Rachael B. Curcio Acct# 50679-01 | 4-315 | $ 10,000.00 | $ 10,000.00 | | | $ 364.71 | $ 364.71 | $ 9,635.29 | $ - | | 0.43% | $ 7,732.71 |
| Nehasri Ltd (investment under Nehasri Ltd by Manoj Donthineni) | 4-1365 | $ 25,000.00 | $ 25,000.00 | | | $ 5,127.73 | $ 5,127.73 | $ 19,872.27 | $ - | | 0.89% | $ 15,948.30 |
| Optima Property Solutions, LLC | 4-1023 | $ 171,167.00 | $ - | | | $ 28,033.39 | $ 28,033.39 | $ - | $ - | Claimant transferred this loan to a group of other properties in January 2018 | 0.00% | $ - |
| Paul Harrison | 4-2026 | $ 43,098.00 | $ 43,098.00 | | | $ 8,832.70 | $ 8,832.70 | $ 34,265.30 | $ - | Claimant withdrew his claim on 5/18/23 Judge Shah reinstated claim on 3/1/24 | 1.54% | $ 27,499.28 |
| Paul N. Wilmesmeier | 4-300 | $ 25,000.00 | $ 25,000.00 | | | $ 5,144.40 | $ 5,144.40 | $ 19,855.60 | $ - | | 0.89% | $ 15,934.92 |
| Petra Zoeller | 4-594 | $ 50,000.00 | $ 50,000.00 | | | $ 10,072.27 | $ 10,072.27 | $ 39,927.73 | $ - | | 1.79% | $ 32,043.61 |

A55

Ex. 2 - 5450-52 S Indiana Avenue (Property 4)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Provident Trust Group F.B.O Charles Smith SoloK | 4-1198 | $ 50,000.00 | $ 50,000.00 | | | $ 9,563.93 | $ 9,563.93 | $ 40,436.07 | $ | | 1.81% | $ 32,451.57 |
| R2V2 Investments LLC | 4-842 | $ 20,000.00 | $ 20,000.00 | | | $ 4,102.27 | $ 4,102.27 | $ 15,897.73 | $ | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.71% | $ 12,758.57 |
| Robert W. Jennings | 4-447 | $ 150,000.00 | $ 150,000.00 | | $ 14,798.35 | $ 25,304.05 | $ 40,102.40 | $ 109,897.60 | $ | | 4.93% | $ 88,197.24 |
| Sam Harrison | 4-2027 | $ 25,000.00 | $ 25,000.00 | | | $ 4,331.90 | $ 4,331.90 | $ 20,668.10 | $ | | 0.93% | $ 16,586.98 |
| Sandeep Kattar | 4-1396 | $ 50,000.00 | $ 50,000.00 | | | $ 8,125.04 | $ 8,125.04 | $ 41,874.96 | $ | | 1.88% | $ 33,606.34 |
| SeaBo Properties LLC / Darrell Odum | 4-381 | $ 24,000.00 | $ 24,000.00 | | | $ 4,398.67 | $ 4,398.67 | $ 19,601.33 | $ | | 0.88% | $ 15,730.85 |
| Steven G. Mouty | 4-566 | $ 50,000.00 | $ 50,000.00 | | | $ 10,372.27 | $ 10,372.27 | $ 39,627.73 | $ | | 1.78% | $ 31,802.85 |
| Steven Roche | 4-329 | $ 5,000.00 | $ 5,000.00 | | $ 49.52 | $ 1,140.43 | $ 1,189.95 | $ 3,810.05 | $ | Pre-rollover distributions on loan secured by 7024 S Paxton | 0.17% | $ 3,057.72 |
| Strategic Wealth Ventures, LLC, Brian Kothman Member | 4-595 | $ 35,655.00 | $ 35,655.00 | | | $ 7,010.18 | $ 7,010.18 | $ 28,644.82 | $ | | 1.28% | $ 22,988.62 |
| Susan Kalisiak | 4-1438 | $ 9,274.00 | $ 9,274.00 | | | $ 602.82 | $ 602.82 | $ 8,671.18 | $ | | 0.39% | $ 6,958.97 |
| Thomas F. Gordon | 4-2023 | $ 100,000.00 | $ 100,000.00 | | | $ 20,161.06 | $ 20,161.06 | $ 79,838.94 | $ | | 3.58% | $ 64,073.96 |
| Timothy S Sharp | 4-76 | $ 50,000.00 | $ 50,000.00 | | $ 3,869.43 | $ 8,166.62 | $ 12,036.05 | $ 37,963.95 | $ | Pre-rollover distributions on loan secured by 4611 S Drexel | 1.70% | $ 30,467.60 |
| TMAKINDE, LLC | 4-372 | $ 25,000.00 | $ 25,000.00 | | | $ 1,129.00 | $ 1,129.00 | $ 23,871.00 | $ | | 1.07% | $ 19,157.44 |
| Vartan Tarakchyan | 4-1118 | $ 30,000.00 | $ | $ 30,000.00 | | $ 3,361.66 | $ 3,361.66 | $ | $ 26,638.34 | Claimant agreed to rollover this loan to SSDF4 on 3/27/17 | 0.00% | $ - |
| Verdell Michaux | 4-2039 | $ 5,000.00 | $ 5,000.00 | | | $ 962.26 | $ 962.26 | $ 4,037.74 | $ | | 0.18% | $ 3,240.45 |
| Vivek Pingili | 4-522 | $ 30,000.00 | $ 30,000.00 | | | $ 6,328.33 | $ 6,328.33 | $ 23,671.67 | $ | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.06% | $ 18,997.47 |
| Vladimir Matviishin - iPlanGroup Agent for Custodian FBO Vladimir Matviishin | 4-1294 | $ 14,000.00 | $ 14,000.00 | | | $ 2,607.93 | $ 2,607.93 | $ 11,392.07 | $ | | 0.51% | $ 9,142.59 |
| Wanda M. Behling | 4-1025 | $ 11,219.00 | $ 11,219.00 | | | $ 1,793.19 | $ 1,793.19 | $ 9,425.81 | $ | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.42% | $ 7,564.59 |
| William H. Akins, Jr. | 4-2003-1 | $ 10,000.00 | $ 10,000.00 | | | $ 1,861.14 | $ 1,861.14 | $ 8,138.86 | $ | | 0.36% | $ 6,531.76 |
| William H. Akins, Jr. (CAMA SDIRA LLC FBO Bill Akins IRA) | 4-2003-2 | $ 20,000.00 | $ 20,000.00 | | | $ 3,851.05 | $ 3,851.05 | $ 16,148.95 | $ | | 0.72% | $ 12,960.18 |
| Yin Liu, Ping Xu | 4-1368 | $ 200,000.00 | $ 200,000.00 | | | $ 38,988.94 | $ 38,988.94 | $ 161,011.06 | $ | | 7.22% | $ 129,217.85 |
| | | $ 3,151,980.31 | $ 2,782,692.60 | $ 122,500.00 | | | $ 2,230,186.12 | $ | 112,089.74 | | 100.00% | $ 1,789,813.98 |

| Calculation of Funds Available for Distribution | | | | |
|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fee Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution |
| 5450-52 S Indiana Avenue | 4 | $ 1,815,137.33 | $ 23,323.35 | $ 2,000.00 | $ 1,789,813.98 |

A56

Ex. 3 - 7749-59 S Yates Boulevard (Property 5)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Advanta IRA Services LLC, FBO Dwight L. Plymale IRA #8006189 | 5-847 | $ 97,000.00 | $ 97,000.00 | | | $ 16,173.44 | $ 16,173.44 | $ 80,826.56 | $ | | 3.63% | $ 20,469.05 |
| Alcalli Sabat | 5-786 | $ 4,301.00 | $ 4,301.00 | $ 238.04 | $ 539.00 | $ 777.04 | $ 3,523.96 | $ | Pre-rollover distributions from the loan secured by 4611 S Drexel | 0.16% | $ 892.43 |
| American Estate and Trust, LC FBO Edward J. Netzel IRA | 5-1057 | $ 10,000.00 | $ 10,000.00 | | | $ 1,827.18 | $ 1,827.18 | $ 8,172.82 | $ | | 0.37% | $ 2,069.74 |
| Amit Hammer | 5-225 | $ 30,000.00 | $ 30,000.00 | | | $ 5,762.08 | $ 5,762.08 | $ 24,237.92 | $ | - | 1.09% | $ 6,138.17 |
| Austin Capital Trust Company on behalf of Summit Trust Company | 5-1178 | $ 25,000.00 | $ 25,000.00 | | | $ 5,009.68 | $ 5,009.68 | $ 19,990.32 | $ | - | 0.90% | $ 5,062.48 |
| Camano Equitites, LLC c/o Charles R. Markley | 5-2038 | $ 50,000.00 | $ 50,000.00 | | | $ 7,766.63 | $ 7,766.63 | $ 42,233.37 | $ | - | 1.90% | $ 10,695.45 |
| Charles P McEvoy | 5-232 | $ 100,000.00 | $ 100,000.00 | | | $ 15,338.93 | $ 15,338.93 | $ 84,661.07 | $ | - | 3.80% | $ 21,440.12 |
| Clarice Recamara | 5-640-1 | $ 25,000.00 | $ 25,000.00 | | | $ 2,094.42 | $ 2,094.42 | $ 22,905.58 | $ | - | 1.03% | $ 5,800.76 |
| Clarice Recamara | 5-640-2 | $ 20,169.00 | $ 20,000.00 | $ 1,869.02 | $ 2,796.77 | $ 4,665.79 | $ 15,334.21 | $ | Pre-rollover distributions from the loan secured by 4611 S Drexel | 0.69% | $ 3,883.34 |
| Clearwood Funding, LLC | 5-1276 | $ 50,000.00 | $ 50,000.00 | | | $ 9,569.49 | $ 9,569.49 | $ 40,430.51 | $ | - | 1.81% | $ 10,238.89 |
| Dana Speed | 5-684 | $ 169,000.00 | $ 169,000.00 | | | $ 27,115.07 | $ 27,115.07 | $ 141,884.93 | $ | - Transaction to roll loan to SSDF6 equity fund was subsequently voided | 6.37% | $ 35,931.87 |
| David M Harris | 5-267 | $ 100,000.00 | $ 100,000.00 | | | $ 17,815.32 | $ 17,815.32 | $ 82,184.68 | $ | - | 3.69% | $ 20,812.99 |
| Donald Hendrickson | 5-945 | $ 10,000.00 | $ 10,000.00 | | | $ 1,729.07 | $ 1,729.07 | $ 8,270.93 | $ | - | 0.37% | $ 2,094.58 |
| Doron Kermanian | 5-380 | $ 25,000.00 | $ 25,000.00 | | | $ 9,511.16 | $ 9,511.16 | $ 15,488.84 | $ | - Distributions include interest paid on loan plus a $4500 referral fee that EquityBuild paid to claimant | 0.70% | $ 3,922.50 |
| Duane A Degenhardt and Linda S. Degnhardt | 5-2015 | $ 13,385.00 | $ 13,385.00 | | | $ 1,963.17 | $ 1,963.17 | $ 11,421.83 | $ | | 0.51% | $ 2,892.54 |
| Duke E. Heger and Viviana Heger | 5-1408 | $ 35,000.00 | $ 35,000.00 | | | $ 6,117.18 | $ 6,117.18 | $ 28,882.82 | $ | | 1.30% | $ 7,314.47 |
| Duty, Darrell and Frances | 5-2018 | $ 4,000.00 | $ 4,000.00 | | | $ 23.11 | $ 23.11 | $ 3,976.89 | $ | - | 0.18% | $ 1,007.13 |
| Easley Family Trust c/o Todd Easley | 5-596 | $ 25,000.00 | $ 25,000.00 | | | $ 4,369.49 | $ 4,369.49 | $ 20,630.51 | $ | - | 0.93% | $ 5,224.61 |
| Ed A Bancroft | 5-2008 | $ 14,627.00 | $ 14,627.00 | | | $ 1,997.99 | $ 1,997.99 | $ 12,629.01 | $ | - | 0.57% | $ 3,198.25 |
| Grathia Corp | 5-1445 | $ 149,081.00 | $ 149,081.00 | | | $ 26,891.79 | $ 26,891.79 | $ 122,189.21 | $ | | 5.48% | $ 30,943.99 |
| iPlan Group Agent for Custodian FBO Rama Voddi Roth IRA | 5-799 | $ 33,000.00 | $ 33,000.00 | | | $ 4,972.92 | $ 4,972.92 | $ 28,027.08 | $ | - Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.26% | $ 7,097.76 |
| iPlan Group FBO Garwood Weatherhead IRA Account #3320844 | 5-1096-1 | $ 13,096.00 | $ 13,000.00 | $ 1,689.25 | $ 1,436.22 | $ 3,125.47 | $ 9,874.53 | $ | The Receiver recommends disallowing $96 accrued interest claimant added to principal amount of loan, and deducting pre-rollover distributions from the loan secured by 4611 S Drexel | 0.44% | $ 2,500.69 |
| iPlan Group FBO Garwood Weatherhead IRA Account #3421004 | 5-1096-2 | $ 16,152.00 | $ 16,152.00 | $ 2,086.10 | $ 1,771.34 | $ 3,857.44 | $ 12,294.56 | $ | Pro-rata share of pre-rollover distributions from the loan secured by 4611 S Drexel | 0.55% | $ 3,113.55 |

Page 1 of 3

Exhibit 3

A57

Ex. 3 - 7749-59 S Yates Boulevard (Property 5)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| iPlanGroup Agent for Custodian FBO Andrew Brooks IRA Account | 5-203 | $ 6,000.00 | $ 6,000.00 | | | $ - | $ - | $ 6,000.00 | $ - | | 0.27% | $ 1,519.48 |
| iPlanGroup Agent for Custodian FBO Charles Michael Anglin | 5-331 | $ 50,000.00 | $ 50,000.00 | | | $ 6,266.70 | $ 6,266.70 | $ 43,733.30 | $ - | | 1.96% | $ 11,075.31 |
| JANICE BURRELL | 5-689 | $ 50,000.00 | $ 50,000.00 | | | $ 8,844.48 | $ 8,844.48 | $ 41,155.52 | $ - | | 1.85% | $ 10,422.49 |
| John Bloxham | 5-1015 | $ 35,000.00 | $ 35,000.00 | | | $ 5,886.17 | $ 5,886.17 | $ 29,113.83 | $ - | | 1.31% | $ 7,372.98 |
| John Witzigreuter | 5-729 | $ 50,000.00 | $ 50,000.00 | | | $ 9,577.82 | $ 9,577.82 | $ 40,422.18 | $ - | | 1.81% | $ 10,236.78 |
| Joseph P. McCarthy | 5-1367 | $ 10,000.00 | $ 10,000.00 | | | $ 1,775.04 | $ 1,775.04 | $ 8,224.96 | $ - | | 0.37% | $ 2,082.94 |
| Julie Patel | 5-409 | $ 35,291.00 | $ 35,291.00 | | $ 1,798.55 | $ 2,751.91 | $ 4,550.46 | $ 30,740.54 | $ - | Pro-rata share of pre-rollover distributions from the loan secured by 7024 S Paxton | 1.38% | $ 7,784.94 |
| Karen L Hendrickson | 5-948 | $ 10,000.00 | $ 10,000.00 | | | $ 1,727.40 | $ 1,727.40 | $ 8,272.60 | $ - | | 0.37% | $ 2,095.01 |
| Keith P Rowland and Jane E Rowland | 5-89 | $ 50,000.00 | $ 50,000.00 | | | $ 8,386.77 | $ 8,386.77 | $ 41,613.23 | $ - | | 1.87% | $ 10,538.41 |
| Keith Randall | 5-1086 | $ 70,000.00 | $ - | $ 70,000.00 | | $ 3,141.26 | $ 3,141.26 | $ - | $ 66,858.74 | Claimant agreed to rollover this loan to SSDF1 on 6/23/17 | 0.00% | $ - |
| Kevin & Laura Allred | 5-452 | $ 50,000.00 | $ 50,000.00 | | | $ 9,032.60 | $ 9,032.60 | $ 40,967.40 | $ - | | 1.84% | $ 10,374.85 |
| KKW Investments, LLC | 5-336 | $ 3,000.00 | $ 3,000.00 | | | $ 555.96 | $ 555.96 | $ 2,444.04 | $ - | | 0.11% | $ 618.94 |
| Koates LLC | 5-228 | $ 3,200.00 | $ 3,200.00 | | | $ 11.05 | $ 11.05 | $ 3,188.95 | $ - | | 0.14% | $ 807.59 |
| Legacy Trading LLC | 5-508 | $ 237,000.00 | $ 237,000.00 | | | $ 42,660.00 | $ 42,660.00 | $ 194,340.00 | $ - | | 8.72% | $ 49,215.93 |
| Lynn Marie Kupfer | 5-1319 | $ 100,000.00 | $ 100,000.00 | | | $ 16,783.00 | $ 16,783.00 | $ 83,217.00 | $ - | | 3.73% | $ 21,074.42 |
| Madison Trust Company custodian FBO Guenter Scheel IRA M1702 | 5-2073 | $ 25,000.00 | $ - | $ 25,000.00 | | $ 2,465.99 | $ 2,465.99 | $ - | $ 22,534.01 | Claimant agreed to rollover this loan to SSDF4 on 12/1/17 | 0.00% | $ - |
| Manuel Camacho | 5-748 | $ 25,000.00 | $ 25,000.00 | | | $ 1,542.34 | $ 1,542.34 | $ 23,457.66 | $ - | | 1.05% | $ 5,940.57 |
| Michael F Grant & L. Gretchen Grant | 5-393 | $ 50,000.00 | $ 50,000.00 | | | $ 9,165.93 | $ 9,165.93 | $ 40,834.07 | $ - | | 1.83% | $ 10,341.09 |
| Michael Grow | 5-375 | $ 100,000.00 | $ 100,000.00 | | | $ 18,065.32 | $ 18,065.32 | $ 81,934.68 | $ - | | 3.68% | $ 20,749.67 |
| Michael Warner, Trustee of Warner Chiropractic Care Center, PC PSP | 5-78 | $ 24,000.00 | $ 24,000.00 | | | $ 4,250.67 | $ 4,250.67 | $ 19,749.33 | $ - | | 0.89% | $ 5,001.45 |
| Naveen Kwatra | 5-356 | $ 25,000.00 | $ 25,000.00 | | | $ 4,772.18 | $ 4,772.18 | $ 20,227.82 | $ - | | 0.91% | $ 5,122.63 |
| NBFAR Investment, LLC c/o Jason Ragan - TSA | 5-797 | $ 3,451.00 | $ 3,451.00 | | $ 341.16 | $ 464.49 | $ 805.65 | $ 2,645.35 | $ - | Pro-rata share of pre-rollover distributions from the loans secured by 4611 S Drexel and 7024 S Paxton | 0.12% | $ 669.93 |
| Optima Property Solutions, LLC | 5-1023 | $ 48,693.00 | $ - | | | $ 6,559.49 | $ 6,559.49 | $ - | $ - | Claimant transferred this loan to a group of other properties in January 2018 | 0.00% | $ - |
| Pat DeSantis | 5-397 | $ 250,000.00 | $ 250,000.00 | | | $ 46,666.63 | $ 46,666.63 | $ 203,333.37 | $ - | | 9.13% | $ 51,493.47 |
| Patrick Connely | 5-964 | $ 20,000.00 | $ - | $ 20,000.00 | | $ 1,288.05 | $ 1,288.05 | $ - | $ 18,711.95 | Claimant agreed to rollover this loan to SSDF4 | 0.00% | $ - |
| Paul Scribner | 5-1135 | $ 5,500.00 | $ 5,500.00 | | | $ 534.24 | $ 534.24 | $ 4,965.76 | $ - | | 0.22% | $ 1,257.56 |

A58

Ex. 3 - 7749-59 S Yates Boulevard (Property 5)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peter Jordan | 5-282 | $ 76,728.28 | $ - | $ 100,000.00 | | $ 45,858.52 | $ 45,858.52 | $ - | $ 54,141.48 | Claimant agreed to rollover this loan to UPN | 0.00% | $ - |
| Phillip G. Vander Kraats | 5-628 | $ 1,374.00 | $ 1,374.00 | | | $ 145.35 | $ 145.35 | $ 1,228.65 | $ - | | 0.06% | $ 311.15 |
| PNW Investments, LLC | 5-332 | $ 12,000.00 | $ 12,000.00 | | | $ 2,223.83 | $ 2,223.83 | $ 9,776.17 | $ - | | 0.44% | $ 2,475.78 |
| Quantum Growth Holdings LLC | 5-354 | $ 5,500.00 | $ - | $ 5,500.00 | | $ 395.98 | $ 395.98 | $ - | $ 5,104.02 | Claimant agreed to rollover this loan to SSDF4 | 0.00% | $ - |
| QUEST IRA Inc. FBO Francisco A. Romero Sr. Acct# 25282-11 and Acct# 25282-21 | 5-1352 | $ 12,100.00 | $ 12,100.00 | | | $ 1,179.09 | $ 1,179.09 | $ 10,920.91 | $ - | | 0.49% | $ 2,765.68 |
| Raymond Thompson Investment Trust LLC | 5-251 | $ 30,000.00 | $ 30,000.00 | | | $ 1,937.50 | $ 1,937.50 | $ 28,062.50 | $ - | | 1.26% | $ 7,106.73 |
| Robert Potter | 5-1389 | $ 15,000.00 | $ 15,000.00 | | | $ 2,639.17 | $ 2,639.17 | $ 12,360.83 | $ - | | 0.55% | $ 3,130.34 |
| Sam Gerber, CEO, Gerber and Associates, REI, LLC | 5-562 | $ 12,000.00 | $ 12,000.00 | | | $ - | $ - | $ 12,000.00 | $ - | | 0.54% | $ 3,038.96 |
| Sarah Geldart | 5-1285 | $ 37,500.00 | $ 37,500.00 | | | $ 3,600.13 | $ 3,600.13 | $ 33,899.87 | $ - | | 1.52% | $ 8,585.02 |
| Shlomo Zussman | 5-579 | $ 25,000.00 | $ 25,000.00 | | | $ 4,697.18 | $ 4,697.18 | $ 20,302.82 | $ - | | 0.91% | $ 5,141.62 |
| Smart Technologies PSP, Nizarali Jetha - Manager | 5-1458 | $ 100,000.00 | $ 100,000.00 | | | $ 17,722.27 | $ 17,722.27 | $ 82,277.73 | $ - | | 3.69% | $ 20,836.55 |
| Steve Weera Tonasut and Esther Kon Tonasut | 5-154 | $ 50,000.00 | $ 50,000.00 | | | $ 8,979.67 | $ 8,979.67 | $ 41,020.33 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.84% | $ 10,388.26 |
| Steven G. Mouty | 5-821 | $ 50,000.00 | $ 50,000.00 | | | $ 9,265.93 | $ 9,265.93 | $ 40,734.07 | $ - | | 1.83% | $ 10,315.76 |
| Strategic Wealth Ventures, LLC, Brian Kothman Member | 5-595 | $ 23,626.00 | $ 23,626.00 | | $ 2,281.09 | $ 3,276.11 | $ 5,557.20 | $ 18,068.80 | $ - | Pre-rollover distributions from the loan secured by 7024 S Paxton | 0.81% | $ 4,575.86 |
| Susan Kalisiak | 5-1438 | $ 48,226.00 | $ 48,226.00 | | | $ 8,386.09 | $ 8,386.09 | $ 39,839.91 | $ - | | 1.79% | $ 10,089.32 |
| Teena B Ploeger | 5-521 | $ 18,500.00 | $ 18,500.00 | | | $ 3,056.89 | $ 3,056.89 | $ 15,443.11 | $ - | | 0.69% | $ 3,910.91 |
| Tolu Makinde | 5-370 | $ 30,000.00 | $ 30,000.00 | | | $ 5,424.00 | $ 5,424.00 | $ 24,576.00 | $ - | | 1.10% | $ 6,223.79 |
| United Capital Properties, LLC | 5-1480 | $ 979.00 | $ 979.00 | | $ 119.29 | $ 130.13 | $ 249.42 | $ 729.58 | $ - | Pro-rata share of pre-rollover distributions from the loan secured by 4611 S Drexel | 0.03% | $ 184.76 |
| Wesley Pittman | 5-469 | $ 32,000.00 | $ 32,000.00 | | | $ 5,692.40 | $ 5,692.40 | $ 26,307.60 | $ - | | 1.18% | $ 6,662.31 |
| White Tiger Revocable Trust, Ira Lovitch, Zinaida Lovitch | 5-537 | $ 50,000.00 | $ - | $ 50,000.00 | | $ 1,911.80 | $ 1,911.80 | $ - | $ 48,088.20 | Claimant agreed to rollover this investment to SSDF1 on 2/22/17 | 0.00% | $ - |
| | | $ 2,985,479.28 | $ 2,689,293.00 | $ 270,500.00 | | | $ 2,228,202.61 | | $ 215,438.40 | | 100.00% | $ 564,284.59 |

| Calculation of Funds Available for Distribution | | | | | |
|---|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fees Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution |
| 7749-59 S Yates Boulevard | 5 | $ 590,154.98 | $23,870.39 | $ 2,000.00 | $ 564,284.59 |

A59

Ex. 4 – 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aaron Beauclair | 79-408 | $ 30,000.00 | $ 30,000.00 | | | $ 226.67 | $ 226.67 | $ 29,773.33 | $ - | | 0.88% | $ 2,878.43 |
| Alcalli Sabat | 79-786 | $ 11,000.00 | $ 11,000.00 | | | $ 2,332.00 | $ 2,332.00 | $ 8,668.00 | $ - | | 0.26% | $ 838.01 |
| Amit Hammer | 79-225 | $ 50,000.00 | $ 50,000.00 | | | $ 14,934.72 | $ 14,934.72 | $ 35,065.28 | $ - | | 1.04% | $ 3,390.05 |
| Arvind Kinjarapu | 79-1161 | $ 35,000.00 | $ 35,000.00 | | | $ 8,468.11 | $ 8,468.11 | $ 26,531.89 | $ - | | 0.79% | $ 2,565.05 |
| Asians Investing In Real Estate LLC | 79-503 | $ 25,000.00 | $ 25,000.00 | | $ 8,102.08 | $ 588.89 | $ 8,690.97 | $ 16,309.03 | $ - | Pre-rollover distributions on loan secured by 7600 S Kingston | 0.48% | $ 1,576.73 |
| Bauer Latoza Studio, Ltd. | 79-885 | $ 27,450.00 | $ - | $ 27,450.00 | | $ - | $ - | $ - | $ 27,450.00 | Unsecured trade creditor | 0.00% | $ - |
| Bernadette Chen Eleven St. Felix Street Realty Corp. | 79-2012 | $ 100,000.00 | $ 100,000.00 | | | $ 24,461.06 | $ 24,461.06 | $ 75,538.94 | $ - | | 2.24% | $ 7,302.96 |
| Brett Burnham | 79-314-1 | $ 8,000.00 | $ - | $ 8,000.00 | | $ 1,396.00 | $ 1,396.00 | $ - | $ 6,604.00 | Claimant agreed to rollover this loan to SSDF4 on 6/19/18 | 0.00% | $ - |
| Brett Burnham | 79-314-2 | $ 5,000.00 | $ 5,000.00 | | | $ 1,119.16 | $ 1,119.16 | $ 3,880.84 | $ - | | 0.12% | $ 375.19 |
| Charles Smith | 79-1186 | $ 350,000.00 | $ 350,000.00 | | | $ 79,955.61 | $ 79,955.61 | $ 270,044.39 | $ - | | 8.02% | $ 26,107.39 |
| Clifton Armoogam | 79-2006 | $ 9,900.00 | $ 9,900.00 | | | $ 2,258.85 | $ 2,258.85 | $ 7,641.15 | $ - | | 0.23% | $ 738.73 |
| David M Harris | 79-267 | $ 96,000.00 | $ 96,000.00 | | | $ 23,578.67 | $ 23,578.67 | $ 72,421.33 | $ - | | 2.15% | $ 7,001.56 |
| David R Trengove | 79-481 | $ 150,000.00 | $ 150,000.00 | | | $ 35,066.67 | $ 35,066.67 | $ 114,933.33 | $ - | | 3.42% | $ 11,111.54 |
| Dennis & Mary Ann Hennefer | 79-355 | $ 23,768.00 | $ 23,768.00 | | $ 2,220.07 | $ 3,295.86 | $ 5,515.93 | $ 18,252.07 | $ - | Pro-rata share of pre-rollover distributions on loan secured by 7024 S Paxton | 0.54% | $ 1,764.58 |
| Distributive Marketing Inc. | 79-806 | $ 50,000.00 | $ 50,000.00 | | | $ 11,700.05 | $ 11,700.05 | $ 38,299.95 | $ - | | 1.14% | $ 3,702.77 |
| EastWest Funding Trust | 79-258 | $ 50,000.00 | $ 50,000.00 | | | $ 11,972.28 | $ 11,972.28 | $ 38,027.72 | $ - | | 1.13% | $ 3,676.45 |
| Elaine Sison Ernst | 79-1029 | $ 50,000.00 | $ 50,000.00 | | | $ 11,805.61 | $ 11,805.61 | $ 38,194.39 | $ - | | 1.14% | $ 3,692.56 |
| Entrust Group FBO Daniel Matthews IRA | 79-117 | $ 40,000.00 | $ - | | | $ 6,051.08 | $ 6,051.08 | $ - | $ - | Entrust Group (claimants' custodian) signed a release of this lien, which was recorded. Claimant may have an unsecured claim if they did not receive a payoff from EquityBuild. | 0.00% | $ - |
| Francisco Fernandez | 79-1450 | $ 65,000.00 | $ 65,000.00 | | | $ 15,953.95 | $ 15,953.95 | $ 49,046.05 | $ - | | 1.46% | $ 4,741.68 |
| Gary R. Burnham Jr. Solo 401K Trust | 79-1174 | $ 10,000.00 | $ - | $ 10,000.00 | | $ 829.00 | $ 829.00 | $ - | $ 9,171.00 | Claimant agreed to rollover this loan to SSDF1 | 0.00% | $ - |
| Gowrisankar Challagundla | 79-815 | $ 50,000.00 | $ 50,000.00 | | | $ 11,913.95 | $ 11,913.95 | $ 38,086.05 | $ - | | 1.13% | $ 3,682.09 |
| Grathia Corp | 79-1445 | $ 50,000.00 | $ 50,000.00 | | | $ 12,205.61 | $ 12,205.61 | $ 37,794.39 | $ - | | 1.12% | $ 3,653.89 |
| Green Light Investments, LLC | 79-1440 | $ 50,000.00 | $ 50,000.00 | | | $ 12,277.49 | $ 12,277.49 | $ 37,722.51 | $ - | | 1.12% | $ 3,646.94 |
| Gunter and Karen Scheel | 79-2072 | $ 25,000.00 | $ 25,000.00 | | | $ 6,111.05 | $ 6,111.05 | $ 18,888.95 | $ - | | 0.56% | $ 1,826.15 |
| Ingrid Beyer and Joel Beyer | 79-985 | $ 10,000.00 | $ 10,000.00 | | | $ 2,421.06 | $ 2,421.06 | $ 7,578.94 | $ - | | 0.23% | $ 732.72 |
| iPlanGroup Agency for Custodian FBO Charles Powell IRA | 79-413 | $ 10,000.00 | $ 10,000.00 | | | $ 837.75 | $ 837.75 | $ 9,162.25 | $ - | | | |

Exhibit

4

A60

Ex. 4 - 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| iPlanGroup Agent for Custodian FBO Andrew Brooks IRA Account | 79-203 | $ 20,000.00 | $ 20,000.00 | | | $ 4,430.00 | $ 4,430.00 | $ 15,570.00 | $ - | | 0.46% | $ 1,505.28 |
| Irene Gacad | 79-647 | $ 25,000.00 | $ 25,000.00 | | | $ 5,990.22 | $ 5,990.22 | $ 19,009.78 | $ - | | 0.56% | $ 1,837.83 |
| James Walsh | 79-2058 | $ 50,000.00 | $ 50,000.00 | | | $ 11,350.00 | $ 11,350.00 | $ 38,650.00 | $ - | | 1.15% | $ 3,736.61 |
| Jason Ragan - TSA | 79-797 | $ 110,000.00 | $ 110,000.00 | | $ 5,900.97 | $ 17,478.58 | $ 23,379.55 | $ 86,620.45 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 2.57% | $ 8,374.30 |
| Jeffery B McMeans | 79-279 | $ 50,000.00 | $ 50,000.00 | | | $ 12,205.61 | $ 12,205.61 | $ 37,794.39 | $ - | | 1.12% | $ 3,653.89 |
| John A Martino & Carole J Wysocki | 79-1493 | $ 50,000.00 | $ 50,000.00 | | | $ 12,171.78 | $ 12,171.78 | $ 37,828.22 | $ - | | 1.12% | $ 3,657.16 |
| John B. Allred & Glenda K. Allred | 79-2004 | | $ (65,000.00) | | | $ 15,715.62 | $ 15,715.62 | $ - | $ - | Receiver recommends that former EquityBuild employee who actively participated in marketing the fraudulent scheme be disqualified from receiving a distribution | 0.00% | $ - |
| John E Mize | 79-649 | $ 50,000.00 | $ 50,000.00 | | | $ 12,230.61 | $ 12,230.61 | $ 37,769.39 | $ - | | 1.12% | $ 3,651.47 |
| Karl R. DeKlotz | 79-1179 | $ 100,000.00 | $ 300,000.00 | | $ 25,924.50 | $ 52,252.76 | $ 78,177.26 | $ 221,822.74 | $ - | Principal balance increased due to rollovers of loans secured by 4611 S Drexel and 7024 S Paxton to this property in June, 2017. Pro rata share of pre-rollover distributions from those two loans applied. | 6.59% | $ 21,445.41 |
| Knickerbocker LLC | 79-2035 | $ 50,000.00 | $ 50,000.00 | | | $ 12,291.67 | $ 12,291.67 | $ 37,708.33 | $ - | | 1.12% | $ 3,645.57 |
| Kyle Jacobs | 79-1345 | $ 30,000.00 | $ 30,000.00 | | | $ 7,318.33 | $ 7,318.33 | $ 22,681.67 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.67% | $ 2,192.82 |
| Larry White | 79-794 | $ 52,500.00 | $ 52,500.00 | | | $ 12,754.58 | $ 12,754.58 | $ 39,745.42 | $ - | | 1.18% | $ 3,842.51 |
| Laura J. Sohm IRA | 79-970 | $ 63,000.00 | $ - | | | $ 9,135.00 | $ 9,135.00 | | $ - | Claimant agreed to rollover this loan to 6250 S Mozart | 0.00% | $ - |
| LEVENT KESEN | 79-1078 | $ 50,000.00 | $ 50,000.00 | | | $ 12,230.60 | $ 12,230.60 | $ 37,769.40 | $ - | | 1.12% | $ 3,651.48 |
| Louis Barrows | 79-494 | $ 25,000.00 | $ 25,000.00 | | | $ 45.14 | $ 45.14 | $ 24,954.86 | $ - | | 0.74% | $ 2,412.59 |
| Madison Trust Company Custodian FBO Kathy B. Talman IRA | 79-1109 | $ 25,000.00 | $ 25,000.00 | | | $ 6,073.55 | $ 6,073.55 | $ 18,926.45 | $ - | | 0.56% | $ 1,829.77 |
| Madison Trust Custodian FBO Brent Jacobs | 79-854 | $ 37,881.00 | $ 37,881.00 | | | $ 9,942.02 | $ 9,942.02 | $ 27,938.98 | $ - | | 0.83% | $ 2,701.09 |
| Maricris M. Lee | 79-320 | $ 8,000.00 | $ 8,000.00 | | $ 615.58 | $ 1,066.70 | $ 1,682.28 | $ 6,317.72 | $ - | Pre-rollover distributions on loan secured by 7024 S Paxton | 0.19% | $ 610.79 |
| May M. Akamine for Aurora Investments, LLC (assets formerly under MayREI, LLC) | 79-1412 | $ 60,000.00 | $ 60,000.00 | | | $ 14,446.67 | $ 14,446.67 | $ 45,553.33 | $ - | | 1.35% | $ 4,404.01 |
| Meadows Enterprises Inc, Kenyon Meadows, president | 79-429 | $ 25,000.00 | $ 25,000.00 | | | $ 6,136.05 | $ 6,136.05 | $ 18,863.95 | $ - | | 0.56% | $ 1,823.73 |
| Michael Arthur Goldman (also know as Mike Goldman, Michael A. Goldman, Michael Goldman) | 79-775 | $ 61,861.00 | $ 60,000.00 | | $ 22,100.00 | $ 14,286.40 | $ 36,386.40 | $ 23,613.60 | $ - | The Receiver recommends disallowing $1860.75 accrued interest claimant added to principal amount of loan, and deducting pre-rollover distributions from the loan secured by 4351 S Calumet | 0.70% | $ 2,282.92 |

A61

Ex. 4 - 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Warner, Trustee of Warner Chiropractic Care Center, | 79-78 | $ 90,000.00 | $ 90,000.00 | | | $ 21,760.00 | $ 21,760.00 | $ 68,240.00 | $ - | | 2.03% | $ 6,597.32 |
| Moran Blueshtein and Upender Subramanian | 79-95 | $ 46,000.00 | $ 46,000.00 | | | $ 1,369.77 | $ 1,369.77 | $ 44,630.23 | $ - | | 1.33% | $ 4,314.77 |
| Mountain West LLC IRA FBO Rachael B. Curcio Acct# 50679-01 | 79-315 | $ 7,000.00 | $ 7,000.00 | | | $ 199.69 | $ 199.69 | $ 6,800.31 | $ - | | 0.20% | $ 657.44 |
| Nandini S Chennappan | 79-1270 | $ 10,000.00 | $ 10,000.00 | | | $ 2,266.61 | $ 2,266.61 | $ 7,733.39 | $ - | | 0.23% | $ 747.65 |
| Nehasri Ltd (investment under Nehasri Ltd by Manoj Donthineni) | 79-1365 | $ 50,000.00 | $ 50,000.00 | | | $ 12,677.72 | $ 12,677.72 | $ 37,322.28 | $ - | | 1.11% | $ 3,608.25 |
| New Direction IRA, Inc. FBO Ingrid Beyer, Roth IRA | 79-437 | $ 25,000.00 | $ 25,000.00 | | | $ 5,623.55 | $ 5,623.55 | $ 19,376.45 | $ - | | 0.58% | $ 1,873.28 |
| Optima Property Solutions, LLC | 79-1023 | $ 200,000.00 | $ 200,000.00 | | $ 28,333.36 | $ 31,611.15 | $ 59,944.51 | $ 140,055.49 | $ - | Pre-rollover distributions on loan secured by 4533 S Calumet | 4.16% | $ 13,540.30 |
| Pankaj Patel DBA EZ NJ Ventures, LLC | 79-920 | $ 50,000.00 | $ 50,000.00 | | | $ 11,630.61 | $ 11,630.61 | $ 38,369.39 | $ - | | 1.14% | $ 3,709.48 |
| Pat DeSantis | 79-397 | $ 250,000.00 | $ 250,000.00 | | | $ 65,527.72 | $ 65,527.72 | $ 184,472.28 | $ - | | 5.48% | $ 17,834.44 |
| Patricia J Theil C/F Jacqueline M Theil | 79-923 | $ 11,257.00 | $ 11,162.79 | | $ 976.13 | $ 1,560.94 | $ 2,537.07 | $ 8,625.72 | $ - | The Receiver recommends disallowing $94.21 accrued interest claimant added to principal amount of loan, and deducting pro-rata pre-rollover distributions from the loan secured by 7834 S Ellis | 0.26% | $ 833.92 |
| Paul N. Wilmesmeier | 79-300 | $ 25,000.00 | $ 25,000.00 | | | $ 6,202.72 | $ 6,202.72 | $ 18,797.28 | $ - | | 0.56% | $ 1,817.29 |
| Philip J Lombardo and Dianne E Lombardo | 79-561 | $ 50,000.00 | $ 50,000.00 | | | $ 12,205.61 | $ 12,205.61 | $ 37,794.39 | $ - | | 1.12% | $ 3,653.89 |
| PROFESSIONAL RENTAL LP, GEORGE SAMUEL | 79-482 | $ 50,000.00 | $ 50,000.00 | | | $ 11,563.94 | $ 11,563.94 | $ 38,436.06 | $ - | | 1.14% | $ 3,715.93 |
| Provident Trust Group, LLC FBO Stephan Tang IRA | 79-172 | $ 36,470.00 | $ 36,470.00 | | $ 2,950.04 | $ 1,458.81 | $ 4,408.85 | $ 32,061.15 | $ - | Pre-rollover distributions on loan secured by 4533 S Calumet | 0.95% | $ 3,099.61 |
| Real Envisions LLC | 79-1021 | $ 50,000.00 | $ 50,000.00 | | | $ 12,113.95 | $ 12,113.95 | $ 37,886.05 | $ - | | 1.13% | $ 3,662.75 |
| Receivables to Cash, LLC d/b/a Berenger Capital | 79-302 | $ 50,000.00 | $ 50,000.00 | | | $ 12,272.28 | $ 12,272.28 | $ 37,727.72 | $ - | | 1.12% | $ 3,647.45 |
| Rene Hribal | 79-768 | $ 100,000.00 | $ 100,000.00 | | | $ 22,288.84 | $ 22,288.84 | $ 77,711.16 | $ - | | 2.31% | $ 7,512.97 |
| Robert Potter | 79-1389 | $ 23,000.00 | $ 23,000.00 | | | $ 5,645.28 | $ 5,645.28 | $ 17,354.72 | $ - | | 0.52% | $ 1,677.82 |
| Sarah Geldart | 79-1285 | $ 20,000.00 | $ 20,000.00 | | | $ 4,732.28 | $ 4,732.28 | $ 15,267.72 | $ - | | 0.45% | $ 1,476.05 |
| STEVEN R. BALD | 79-399 | $ 30,000.00 | $ 30,000.00 | | | $ 7,338.33 | $ 7,338.33 | $ 22,661.67 | $ - | | 0.67% | $ 2,190.89 |
| Steven Roche | 79-329 | $ 50,000.00 | $ 50,000.00 | | | $ 12,005.61 | $ 12,005.61 | $ 37,994.39 | $ - | | 1.13% | $ 3,673.23 |
| Terri S. Tracy | 79-272 | $ 25,000.00 | $ 25,000.00 | | | $ 6,111.00 | $ 6,111.00 | $ 18,889.00 | $ - | | 0.56% | $ 1,826.15 |
| Terry L. Merrill, Sheryl R. Merrill | 79-602 | $ 50,000.00 | $ 50,000.00 | | | $ 11,997.28 | $ 11,997.28 | $ 38,002.72 | $ - | | 1.13% | $ 3,674.03 |
| The Entrust Group FBO Dee Ann Nason 7230011277 | 79-790 | $ 50,000.00 | $ 50,000.00 | | | $ 11,855.61 | $ 11,855.61 | $ 38,144.39 | $ - | | 1.13% | $ 3,687.73 |

A62

Ex. 4 - 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Todd Colucy | 79-70 | $ 50,000.00 | $ 50,000.00 | | | $ 12,213.95 | $ 12,213.95 | $ 37,786.05 | $ - | | 1.12% | $ 3,653.08 |
| TSC Trust Patricia-Trish Scully | 79-2063 | $ 50,000.00 | $ 50,000.00 | | | $ 12,261.06 | $ 12,261.06 | $ 37,738.94 | $ - | | 1.12% | $ 3,648.53 |
| United Capital Properties, LLC | 79-1480 | $ 30,000.00 | $ 30,000.00 | | | $ 7,253.33 | $ 7,253.33 | $ 22,746.67 | $ - | | 0.68% | $ 2,199.11 |
| US Freedom Investments, LLC | 79-1234 | $ 25,000.00 | $ - | $ 25,000.00 | | $ 3,658.29 | $ 3,658.29 | $ - | $ 21,341.71 | Claimant agreed to rollover this loan to SSDF4 on 9/15/17 | 0.00% | $ - |
| Valmar PLC (Valery Lipenko) | 79-517 | $ 25,000.00 | $ 25,000.00 | | | $ 6,144.38 | $ 6,144.38 | $ 18,855.62 | $ - | | 0.56% | $ 1,822.93 |
| Victor Shaw | 79-1040 | $ 50,000.00 | $ 50,000.00 | | | $ 12,272.28 | $ 12,272.28 | $ 37,727.72 | $ - | | 1.12% | $ 3,647.45 |
| Vistex Properties LLC | 79-1318 | $ 100,000.00 | $ 100,000.00 | | | $ 23,188.95 | $ 23,188.95 | $ 76,811.05 | $ - | | 2.28% | $ 7,425.95 |
| William (Will) J Cook III | 79-700 | $ 100,000.00 | $ 100,000.00 | | | $ 24,102.73 | $ 24,102.73 | $ 75,897.27 | $ - | | 2.26% | $ 7,337.61 |
| William B. Dreischmeier | 79-2017 | $ 60,000.00 | $ 60,000.00 | | | $ 14,656.67 | $ 14,656.67 | $ 45,343.33 | $ - | | 1.35% | $ 4,383.71 |
| William H. Akins, Jr. | 79-2003 | $ 35,000.00 | $ 35,000.00 | | | $ 8,392.28 | $ 8,392.28 | $ 26,607.72 | $ - | | 0.79% | $ 2,572.38 |
| William Needham | 79-80 | $ 25,000.00 | $ 25,000.00 | | | $ 5,648.55 | $ 5,648.55 | $ 19,351.45 | $ - | | 0.58% | $ 1,870.86 |
| Wisemove Properties LLC, (Anthony and Linda Reid, members) | 79-168 | $ 100,000.00 | $ 100,000.00 | | | $ 24,727.72 | $ 24,727.72 | $ 75,272.28 | $ - | | 2.24% | $ 7,277.18 |
| Yin Liu, Ping Xu | 79-1368 | $ 100,000.00 | $ 100,000.00 | | | $ 24,444.39 | $ 24,444.39 | $ 75,555.61 | $ - | | 2.25% | $ 7,304.58 |
| | | $ 4,423,087.00 | $ 4,382,681.79 | $ 70,450.00 | | | | $ 3,365,047.13 | $ 64,566.71 | | 100.00% | $ 325,326.47 |

| Calculation of Funds Available for Distribution | | | | | |
|---|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fee Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution |
| 6160-6212 S Martin Luther King Drive | 79 | $ 353,660.20 | $ 26,333.73 | $ 2,000.00 | $ 325,326.47 |

A63

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| First Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Thorofare Asset Based Lending REIT IV | 1-1188 | $ 2,175,000.00 | $ 2,175,000.00 | | | | $ 656,739.71 | $ 1,518,260.29 | | | | $ 1,518,260.29 |

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Agee Family Trust c/o Scott R. Agee | 1-2001 | $ 40,000.00 | $ 40,000.00 | | | $ 6,592.05 | $ 6,592.05 | $ 33,407.95 | $ - | | 1.02% | $ 12,958.97 |
| Alcalli Sabat | 1-786 | $ 10,000.00 | $ 10,000.00 | | | $ 1,128.86 | $ 1,128.86 | $ 8,871.14 | $ - | | 0.27% | $ 3,441.12 |
| Aluvelu Homes LLC | 1-879 | $ 20,000.00 | $ 20,000.00 | | | $ 3,507.73 | $ 3,507.73 | $ 16,492.27 | $ - | | 0.50% | $ 6,397.36 |
| American Estate and Trust FBO Layne Jones IRA | 1-707 | $ 20,000.00 | $ 20,000.00 | | | $ 3,227.74 | $ 3,227.74 | $ 16,772.26 | $ - | | 0.51% | $ 6,505.97 |
| Asians Investing In Real Estate LLC | 1-503 | $ 15,000.00 | $ 15,000.00 | | | $ 2,605.83 | $ 2,605.83 | $ 12,394.17 | $ - | | 0.38% | $ 4,807.71 |
| Capital Investors, LLC | 1-1490 | $ 250,000.00 | $ 250,000.00 | | | $ 64,933.00 | $ 64,933.00 | $ 185,067.00 | $ - | In addition to interest and a bonus received on this investment, the Receiver recommends deducting $24,000 that EquityBuild paid "for marketing." | 5.64% | $ 71,787.64 |
| Chuck Denton \| Denton Real Estate Company Inc. 401k | 1-379 | $ 25,000.00 | $ 25,000.00 | | | $ 4,068.10 | $ 4,068.10 | $ 20,931.90 | $ - | | 0.64% | $ 8,119.50 |
| CLC Electric, Inc. (Costel Dumitrescu) | 1-1477 | $ 36,000.00 | $ - | $ 36,000.00 | | $ - | $ - | $ - | $ - | Unsecured trade creditor - The Receiver recommends no distribution from unencumbered funds due to a failure of documentation supporting the claim either submitted by claimant or located in EquityBuild records. | 0.00% | $ - |
| CLD Construction, Inc. (Doru Unchias) | 1-1454 | $ 70,000.00 | $ - | $ 5,000.00 | | $ - | $ - | $ - | $ 5,000.00 | Unsecured trade creditor | 0.00% | $ - |
| Clearwood Funding, LLC | 1-1276 | $ 50,000.00 | $ 50,000.00 | | | $ 8,346.83 | $ 8,346.83 | $ 41,653.17 | $ - | | 1.27% | $ 16,157.30 |
| CLOVE, LLC | 1-723 | $ 5,000.00 | $ 5,000.00 | | | $ 940.23 | $ 940.23 | $ 4,059.77 | $ - | | 0.12% | $ 1,574.79 |
| Coppy Properties, LLC | 1-1381 | $ 50,000.00 | $ 50,000.00 | | | $ 8,627.74 | $ 8,627.74 | $ 41,372.26 | $ - | | 1.26% | $ 16,048.33 |
| Cross 5774 Holdings LLC - Cross Global Funding Group | 1-860 | $ 50,000.00 | $ 50,000.00 | | | $ 8,544.40 | $ 8,544.40 | $ 41,455.60 | $ - | | 1.26% | $ 16,080.66 |
| Dana Speed | 1-684 | $ 40,000.00 | $ 40,000.00 | | | $ 6,306.70 | $ 6,306.70 | $ 33,693.30 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.03% | $ 13,069.66 |
| Danielle DeVarne | 1-679 | $ 50,000.00 | $ 50,000.00 | | | $ 8,619.40 | $ 8,619.40 | $ 41,380.60 | $ - | | 1.26% | $ 16,051.57 |
| David R Trengove | 1-481 | $ 35,000.00 | $ 35,000.00 | | | $ 5,578.58 | $ 5,578.58 | $ 29,421.42 | $ - | | 0.90% | $ 11,412.59 |
| Dee Ann Nason | 1-453 | $ 50,000.00 | $ 50,000.00 | | | $ 8,811.07 | $ 8,811.07 | $ 41,188.93 | $ - | | 1.26% | $ 15,977.22 |
| Dennis & Mary Ann Hennefer | 1-355 | $ 50,000.00 | $ 50,000.00 | | $ 4,670.29 | $ 6,933.37 | $ 11,603.66 | $ 38,396.34 | $ - | Pre-rollover distributions on loan secured by 7024 S Paxton | 1.17% | $ 14,893.97 |
| Duty, Darrell and Frances | 1-2018 | $ 10,000.00 | $ 10,000.00 | | | $ 1,625.59 | $ 1,625.59 | $ 8,374.41 | $ - | | 0.26% | $ 3,248.44 |
| Elaine Sison Ernst | 1-1029 | $ 30,000.00 | $ 30,000.00 | | | $ 5,066.67 | $ 5,066.67 | $ 24,933.33 | $ - | | 0.76% | $ 9,671.66 |
| Elizabeth A. Monnot-Chase | 1-1252 | $ 105,000.00 | $ 105,000.00 | | | $ 17,511.11 | $ 17,511.11 | $ 87,488.89 | $ - | | 2.67% | $ 33,937.01 |

Exhibit

1

A64

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Evans & Associates LLC (Will Evans) | 1-410 | $ 50,000.00 | $ 50,000.00 | | | $ 8,077.74 | $ 8,077.74 | $ 41,922.26 | $ | | 1.28% | $ 16,261.68 |
| Gary R Burnham FBO Raegan D Burnham Roth IRA | 1-1065 | $ 1,000.00 | $ | $ 1,000.00 | | $ 425.09 | $ 425.09 | $ | $ 574.91 | Claimant agreed to rollover this loan to SSDF1 on 6/26/17 | 0.00% | $ - |
| Gary R Burnham Jr. Family HSA (custodian iPLAN Group LLC) | 1-1066 | $ 9,000.00 | $ | $ 9,000.00 | | $ 395.00 | $ 395.00 | $ | $ 8,605.00 | Claimant agreed to rollover this loan to SSDF1 on 6/17/17 | 0.00% | $ - |
| Gilbert D Sherman Declaration of Trust 7/30/2013 | 1-92 | $ 50,000.00 | $ 50,000.00 | | | $ 8,077.74 | $ 8,077.74 | $ 41,922.26 | $ | | 1.28% | $ 16,261.68 |
| GRACE Ndungu | 1-609 | $ 50,000.00 | $ 50,000.00 | | | $ 8,330.52 | $ 8,330.52 | $ 41,669.48 | $ - | | 1.27% | $ 16,163.63 |
| Gregory R Scott and Gene X Erquiaga | 1-697 | $ 50,000.00 | $ 50,000.00 | | | $ 8,627.74 | $ 8,627.74 | $ 41,372.26 | $ - | | 1.26% | $ 16,048.33 |
| Helene D Kapsky | 1-1149 | $ 100,000.00 | $ 100,000.00 | | | $ 17,122.26 | $ 17,122.26 | $ 82,877.74 | $ - | | 2.53% | $ 32,148.34 |
| HIROYUKI ROY CHIN & LILLIAN S CHIN JTWROS | 1-1274 | $ 24,000.00 | $ 24,000.00 | | | $ 4,621.33 | $ 4,621.33 | $ 19,378.67 | $ - | | 0.59% | $ 7,517.00 |
| iPlan Group Agent for Custodian FBO Andrew Brooks IRA Account 3301018 | 1-203 | $ 20,000.00 | $ 20,000.00 | | | $ 4,474.42 | $ 4,474.42 | $ 15,525.58 | $ - | | 0.47% | $ 6,022.39 |
| iPlanGroup Agency for Custodian FBO Charles Powell IRA | 1-413 | $ 15,250.00 | $ 15,250.00 | | | $ 1,277.62 | $ 1,277.62 | $ 13,972.38 | $ - | | 0.43% | $ 5,419.90 |
| IRA Services Trust Company CFBO Melbourne Kimsey II | 1-661 | $ 50,000.00 | $ 50,000.00 | | | $ 8,561.07 | $ 8,561.07 | $ 41,438.93 | $ - | | 1.26% | $ 16,074.19 |
| JANICE BURRELL | 1-689 | $ 87,000.00 | $ 87,000.00 | | | $ 14,084.33 | $ 14,084.33 | $ 72,915.67 | $ - | | 2.22% | $ 28,284.05 |
| Jason Ragan - TSA | 1-1133 | $ 10,000.00 | $ 10,000.00 | | | $ 1,593.92 | $ 1,593.92 | $ 8,406.08 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 0.26% | $ 3,260.73 |
| Jason Ragan - TSA | 1-796 | $ 20,000.00 | $ 20,000.00 | | | $ 3,194.40 | $ 3,194.40 | $ 16,805.60 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 0.51% | $ 6,518.91 |
| Jill Meekcoms (Halverson) | 1-548 | $ 50,000.00 | $ 50,000.00 | | | $ 8,010.60 | $ 8,010.60 | $ 41,989.40 | $ - | | 1.28% | $ 16,287.72 |
| JLO Enterprises LLC | 1-726 | $ 37,000.00 | $ 37,000.00 | | | $ 5,870.05 | $ 5,870.05 | $ 31,129.95 | $ - | | 0.95% | $ 12,075.33 |
| JML Roth LLC | 1-725 | $ 4,000.00 | $ 4,000.00 | | | $ 740.25 | $ 740.25 | $ 3,259.75 | $ - | | 0.10% | $ 1,264.46 |
| John A Martino | 1-1494 | $ 100,000.00 | $ 100,000.00 | | | $ 17,205.59 | $ 17,205.59 | $ 82,794.41 | $ - | | 2.52% | $ 32,116.02 |
| Juliette Farr-Barksdale & Thomas Farr | 1-2074 | $ 300,000.00 | $ 300,000.00 | | | $ 52,916.57 | $ 52,916.57 | $ 247,083.43 | $ - | | 7.53% | $ 95,843.86 |
| Kameda Investments, LLC (Sole Owner/Manager - Arnold Kunio Kameda) | 1-121 | $ 100,000.00 | $ 100,000.00 | | | $ 17,222.26 | $ 17,222.26 | $ 82,777.74 | $ - | | 2.52% | $ 32,109.55 |
| Madison Trust Company Custodian FBO Brian Shaffer IRA Account # M1608073 and M1703059 | 1-411 | $ 100,000.00 | $ 100,000.00 | | | $ 15,922.26 | $ 15,922.26 | $ 84,077.74 | $ - | | 2.56% | $ 32,613.82 |
| Mark A. Miller ATF Domaskin Revocable Trust, August 8th, 2006 | 1-2040 | $ 100,000.00 | $ 100,000.00 | | | $ 17,088.93 | $ 17,088.93 | $ 82,911.07 | $ - | | 2.53% | $ 32,161.27 |
| May M. Akamine for Aurora Investments, LLC (assets formerly under MayREI, LLC) | 1-1412 | $ 110,000.00 | $ 110,000.00 | | | $ 18,494.00 | $ 18,494.00 | $ 91,506.00 | $ - | | 2.79% | $ 35,495.25 |
| Melanie T. or Gary M. Gonzales | 1-207 | $ 250,000.00 | $ 250,000.00 | | | $ 41,562.54 | $ 41,562.54 | $ 208,437.46 | $ - | | 6.35% | $ 80,853.06 |

A65

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Borgia IRA | 1-705 | $ 125,000.00 | $ 125,000.00 | | | $ 20,215.00 | $ 20,215.00 | $ 104,785.00 | $ - | | 3.19% | $ 40,646.19 |
| Michael C. McClane | 1-941 | $ 100,000.00 | $ 100,000.00 | | | $ 16,888.92 | $ 16,888.92 | $ 83,111.08 | $ - | | 2.53% | $ 32,238.86 |
| Mona M. Leonard SD ROTH - 2692021 | 1-123 | $ 50,000.00 | $ 50,000.00 | | | $ 8,736.07 | $ 8,736.07 | $ 41,263.93 | $ - | - Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 1.26% | $ 16,006.31 |
| Patrick Connely | 1-939 | $ 50,000.00 | $ - | $ 50,000.00 | | $ 2,352.77 | $ 2,352.77 | $ - | $ 47,647.23 | Claimant agreed to rollover this loan to SSDF1 on 6/1/17 | 0.00% | $ - |
| Paul N. Wilmesmeier | 1-300 | $ 25,000.00 | $ 25,000.00 | | | $ 4,326.43 | $ 4,326.43 | $ 20,673.57 | $ - | | 0.63% | $ 8,019.29 |
| Paul S. Applefield, Trustee, Paul S. Applefield, DDS, 401k P | 1-2087 | $ 45,000.00 | $ 45,000.00 | | | $ 7,725.00 | $ 7,725.00 | $ 37,275.00 | $ - | | 1.14% | $ 14,459.00 |
| Paula Tucker | 1-1427 | $ 29,370.00 | $ 29,123.90 | | $ 3,151.93 | $ 4,072.64 | $ 7,224.57 | $ 21,899.33 | $ - | - The Receiver recommends disallowing the pro-rata share of accrued interest rolled from 4611 S. Drexel, and deducting the pro-rata share of pre-rollover distributions from the loan secured by 4611 S Drexel | 0.67% | $ 8,494.77 |
| Pioneer Valley Properties LLC | 1-878 | $ 50,000.00 | $ 50,000.00 | | | $ 8,466.63 | $ 8,466.63 | $ 41,533.37 | $ - | | 1.27% | $ 16,110.83 |
| QUEST IRA INC. FBO REBECA E. SAVORY-ROMERO IRA ACCOUNT #1552 | 1-804 | $ 10,500.00 | $ 10,500.00 | | | $ 1,718.50 | $ 1,718.50 | $ 8,781.50 | $ - | | 0.27% | $ 3,406.35 |
| Quest Trust Company FBO Paul Applefield Roth IRA#16413-21 | 1-2088 | $ 6,500.00 | $ 6,500.00 | | | $ 1,128.07 | $ 1,128.07 | $ 5,371.93 | $ - | | 0.16% | $ 2,083.78 |
| Quest Trust Company FBO Robin Applefield Roth IRA#25164-21 | 1-2089 | $ 6,500.00 | $ 6,500.00 | | | $ 1,128.07 | $ 1,128.07 | $ 5,371.93 | $ - | | 0.16% | $ 2,083.78 |
| R D Meredith General Contractors Llc | 1-1138 | $ 100,000.00 | $ 100,000.00 | | | $ 14,833.73 | $ 14,833.73 | $ 85,166.27 | $ - | | 2.60% | $ 33,036.07 |
| R.D.Meredith General Contractors llc 401k | 1-528 | $ 40,000.00 | $ 40,000.00 | | | $ 5,933.37 | $ 5,933.37 | $ 34,066.63 | $ - | | 1.04% | $ 13,214.47 |
| Ricardo Acevedo Lopez | 1-746 | $ 15,000.00 | $ 15,000.00 | | | $ 2,618.33 | $ 2,618.33 | $ 12,381.67 | $ - | | 0.38% | $ 4,802.86 |
| Rise Up Real Estate Group, LLC | 1-1484 | $ 144,046.00 | $ 144,046.00 | | | $ 23,663.60 | $ 23,663.60 | $ 120,382.40 | $ - | | 3.67% | $ 46,696.43 |
| RLD Denouement Holding Company, LLC | 1-483 | $ 20,000.00 | $ 20,000.00 | | | $ - | $ - | $ 20,000.00 | $ - | | 0.61% | $ 7,758.02 |
| Robert Potter | 1-1389 | $ 79,274.00 | $ 79,274.00 | | | $ 13,441.38 | $ 13,441.38 | $ 65,832.62 | $ - | | 2.01% | $ 25,536.53 |
| Scott Eaton | 1-1470 | $ 25,000.00 | $ 25,000.00 | | | $ 4,272.27 | $ 4,272.27 | $ 20,727.73 | $ - | | 0.63% | $ 8,040.30 |
| Serva Fidem, LLC | 1-1425 | $ 34,930.00 | $ 34,930.00 | | | $ 5,738.26 | $ 5,738.26 | $ 29,191.74 | $ - | | 0.89% | $ 11,323.50 |
| Simon Usuga | 1-681 | $ 45,000.00 | $ 45,000.00 | | | $ 7,350.00 | $ 7,350.00 | $ 37,650.00 | $ - | | 1.15% | $ 14,604.47 |
| Source One Funding, LLC | 1-691 | $ 50,000.00 | $ 50,000.00 | | | $ 8,411.07 | $ 8,411.07 | $ 41,588.93 | $ - | | 1.27% | $ 16,132.38 |
| Spectra Investments LLC/ Deborah L. Mullica | 1-1220 | $ 110,000.00 | $ 110,000.00 | | | $ 17,551.15 | $ 17,551.15 | $ 92,448.85 | $ - | | 2.82% | $ 35,860.98 |
| STEVEN R. BALD | 1-399 | $ 60,000.00 | $ 60,000.00 | | | $ 10,393.33 | $ 10,393.33 | $ 49,606.67 | $ - | | 1.51% | $ 19,242.47 |
| Teresita M. Shelton | 1-330 | $ 20,630.00 | $ 20,630.00 | | $ 2,732.52 | $ 2,406.80 | $ 5,139.32 | $ 15,490.68 | $ - | Pre-rollover distributions on loan secured by 4611 S Drexel | 0.47% | $ 6,008.85 |

A66

Ex. 1 - 1700-08 Juneway Terrace (Property 1)
Final Distribution Plan

| Second Position Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tiger Chang Investments LLC | 1-164 | $ 10,000.00 | $ 10,000.00 | | | $ 1,743.93 | $ 1,743.93 | $ 8,256.07 | $ - | | 0.25% | $ 3,202.54 |
| Vladimir Matviishin - iPlanGroup Agent for Custodian FBO Vladimir Matviishin | 1-1294 | $ 7,500.00 | $ 7,500.00 | | | $ 1,195.42 | $ 1,195.42 | $ 6,304.58 | $ - | | 0.19% | $ 2,445.55 |
| VLADIMIR RAUL GARCIA MELIJOV | 1-75 | $ 100,000.00 | $ 100,000.00 | | | $ 16,255.59 | $ 16,255.59 | $ 83,744.41 | $ - | | 2.55% | $ 32,484.52 |
| William H. Akins, Jr. | 1-2003-1 | $ 20,000.00 | $ 20,000.00 | | | $ 3,259.71 | $ 3,259.71 | $ 16,740.29 | $ - | | 0.51% | $ 6,493.57 |
| William H. Akins, Jr. (CAMA SDIRA LLC FBO Bill Akins IRA) | 1-2003-2 | $ 25,000.00 | $ 25,000.00 | | | $ 3,878.63 | $ 3,878.63 | $ 21,121.37 | $ - | | 0.64% | $ 8,193.00 |
| William Hooper | 1-278 | $ 54,800.00 | $ - | $ 54,800.00 | | $ 5,985.36 | $ 5,985.36 | $ - | $ 48,814.64 | Claimant agreed to rollover this loan to SSDF4 on 11/21/17 | 0.00% | $ - |
| XUWEN LIN | 1-648 | $ 8,700.00 | $ 8,700.00 | | | $ 1,504.48 | $ 1,504.48 | $ 7,195.52 | $ - | | 0.22% | $ 2,791.15 |
| Zahra (Nina) Mofrad | 1-1024 | $ 25,000.00 | $ 25,000.00 | | | $ 4,305.60 | $ 4,305.60 | $ 20,694.40 | $ - | | 0.63% | $ 8,027.37 |
| | | $ 4,191,000.00 | $ 3,969,953.90 | $ 155,800.00 | | | | $ 3,280,186.04 | $ 110,641.78 | | 100.00% | $ 1,272,386.82 |

Total Distributions $ 2,790,647.11

| Calculation of Funds Available for Distribution | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fee Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution | Thorofare Distribution (1st Position) | Amount available for Distribution (2nd Position) |
| 1700-08 Juneway Terrace | 1 | $ 2,820,127.34 | $ 27,480.23 | $ 2,000.00 | $ 2,790,647.11 | $ 1,518,260.29 | $ 1,272,386.82 |

A67

Ex. 2 - 5450-52 S Indiana Avenue (Property 4)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aksel Allouch | 4-90 | $ 50,000.00 | $ 50,000.00 | | | $ 9,130.60 | $ 9,130.60 | $ 40,869.40 | $ - | | 1.83% | $ 32,799.34 |
| Alcalli Sabat (iPlan Group FBO Alcalli Sabat Roth 3320274) | 4-786-2 | $ 10,000.00 | $ 10,000.00 | | | $ 1,839.40 | $ 1,839.40 | $ 8,160.60 | $ - | | 0.37% | $ 6,549.21 |
| Alcalli Sabat (iPlanGroup FBO Alcalli Sabat IRA 320029) | 4-786-1 | $ 20,000.00 | $ 20,000.00 | | | $ 3,718.93 | $ 3,718.93 | $ 16,281.07 | $ - | | 0.73% | $ 13,066.21 |
| Aluvelu Homes LLC | 4-879 | $ 20,000.00 | $ 20,000.00 | | | $ 4,102.27 | $ 4,102.27 | $ 15,897.73 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided. | 0.71% | $ 12,758.57 |
| Anjie Comer | 4-612 | $ 10,000.00 | $ 10,000.00 | | | $ 1,192.81 | $ 1,192.81 | $ 8,807.19 | $ - | | 0.39% | $ 7,068.12 |
| Annie Chang | 4-475 | $ 15,000.00 | $ 15,000.00 | | $ 2,956.25 | $ 1,072.50 | $ 4,028.75 | $ 10,971.25 | $ - | Pre-rollover distributions on loan secured by 4533 S Calumet | 0.49% | $ 8,804.87 |
| Arthur and Dinah Bertrand | 4-890 | $ 50,000.00 | $ 50,000.00 | | | $ 9,000.00 | $ 9,000.00 | $ 41,000.00 | $ - | | 1.84% | $ 32,904.15 |
| Bernadette Chen Eleven St. Felix Street Realty Corp. | 4-2012 | $ 50,000.00 | $ - | | | $ - | $ - | $ - | $ - | The funds claimant wired for this investment were applied to a loan secured by 8326 S Ellis, as acknowledged by claimant in contemporaneous correspondence. | 0.00% | $ - |
| BLUE MOUNTAIN VENTURES PSP 401K, GEORGE SAMUEL | 4-491 | $ 150,000.00 | $ 150,000.00 | | | $ 27,541.66 | $ 27,541.66 | $ 122,458.34 | $ - | | 5.49% | $ 98,277.74 |
| Bluebridge Partners Limited | 4-727 | $ 100,000.00 | $ 100,000.00 | | | $ 21,177.73 | $ 21,177.73 | $ 78,822.27 | $ - | | 3.53% | $ 63,258.04 |
| Bonnie Young | 4-1223 | $ 50,000.00 | $ 50,000.00 | | | $ 5,822.25 | $ 5,822.25 | $ 44,177.75 | $ - | | 1.98% | $ 35,454.42 |
| Bright Venture, LLC | 4-84 | $ 40,000.00 | $ 40,000.00 | | | $ 8,204.40 | $ 8,204.40 | $ 31,795.60 | $ - | | 1.43% | $ 25,517.25 |
| CLD Construction, Inc. (Doru Unchias) | 4-1454 | $ 2,500.00 | $ - | $ 2,500.00 | | $ - | $ - | $ - | 2,500.00 | Unsecured trade creditor | 0.00% | $ - |
| David R Trengove | 4-481 | $ 44,266.00 | $ 44,233.60 | | | $ 8,832.72 | $ 8,832.72 | $ 35,400.88 | $ - | | 1.59% | $ 28,410.63 |
| Denise Renee Wilson | 4-1492 | $ 90,000.00 | $ 90,000.00 | | | $ 12,295.58 | $ 12,295.58 | $ 77,704.42 | $ - | | 3.48% | $ 62,360.92 |
| Distributive Marketing Inc. | 4-806 | $ 50,000.00 | $ 50,000.00 | | | $ 10,205.60 | $ 10,205.60 | $ 39,794.40 | $ - | | 1.78% | $ 31,936.61 |
| Donald Freers aka Meadows Advisors LLC | 4-72 | $ 50,000.00 | $ 50,000.00 | | | $ 4,838.92 | $ 4,838.92 | $ 45,161.08 | $ - | | 2.02% | $ 36,243.58 |
| Douglas Nebel and Narine Nebel | 4-1080 | $ 65,000.00 | $ - | | $ 65,000.00 | $ 5,775.00 | $ 5,775.00 | $ - | 59,225.00 | Claimant agreed to rollover this loan to SSDF4 on 9/1/17 | 0.00% | $ - |
| Ed A Bancroft (iPlan Group FBO Ed Bancroft IRA 3300405) | 4-2008-1 | $ 5,800.00 | $ 5,800.00 | | | $ 1,062.00 | $ 1,062.00 | $ 4,738.00 | $ - | | 0.21% | $ 3,802.44 |
| Ed A. Bancroft | 4-2008-2 | $ 3,171.00 | $ 3,171.00 | | | $ 384.79 | $ 384.79 | $ 2,786.21 | $ - | | 0.12% | $ 2,236.05 |
| Erika Dietz IRA account (Madison Trust Company Custodian FBO Erika Dietz Acct # M1612085) | 4-1301 | $ 102,666.66 | $ 100,000.00 | | | $ 20,511.06 | $ 20,511.06 | $ 79,488.94 | $ - | The Receiver recommends disallowing $2,666.66 accrued interest claimant added to principal amount of loan | 3.56% | $ 63,793.07 |
| Girl Cat Capital West LLC, Valentina Salge, President | 4-350 | $ 50,000.00 | $ 50,000.00 | | | $ 8,761.76 | $ 8,761.76 | $ 41,238.24 | $ - | | 1.85% | $ 33,095.34 |
| Graystone Realty, LLC | 4-1210 | $ 50,000.00 | $ 50,000.00 | | | $ 10,197.27 | $ 10,197.27 | $ 39,802.73 | $ - | | 1.78% | $ 31,943.29 |
| Harendra Pal | 4-1125 | $ 8,932.00 | $ 8,932.00 | | | $ 1,785.86 | $ 1,785.86 | $ 7,146.14 | $ - | | 0.32% | $ 5,735.06 |
| HIROYUKI ROY CHIN & LILLIAN S CHIN JTWROS | 4-1274 | $ 26,000.00 | $ 26,000.00 | | | $ 4,084.21 | $ 4,084.21 | $ 21,915.79 | $ - | | 0.98% | $ 17,588.30 |
| Howard and Doris Bybee | 4-1039 | $ 15,000.00 | $ 15,000.00 | | | $ 937.08 | $ 937.08 | $ 14,062.92 | $ - | | 0.63% | $ 11,286.06 |

Exhibit

2

A68

Ex. 2 - 5450-52 S Indiana Avenue (Property 4)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IG Investment Trust | 4-1061 | $ 25,000.00 | $ 25,000.00 | | | $ 4,969.40 | $ 4,969.40 | $ 20,030.60 | $ - | | 0.90% | $ 16,075.36 |
| Influx Investments LLC | 4-744 | $ 25,000.00 | $ 25,000.00 | | | $ 5,156.90 | $ 5,156.90 | $ 19,843.10 | $ - | | 0.89% | $ 15,924.89 |
| iPlanGroup Agency for Custodian FBO Charles Powell IRA | 4-413 | $ 2,310.00 | $ 2,310.00 | | | $ 193.56 | $ 193.56 | $ 2,116.44 | $ - | | 0.09% | $ 1,698.53 |
| iPlanGroup Agent for Custodian FBO Charles Michael Anglin | 4-331 | $ 15,000.00 | $ 15,000.00 | | | $ 1,880.00 | $ 1,880.00 | $ 13,120.00 | $ - | | 0.59% | $ 10,529.33 |
| iPlanGroup Agent for Custodian FBO Rajanikanth Tanikella IRA | 4-829 | $ 10,000.00 | $ 10,000.00 | | | $ 1,914.40 | $ 1,914.40 | $ 8,085.60 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.36% | $ 6,489.02 |
| IRA Services Trust Custodian FBO Ronald Stephen Klein | 4-301 | $ 50,000.00 | $ 50,000.00 | | | $ 10,247.27 | $ 10,247.27 | $ 39,752.73 | $ - | | 1.78% | $ 31,903.16 |
| James Anthony Ande | 4-591 | $ 25,000.00 | $ - | $ 25,000.00 | | $ 1,273.60 | $ 1,273.60 | $ - | $ 23,726.40 | Claimant agreed to rollover this loan to SSDF1 on 7/26/17 | 0.00% | $ - |
| Julie Patel | 4-409 | $ 10,000.00 | $ 10,000.00 | | $ 967.43 | $ 1,386.53 | $ 2,354.06 | $ 7,645.94 | $ - | Pro-rata share of pre-rollover distributions on loan secured by 7024 S Paxton | 0.34% | $ 6,136.17 |
| Karl R. DeKlotz | 4-1179 | $ 150,000.00 | $ 150,000.00 | | | $ 32,066.66 | $ 32,066.66 | $ 117,933.34 | $ - | | 5.29% | $ 94,646.24 |
| Kirk Road Investments, LLC | 4-755 | $ 121,855.00 | $ 100,000.00 | $ - | $ 7,016.83 | $ 33,211.57 | $ 40,228.40 | $ 59,771.60 | $ - | The Receiver recommends disallowing the accrued interest that was rolled into this investment and deducting the pro-rata share of pre-rollover distributions on loan secured by 4611 S Drexel | 2.68% | $ 47,969.11 |
| LMJ Sales, Inc. | 4-1346 | $ 100,000.00 | $ 100,000.00 | | | $ 19,994.39 | $ 19,994.39 | $ 80,005.61 | $ - | | 3.59% | $ 64,207.72 |
| Luna D. and Jerry E. Ellis | 4-2020 | $ 41,066.65 | $ 40,000.00 | | | $ 7,911.07 | $ 7,911.07 | $ 32,088.93 | $ - | The Receiver recommends disallowing $1,066.65 accrued interest claimant added to principal amount of loan | 1.44% | $ 25,752.66 |
| Mark DeLuca | 4-485 | $ 110,000.00 | $ 110,000.00 | | | $ 21,223.93 | $ 21,223.93 | $ 88,776.07 | $ - | | 3.98% | $ 71,246.36 |
| Mark P. Mouty | 4-165 | $ 20,000.00 | $ 20,000.00 | | | $ 4,078.94 | $ 4,078.94 | $ 15,921.06 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.71% | $ 12,777.29 |
| MID LLC by Carolyn Mize | 4-524 | $ 50,000.00 | $ 50,000.00 | | | $ 9,513.93 | $ 9,513.93 | $ 40,486.07 | $ - | | 1.82% | $ 32,491.70 |
| Mike Dirnberger | 4-443 | $ 10,000.00 | $ 10,000.00 | | | $ 2,057.73 | $ 2,057.73 | $ 7,942.27 | $ - | | 0.36% | $ 6,373.99 |
| Moran Blueshtein and Upender Subramanian | 4-95 | $ 20,000.00 | $ 20,000.00 | | | $ - | $ - | $ 20,000.00 | $ - | | 0.90% | $ 16,050.80 |
| Mountain West LLC IRA FBO Rachael B. Curcio Acct# 50679-01 | 4-315 | $ 10,000.00 | $ 10,000.00 | | | $ 364.71 | $ 364.71 | $ 9,635.29 | $ - | | 0.43% | $ 7,732.71 |
| Nehasri Ltd (investment under Nehasri Ltd by Manoj Donthineni) | 4-1365 | $ 25,000.00 | $ 25,000.00 | | | $ 5,127.73 | $ 5,127.73 | $ 19,872.27 | $ - | | 0.89% | $ 15,948.30 |
| Optima Property Solutions, LLC | 4-1023 | $ 171,167.00 | $ - | | | $ 28,033.39 | $ 28,033.39 | $ - | $ - | Claimant transferred this loan to a group of other properties in January 2018 | 0.00% | $ - |
| Paul Harrison | 4-2026 | $ 43,098.00 | $ 43,098.00 | | | $ 8,832.70 | $ 8,832.70 | $ 34,265.30 | $ - | Claimant withdrew his claim on 5/18/23 Judge Shah reinstated claim on 3/1/24 | 1.54% | $ 27,499.28 |
| Paul N. Wilmesmeier | 4-300 | $ 25,000.00 | $ 25,000.00 | | | $ 5,144.40 | $ 5,144.40 | $ 19,855.60 | $ - | | 0.89% | $ 15,934.92 |
| Petra Zoeller | 4-594 | $ 50,000.00 | $ 50,000.00 | | | $ 10,072.27 | $ 10,072.27 | $ 39,927.73 | $ - | | 1.79% | $ 32,043.61 |

A69

Ex. 2 – 5450-52 S Indiana Avenue (Property 4)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Provident Trust Group F.B.O Charles Smith SoloK | 4-1198 | $ 50,000.00 | $ 50,000.00 | | | $ 9,563.93 | $ 9,563.93 | $ 40,436.07 | $ | - | 1.81% | $ 32,451.57 |
| R2V2 Investments LLC | 4-842 | $ 20,000.00 | $ 20,000.00 | | | $ 4,102.27 | $ 4,102.27 | $ 15,897.73 | $ | - Transaction to roll loan to SSDF4 equity fund was subsequently voided | 0.71% | $ 12,758.57 |
| Robert W. Jennings | 4-447 | $ 150,000.00 | $ 150,000.00 | | $ 14,798.35 | $ 25,304.05 | $ 40,102.40 | $ 109,897.60 | $ | | 4.93% | $ 88,197.24 |
| Sam Harrison | 4-2027 | $ 25,000.00 | $ 25,000.00 | | | $ 4,331.90 | $ 4,331.90 | $ 20,668.10 | $ | | 0.93% | $ 16,586.98 |
| Sandeep Kattar | 4-1396 | $ 50,000.00 | $ 50,000.00 | | | $ 8,125.04 | $ 8,125.04 | $ 41,874.96 | $ | - | 1.88% | $ 33,606.34 |
| SeaBop Properties LLC / Darrell Odum | 4-381 | $ 24,000.00 | $ 24,000.00 | | | $ 4,398.67 | $ 4,398.67 | $ 19,601.33 | $ | - | 0.88% | $ 15,730.85 |
| Steven G. Mouty | 4-566 | $ 50,000.00 | $ 50,000.00 | | | $ 10,372.27 | $ 10,372.27 | $ 39,627.73 | $ | - | 1.78% | $ 31,802.85 |
| Steven Roche | 4-329 | $ 5,000.00 | $ 5,000.00 | | $ 49.52 | $ 1,140.43 | $ 1,189.95 | $ 3,810.05 | $ | - Pre-rollover distributions on loan secured by 7024 S Paxton | 0.17% | $ 3,057.72 |
| Strategic Wealth Ventures, LLC, Brian Kothman Member | 4-595 | $ 35,655.00 | $ 35,655.00 | | | $ 7,010.18 | $ 7,010.18 | $ 28,644.82 | $ | - | 1.28% | $ 22,988.62 |
| Susan Kalisiak | 4-1438 | $ 9,274.00 | $ 9,274.00 | | | $ 602.82 | $ 602.82 | $ 8,671.18 | $ | - | 0.39% | $ 6,958.97 |
| Thomas F. Gordon | 4-2023 | $ 100,000.00 | $ 100,000.00 | | | $ 20,161.06 | $ 20,161.06 | $ 79,838.94 | $ | - | 3.58% | $ 64,073.96 |
| Timothy S Sharp | 4-76 | $ 50,000.00 | $ 50,000.00 | | $ 3,869.43 | $ 8,166.62 | $ 12,036.05 | $ 37,963.95 | $ | - Pre-rollover distributions on loan secured by 4611 S Drexel | 1.70% | $ 30,467.60 |
| TMAKINDE, LLC | 4-372 | $ 25,000.00 | $ 25,000.00 | | | $ 1,129.00 | $ 1,129.00 | $ 23,871.00 | $ | | 1.07% | $ 19,157.44 |
| Vartan Tarakchyan | 4-1118 | $ 30,000.00 | $ | - $ 30,000.00 | | $ 3,361.66 | $ 3,361.66 | $ | - $ 26,638.34 | Claimant agreed to rollover this loan to SSDF4 on 3/27/17 | 0.00% | $ - |
| Verdell Michaux | 4-2039 | $ 5,000.00 | $ 5,000.00 | | | $ 962.26 | $ 962.26 | $ 4,037.74 | $ | - | 0.18% | $ 3,240.45 |
| Vivek Pingili | 4-522 | $ 30,000.00 | $ 30,000.00 | | | $ 6,328.33 | $ 6,328.33 | $ 23,671.67 | $ | - Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.06% | $ 18,997.47 |
| Vladimir Matviishin - iPlanGroup Agent for Custodian FBO Vladimir Matviishin | 4-1294 | $ 14,000.00 | $ 14,000.00 | | | $ 2,607.93 | $ 2,607.93 | $ 11,392.07 | $ | - | 0.51% | $ 9,142.59 |
| Wanda M. Behling | 4-1025 | $ 11,219.00 | $ 11,219.00 | | | $ 1,793.19 | $ 1,793.19 | $ 9,425.81 | $ | - Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.42% | $ 7,564.59 |
| William H. Akins, Jr. | 4-2003-1 | $ 10,000.00 | $ 10,000.00 | | | $ 1,861.14 | $ 1,861.14 | $ 8,138.86 | $ | - | 0.36% | $ 6,531.76 |
| William H. Akins, Jr. (CAMA SDIRA LLC FBO Bill Akins IRA) | 4-2003-2 | $ 20,000.00 | $ 20,000.00 | | | $ 3,851.05 | $ 3,851.05 | $ 16,148.95 | $ | - | 0.72% | $ 12,960.18 |
| Yin Liu, Ping Xu | 4-1368 | $ 200,000.00 | $ 200,000.00 | | | $ 38,988.94 | $ 38,988.94 | $ 161,011.06 | $ | - | 7.22% | $ 129,217.85 |
| | | $ 3,151,980.31 | $ 2,782,692.60 | $ 122,500.00 | | | | $ 2,230,186.12 | $ 112,089.74 | | 100.00% | $ 1,789,813.98 |

| Calculation of Funds Available for Distribution | | | | |
|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fee Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution |
| 5450-52 S Indiana Avenue | 4 | $ 1,815,137.33 | $ 23,323.35 | $ 2,000.00 | $ 1,789,813.98 |

A70

Ex. 3 - 7749-59 S Yates Boulevard (Property 5)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Advanta IRA Services LLC, FBO Dwight L. Plymale IRA #8006189 | 5-847 | $ 97,000.00 | $ 97,000.00 | | | $ 16,173.44 | $ 16,173.44 | $ 80,826.56 | $ | | 3.63% | $ 20,469.05 |
| Alcalli Sabat | 5-786 | $ 4,301.00 | $ 4,301.00 | | $ 238.04 | $ 539.00 | $ 777.04 | $ 3,523.96 | $ | Pre-rollover distributions from the loan secured by 4611 S Drexel | 0.16% | $ 892.43 |
| American Estate and Trust, LC FBO Edward J. Netzel IRA | 5-1057 | $ 10,000.00 | $ 10,000.00 | | | $ 1,827.18 | $ 1,827.18 | $ 8,172.82 | $ | | 0.37% | $ 2,069.74 |
| Amit Hammer | 5-225 | $ 30,000.00 | $ 30,000.00 | | | $ 5,762.08 | $ 5,762.08 | $ 24,237.92 | $ | - | 1.09% | $ 6,138.17 |
| Austin Capital Trust Company on behalf of Summit Trust Company | 5-1178 | $ 25,000.00 | $ 25,000.00 | | | $ 5,009.68 | $ 5,009.68 | $ 19,990.32 | $ | - | 0.90% | $ 5,062.48 |
| Camano Equitites, LLC c/o Charles R. Markley | 5-2038 | $ 50,000.00 | $ 50,000.00 | | | $ 7,766.63 | $ 7,766.63 | $ 42,233.37 | $ | - | 1.90% | $ 10,695.45 |
| Charles P McEvoy | 5-232 | $ 100,000.00 | $ 100,000.00 | | | $ 15,338.93 | $ 15,338.93 | $ 84,661.07 | $ | - | 3.80% | $ 21,440.12 |
| Clarice Recamara | 5-640-1 | $ 25,000.00 | $ 25,000.00 | | | $ 2,094.42 | $ 2,094.42 | $ 22,905.58 | $ | | 1.03% | $ 5,800.76 |
| Clarice Recamara | 5-640-2 | $ 20,169.00 | $ 20,000.00 | | $ 1,869.02 | $ 2,796.77 | $ 4,665.79 | $ 15,334.21 | $ | Pre-rollover distributions from the loan secured by 4611 S Drexel | 0.69% | $ 3,883.34 |
| Clearwood Funding, LLC | 5-1276 | $ 50,000.00 | $ 50,000.00 | | | $ 9,569.49 | $ 9,569.49 | $ 40,430.51 | $ | - | 1.81% | $ 10,238.89 |
| Dana Speed | 5-684 | $ 169,000.00 | $ 169,000.00 | | | $ 27,115.07 | $ 27,115.07 | $ 141,884.93 | $ | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 6.37% | $ 35,931.87 |
| David M Harris | 5-267 | $ 100,000.00 | $ 100,000.00 | | | $ 17,815.32 | $ 17,815.32 | $ 82,184.68 | $ | - | 3.69% | $ 20,812.99 |
| Donald Hendrickson | 5-945 | $ 10,000.00 | $ 10,000.00 | | | $ 1,729.07 | $ 1,729.07 | $ 8,270.93 | $ | - | 0.37% | $ 2,094.58 |
| Doron Kermanian | 5-380 | $ 25,000.00 | $ 25,000.00 | | | $ 9,511.16 | $ 9,511.16 | $ 15,488.84 | $ | Distributions include interest paid on loan plus a $4500 referral fee that EquityBuild paid to claimant | 0.70% | $ 3,922.50 |
| Duane A Degenhardt and Linda S. Degnhardt | 5-2015 | $ 13,385.00 | $ 13,385.00 | | | $ 1,963.17 | $ 1,963.17 | $ 11,421.83 | $ | - | 0.51% | $ 2,892.54 |
| Duke E. Heger and Viviana Heger | 5-1408 | $ 35,000.00 | $ 35,000.00 | | | $ 6,117.18 | $ 6,117.18 | $ 28,882.82 | $ | | 1.30% | $ 7,314.47 |
| Duty, Darrell and Frances | 5-2018 | $ 4,000.00 | $ 4,000.00 | | | $ 23.11 | $ 23.11 | $ 3,976.89 | $ | - | 0.18% | $ 1,007.13 |
| Easley Family Trust c/o Todd Easley | 5-596 | $ 25,000.00 | $ 25,000.00 | | | $ 4,369.49 | $ 4,369.49 | $ 20,630.51 | $ | - | 0.93% | $ 5,224.61 |
| Ed A Bancroft | 5-2008 | $ 14,627.00 | $ 14,627.00 | | | $ 1,997.99 | $ 1,997.99 | $ 12,629.01 | $ | | 0.57% | $ 3,198.25 |
| Grathia Corp | 5-1445 | $ 149,081.00 | $ 149,081.00 | | | $ 26,891.79 | $ 26,891.79 | $ 122,189.21 | $ | | 5.48% | $ 30,943.99 |
| iPlan Group Agent for Custodian FBO Rama Voddi Roth IRA | 5-799 | $ 33,000.00 | $ 33,000.00 | | | $ 4,972.92 | $ 4,972.92 | $ 28,027.08 | $ | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.26% | $ 7,097.76 |
| iPlan Group FBO Garwood Weatherhead IRA Account #3320844 | 5-1096-1 | $ 13,096.00 | $ 13,000.00 | | $ 1,689.25 | $ 1,436.22 | $ 3,125.47 | $ 9,874.53 | $ | The Receiver recommends disallowing $96 accrued interest claimant added to principal amount of loan, and deducting pre-rollover distributions from the loan secured by 4611 S Drexel | 0.44% | $ 2,500.69 |
| iPlan Group FBO Garwood Weatherhead IRA Account #3421004 | 5-1096-2 | $ 16,152.00 | $ 16,152.00 | | $ 2,086.10 | $ 1,771.34 | $ 3,857.44 | $ 12,294.56 | $ | Pro-rata share of pre-rollover distributions from the loan secured by 4611 S Drexel | 0.55% | $ 3,113.55 |

Page 1 of 3

Exhibit

3

exhibitsticker.com

A71

Ex. 3 - 7749-59 S Yates Boulevard (Property 5)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| iPlanGroup Agent for Custodian FBO Andrew Brooks IRA Account | 5-203 | $ 6,000.00 | $ 6,000.00 | | | $ - | $ - | $ 6,000.00 | $ - | | 0.27% | $ 1,519.48 |
| iPlanGroup Agent for Custodian FBO Charles Michael Anglin | 5-331 | $ 50,000.00 | $ 50,000.00 | | | $ 6,266.70 | $ 6,266.70 | $ 43,733.30 | $ - | | 1.96% | $ 11,075.31 |
| JANICE BURRELL | 5-689 | $ 50,000.00 | $ 50,000.00 | | | $ 8,844.48 | $ 8,844.48 | $ 41,155.52 | $ - | | 1.85% | $ 10,422.49 |
| John Bloxham | 5-1015 | $ 35,000.00 | $ 35,000.00 | | | $ 5,886.17 | $ 5,886.17 | $ 29,113.83 | $ - | | 1.31% | $ 7,372.98 |
| John Witzigreuter | 5-729 | $ 50,000.00 | $ 50,000.00 | | | $ 9,577.82 | $ 9,577.82 | $ 40,422.18 | $ - | | 1.81% | $ 10,236.78 |
| Joseph P. McCarthy | 5-1367 | $ 10,000.00 | $ 10,000.00 | | | $ 1,775.04 | $ 1,775.04 | $ 8,224.96 | $ - | | 0.37% | $ 2,082.94 |
| Julie Patel | 5-409 | $ 35,291.00 | $ 35,291.00 | | $ 1,798.55 | $ 2,751.91 | $ 4,550.46 | $ 30,740.54 | $ - | Pro-rata share of pre-rollover distributions from the loan secured by 7024 S Paxton | 1.38% | $ 7,784.94 |
| Karen L Hendrickson | 5-948 | $ 10,000.00 | $ 10,000.00 | | | $ 1,727.40 | $ 1,727.40 | $ 8,272.60 | $ - | | 0.37% | $ 2,095.01 |
| Keith P Rowland and Jane E Rowland | 5-89 | $ 50,000.00 | $ 50,000.00 | | | $ 8,386.77 | $ 8,386.77 | $ 41,613.23 | $ - | | 1.87% | $ 10,538.41 |
| Keith Randall | 5-1086 | $ 70,000.00 | $ - | $ 70,000.00 | | $ 3,141.26 | $ 3,141.26 | $ - | $ 66,858.74 | Claimant agreed to rollover this loan to SSDF1 on 6/23/17 | 0.00% | $ - |
| Kevin & Laura Allred | 5-452 | $ 50,000.00 | $ 50,000.00 | | | $ 9,032.60 | $ 9,032.60 | $ 40,967.40 | $ - | | 1.84% | $ 10,374.85 |
| KKW Investments, LLC | 5-336 | $ 3,000.00 | $ 3,000.00 | | | $ 555.96 | $ 555.96 | $ 2,444.04 | $ - | | 0.11% | $ 618.94 |
| Koates LLC | 5-228 | $ 3,200.00 | $ 3,200.00 | | | $ 11.05 | $ 11.05 | $ 3,188.95 | $ - | | 0.14% | $ 807.59 |
| Legacy Trading LLC | 5-508 | $ 237,000.00 | $ 237,000.00 | | | $ 42,660.00 | $ 42,660.00 | $ 194,340.00 | $ - | | 8.72% | $ 49,215.93 |
| Lynn Marie Kupfer | 5-1319 | $ 100,000.00 | $ 100,000.00 | | | $ 16,783.00 | $ 16,783.00 | $ 83,217.00 | $ - | | 3.73% | $ 21,074.42 |
| Madison Trust Company custodian FBO Guenter Scheel IRA M1702 | 5-2073 | $ 25,000.00 | $ - | $ 25,000.00 | | $ 2,465.99 | $ 2,465.99 | $ - | $ 22,534.01 | Claimant agreed to rollover this loan to SSDF4 on 12/1/17 | 0.00% | $ - |
| Manuel Camacho | 5-748 | $ 25,000.00 | $ 25,000.00 | | | $ 1,542.34 | $ 1,542.34 | $ 23,457.66 | $ - | | 1.05% | $ 5,940.57 |
| Michael F Grant & L. Gretchen Grant | 5-393 | $ 50,000.00 | $ 50,000.00 | | | $ 9,165.93 | $ 9,165.93 | $ 40,834.07 | $ - | | 1.83% | $ 10,341.09 |
| Michael Grow | 5-375 | $ 100,000.00 | $ 100,000.00 | | | $ 18,065.32 | $ 18,065.32 | $ 81,934.68 | $ - | | 3.68% | $ 20,749.67 |
| Michael Warner, Trustee of Warner Chiropractic Care Center, PC PSP | 5-78 | $ 24,000.00 | $ 24,000.00 | | | $ 4,250.67 | $ 4,250.67 | $ 19,749.33 | $ - | | 0.89% | $ 5,001.45 |
| Naveen Kwatra | 5-356 | $ 25,000.00 | $ 25,000.00 | | | $ 4,772.18 | $ 4,772.18 | $ 20,227.82 | $ - | | 0.91% | $ 5,122.63 |
| NBFAR Investment, LLC c/o Jason Ragan - TSA | 5-797 | $ 3,451.00 | $ 3,451.00 | | $ 341.16 | $ 464.49 | $ 805.65 | $ 2,645.35 | $ - | Pro-rata share of pre-rollover distributions from the loans secured by 4611 S Drexel and 7024 S Paxton | 0.12% | $ 669.93 |
| Optima Property Solutions, LLC | 5-1023 | $ 48,693.00 | $ - | | | $ 6,559.49 | $ 6,559.49 | $ - | $ - | Claimant transferred this loan to a group of other properties in January 2018 | 0.00% | $ - |
| Pat DeSantis | 5-397 | $ 250,000.00 | $ 250,000.00 | | | $ 46,666.63 | $ 46,666.63 | $ 203,333.37 | $ - | | 9.13% | $ 51,493.47 |
| Patrick Connely | 5-964 | $ 20,000.00 | $ - | $ 20,000.00 | | $ 1,288.05 | $ 1,288.05 | $ - | $ 18,711.95 | Claimant agreed to rollover this loan to SSDF4 | 0.00% | $ - |
| Paul Scribner | 5-1135 | $ 5,500.00 | $ 5,500.00 | | | $ 534.24 | $ 534.24 | $ 4,965.76 | $ - | | 0.22% | $ 1,257.56 |

A72

Ex. 3 - 7749-59 S Yates Boulevard (Property 5)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peter Jordan | 5-282 | $ 76,728.28 | $ - | $ 100,000.00 | | $ 45,858.52 | $ 45,858.52 | $ - | 54,141.48 | Claimant agreed to rollover this loan to UPN | 0.00% | $ - |
| Phillip G. Vander Kraats | 5-628 | $ 1,374.00 | $ 1,374.00 | | | $ 145.35 | $ 145.35 | $ 1,228.65 | $ - | | 0.06% | $ 311.15 |
| PNW Investments, LLC | 5-332 | $ 12,000.00 | $ 12,000.00 | | | $ 2,223.83 | $ 2,223.83 | $ 9,776.17 | $ - | | 0.44% | $ 2,475.78 |
| Quantum Growth Holdings LLC | 5-354 | $ 5,500.00 | $ - | $ 5,500.00 | | $ 395.98 | $ 395.98 | $ - | 5,104.02 | Claimant agreed to rollover this loan to SSDF4 | 0.00% | $ - |
| QUEST IRA Inc. FBO Francisco A. Romero Sr. Acct# 25282-11 and Acct# 25282-21 | 5-1352 | $ 12,100.00 | $ 12,100.00 | | | $ 1,179.09 | $ 1,179.09 | $ 10,920.91 | $ - | | 0.49% | $ 2,765.68 |
| Raymond Thompson Investment Trust LLC | 5-251 | $ 30,000.00 | $ 30,000.00 | | | $ 1,937.50 | $ 1,937.50 | $ 28,062.50 | $ - | | 1.26% | $ 7,106.73 |
| Robert Potter | 5-1389 | $ 15,000.00 | $ 15,000.00 | | | $ 2,639.17 | $ 2,639.17 | $ 12,360.83 | $ - | | 0.55% | $ 3,130.34 |
| Sam Gerber, CEO, Gerber and Associates, REI, LLC | 5-562 | $ 12,000.00 | $ 12,000.00 | | | $ - | $ - | $ 12,000.00 | $ - | | 0.54% | $ 3,038.96 |
| Sarah Geldart | 5-1285 | $ 37,500.00 | $ 37,500.00 | | | $ 3,600.13 | $ 3,600.13 | $ 33,899.87 | $ - | | 1.52% | $ 8,585.02 |
| Shlomo Zussman | 5-579 | $ 25,000.00 | $ 25,000.00 | | | $ 4,697.18 | $ 4,697.18 | $ 20,302.82 | $ - | | 0.91% | $ 5,141.62 |
| Smart Technologies PSP, Nizarali Jetha - Manager | 5-1458 | $ 100,000.00 | $ 100,000.00 | | | $ 17,722.27 | $ 17,722.27 | $ 82,277.73 | $ - | | 3.69% | $ 20,836.55 |
| Steve Weera Tonasut and Esther Kon Tonasut | 5-154 | $ 50,000.00 | $ 50,000.00 | | | $ 8,979.67 | $ 8,979.67 | $ 41,020.33 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.84% | $ 10,388.26 |
| Steven G. Mouty | 5-821 | $ 50,000.00 | $ 50,000.00 | | | $ 9,265.93 | $ 9,265.93 | $ 40,734.07 | $ - | | 1.83% | $ 10,315.76 |
| Strategic Wealth Ventures, LLC, Brian Kothman Member | 5-595 | $ 23,626.00 | $ 23,626.00 | | $ 2,281.09 | $ 3,276.11 | $ 5,557.20 | $ 18,068.80 | $ - | Pre-rollover distributions from the loan secured by 7024 S Paxton | 0.81% | $ 4,575.86 |
| Susan Kalisiak | 5-1438 | $ 48,226.00 | $ 48,226.00 | | | $ 8,386.09 | $ 8,386.09 | $ 39,839.91 | $ - | | 1.79% | $ 10,089.32 |
| Teena B Ploeger | 5-521 | $ 18,500.00 | $ 18,500.00 | | | $ 3,056.89 | $ 3,056.89 | $ 15,443.11 | $ - | | 0.69% | $ 3,910.91 |
| Tolu Makinde | 5-370 | $ 30,000.00 | $ 30,000.00 | | | $ 5,424.00 | $ 5,424.00 | $ 24,576.00 | $ - | | 1.10% | $ 6,223.79 |
| United Capital Properties, LLC | 5-1480 | $ 979.00 | $ 979.00 | | $ 119.29 | $ 130.13 | $ 249.42 | $ 729.58 | $ - | Pro-rata share of pre-rollover distributions from the loan secured by 4611 S Drexel | 0.03% | $ 184.76 |
| Wesley Pittman | 5-469 | $ 32,000.00 | $ 32,000.00 | | | $ 5,692.40 | $ 5,692.40 | $ 26,307.60 | $ - | | 1.18% | $ 6,662.31 |
| White Tiger Revocable Trust, Ira Lovitch, Zinaida Lovitch | 5-537 | $ 50,000.00 | $ - | $ 50,000.00 | | $ 1,911.80 | $ 1,911.80 | $ - | 48,088.20 | Claimant agreed to rollover this investment to SSDF1 on 2/22/17 | 0.00% | $ - |
| | | $ 2,985,479.28 | $ 2,689,293.00 | $ 270,500.00 | | | $ 2,228,202.61 | | 215,438.40 | | 100.00% | $ 564,284.59 |

| Calculation of Funds Available for Distribution | | | | | |
|---|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fee Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution |
| 7749-59 S Yates Boulevard | 5 | $ 590,154.98 | $23,870.39 | $ 2,000.00 | $ 564,284.59 |

A73

Ex. 4 – 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aaron Beauclair | 79-408 | $ 30,000.00 | $ 30,000.00 | | | $ 226.67 | $ 226.67 | $ 29,773.33 | $ - | | 0.88% | $ 2,878.43 |
| Alcalli Sabat | 79-786 | $ 11,000.00 | $ 11,000.00 | | | $ 2,332.00 | $ 2,332.00 | $ 8,668.00 | $ - | | 0.26% | $ 838.01 |
| Amit Hammer | 79-225 | $ 50,000.00 | $ 50,000.00 | | | $ 14,934.72 | $ 14,934.72 | $ 35,065.28 | $ - | | 1.04% | $ 3,390.05 |
| Arvind Kinjarapu | 79-1161 | $ 35,000.00 | $ 35,000.00 | | | $ 8,468.11 | $ 8,468.11 | $ 26,531.89 | $ - | | 0.79% | $ 2,565.05 |
| Asians Investing In Real Estate LLC | 79-503 | $ 25,000.00 | $ 25,000.00 | | $ 8,102.08 | $ 588.89 | $ 8,690.97 | $ 16,309.03 | $ - | Pre-rollover distributions on loan secured by 7600 S Kingston | 0.48% | $ 1,576.73 |
| Bauer Latoza Studio, Ltd. | 79-885 | $ 27,450.00 | $ - | $ 27,450.00 | | $ - | $ - | $ - | $ 27,450.00 | Unsecured trade creditor | 0.00% | $ - |
| Bernadette Chen Eleven St. Felix Street Realty Corp. | 79-2012 | $ 100,000.00 | $ 100,000.00 | | | $ 24,461.06 | $ 24,461.06 | $ 75,538.94 | $ - | | 2.24% | $ 7,302.96 |
| Brett Burnham | 79-314-1 | $ 8,000.00 | $ - | $ 8,000.00 | | $ 1,396.00 | $ 1,396.00 | $ - | $ 6,604.00 | Claimant agreed to rollover this loan to SSDF4 on 6/19/18 | 0.00% | $ - |
| Brett Burnham | 79-314-2 | $ 5,000.00 | $ 5,000.00 | | | $ 1,119.16 | $ 1,119.16 | $ 3,880.84 | $ - | | 0.12% | $ 375.19 |
| Charles Smith | 79-1186 | $ 350,000.00 | $ 350,000.00 | | | $ 79,955.61 | $ 79,955.61 | $ 270,044.39 | $ - | | 8.02% | $ 26,107.39 |
| Clifton Armoogam | 79-2006 | $ 9,900.00 | $ 9,900.00 | | | $ 2,258.85 | $ 2,258.85 | $ 7,641.15 | $ - | | 0.23% | $ 738.73 |
| David M Harris | 79-267 | $ 96,000.00 | $ 96,000.00 | | | $ 23,578.67 | $ 23,578.67 | $ 72,421.33 | $ - | | 2.15% | $ 7,001.56 |
| David R Trengove | 79-481 | $ 150,000.00 | $ 150,000.00 | | | $ 35,066.67 | $ 35,066.67 | $ 114,933.33 | $ - | | 3.42% | $ 11,111.54 |
| Dennis & Mary Ann Hennefer | 79-355 | $ 23,768.00 | $ 23,768.00 | | $ 2,220.07 | $ 3,295.86 | $ 5,515.93 | $ 18,252.07 | $ - | Pro-rata share of pre-rollover distributions on loan secured by 7024 S Paxton | 0.54% | $ 1,764.58 |
| Distributive Marketing Inc. | 79-806 | $ 50,000.00 | $ 50,000.00 | | | $ 11,700.05 | $ 11,700.05 | $ 38,299.95 | $ - | | 1.14% | $ 3,702.77 |
| EastWest Funding Trust | 79-258 | $ 50,000.00 | $ 50,000.00 | | | $ 11,972.28 | $ 11,972.28 | $ 38,027.72 | $ - | | 1.13% | $ 3,676.45 |
| Elaine Sison Ernst | 79-1029 | $ 50,000.00 | $ 50,000.00 | | | $ 11,805.61 | $ 11,805.61 | $ 38,194.39 | $ - | | 1.14% | $ 3,692.56 |
| Entrust Group FBO Daniel Matthews IRA | 79-117 | $ 40,000.00 | $ - | | | $ 6,051.08 | $ 6,051.08 | $ - | $ - | Entrust Group (claimants' custodian) signed a release of this lien, which was recorded. Claimant may have an unsecured claim if they did not receive a payoff from EquityBuild. | 0.00% | $ - |
| Francisco Fernandez | 79-1450 | $ 65,000.00 | $ 65,000.00 | | | $ 15,953.95 | $ 15,953.95 | $ 49,046.05 | $ - | | 1.46% | $ 4,741.68 |
| Gary R. Burnham Jr. Solo 401K Trust | 79-1174 | $ 10,000.00 | $ - | $ 10,000.00 | | $ 829.00 | $ 829.00 | $ - | $ 9,171.00 | Claimant agreed to rollover this loan to SSDF1 | 0.00% | $ - |
| Gowrisankar Challagundla | 79-815 | $ 50,000.00 | $ 50,000.00 | | | $ 11,913.95 | $ 11,913.95 | $ 38,086.05 | $ - | | 1.13% | $ 3,682.09 |
| Grathia Corp | 79-1445 | $ 50,000.00 | $ 50,000.00 | | | $ 12,205.61 | $ 12,205.61 | $ 37,794.39 | $ - | | 1.12% | $ 3,653.89 |
| Green Light Investments, LLC | 79-1440 | $ 50,000.00 | $ 50,000.00 | | | $ 12,277.49 | $ 12,277.49 | $ 37,722.51 | $ - | | 1.12% | $ 3,646.94 |
| Gunter and Karen Scheel | 79-2072 | $ 25,000.00 | $ 25,000.00 | | | $ 6,111.05 | $ 6,111.05 | $ 18,888.95 | $ - | | 0.56% | $ 1,826.15 |
| Ingrid Beyer and Joel Beyer | 79-985 | $ 10,000.00 | $ 10,000.00 | | | $ 2,421.06 | $ 2,421.06 | $ 7,578.94 | $ - | | 0.23% | $ 732.72 |
| iPlanGroup Agency for Custodian FBO Charles Powell IRA | 79-413 | $ 10,000.00 | $ 10,000.00 | | | $ 837.75 | $ 837.75 | $ 9,162.25 | $ - | | 0.27% | $ 885.79 |

**Exhibit 4**

A74

Ex. 4 - 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| iPlanGroup Agent for Custodian FBO Andrew Brooks IRA Account | 79-203 | $ 20,000.00 | $ 20,000.00 | | | $ 4,430.00 | $ 4,430.00 | $ 15,570.00 | $ - | | 0.46% | $ 1,505.28 |
| Irene Gacad | 79-647 | $ 25,000.00 | $ 25,000.00 | | | $ 5,990.22 | $ 5,990.22 | $ 19,009.78 | $ - | | 0.56% | $ 1,837.83 |
| James Walsh | 79-2058 | $ 50,000.00 | $ 50,000.00 | | | $ 11,350.00 | $ 11,350.00 | $ 38,650.00 | $ - | | 1.15% | $ 3,736.61 |
| Jason Ragan - TSA | 79-797 | $ 110,000.00 | $ 110,000.00 | | $ 5,900.97 | $ 17,478.58 | $ 23,379.55 | $ 86,620.45 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 2.57% | $ 8,374.30 |
| Jeffery B McMeans | 79-279 | $ 50,000.00 | $ 50,000.00 | | | $ 12,205.61 | $ 12,205.61 | $ 37,794.39 | $ - | | 1.12% | $ 3,653.89 |
| John A Martino & Carole J Wysocki | 79-1493 | $ 50,000.00 | $ 50,000.00 | | | $ 12,171.78 | $ 12,171.78 | $ 37,828.22 | $ - | | 1.12% | $ 3,657.16 |
| John B. Allred & Glenda K. Allred | 79-2004 | | $ (65,000.00) | | | $ 15,715.62 | $ 15,715.62 | $ - | $ - | Receiver recommends that former EquityBuild employee who actively participated in marketing the fraudulent scheme be disqualified from receiving a distribution | 0.00% | $ - |
| John E Mize | 79-649 | $ 50,000.00 | $ 50,000.00 | | | $ 12,230.61 | $ 12,230.61 | $ 37,769.39 | $ - | | 1.12% | $ 3,651.47 |
| Karl R. DeKlotz | 79-1179 | $ 100,000.00 | $ 300,000.00 | | $ 25,924.50 | $ 52,252.76 | $ 78,177.26 | $ 221,822.74 | $ - | Principal balance increased due to rollovers of loans secured by 4611 S Drexel and 7024 S Paxton to this property in June, 2017. Pro rata share of pre-rollover distributions from those two loans applied. | 6.59% | $ 21,445.41 |
| Knickerbocker LLC | 79-2035 | $ 50,000.00 | $ 50,000.00 | | | $ 12,291.67 | $ 12,291.67 | $ 37,708.33 | $ - | | 1.12% | $ 3,645.57 |
| Kyle Jacobs | 79-1345 | $ 30,000.00 | $ 30,000.00 | | | $ 7,318.33 | $ 7,318.33 | $ 22,681.67 | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.67% | $ 2,192.82 |
| Larry White | 79-794 | $ 52,500.00 | $ 52,500.00 | | | $ 12,754.58 | $ 12,754.58 | $ 39,745.42 | $ - | | 1.18% | $ 3,842.51 |
| Laura J. Sohm IRA | 79-970 | $ 63,000.00 | $ - | | | $ 9,135.00 | $ 9,135.00 | $ - | $ - | Claimant agreed to rollover this loan to 6250 S Mozart | 0.00% | $ - |
| LEVENT KESEN | 79-1078 | $ 50,000.00 | $ 50,000.00 | | | $ 12,230.60 | $ 12,230.60 | $ 37,769.40 | $ - | | 1.12% | $ 3,651.48 |
| Louis Barrows | 79-494 | $ 25,000.00 | $ 25,000.00 | | | $ 45.14 | $ 45.14 | $ 24,954.86 | $ - | | 0.74% | $ 2,412.59 |
| Madison Trust Company Custodian FBO Kathy B. Talman IRA | 79-1109 | $ 25,000.00 | $ 25,000.00 | | | $ 6,073.55 | $ 6,073.55 | $ 18,926.45 | $ - | | 0.56% | $ 1,829.77 |
| Madison Trust Custodian FBO Brent Jacobs | 79-854 | $ 37,881.00 | $ 37,881.00 | | | $ 9,942.02 | $ 9,942.02 | $ 27,938.98 | $ - | | 0.83% | $ 2,701.09 |
| Maricris M. Lee | 79-320 | $ 8,000.00 | $ 8,000.00 | | $ 615.58 | $ 1,066.70 | $ 1,682.28 | $ 6,317.72 | $ - | Pre-rollover distributions on loan secured by 7024 S Paxton | 0.19% | $ 610.79 |
| May M. Akamine for Aurora Investments, LLC (assets formerly under MayREI, LLC) | 79-1412 | $ 60,000.00 | $ 60,000.00 | | | $ 14,446.67 | $ 14,446.67 | $ 45,553.33 | $ - | | 1.35% | $ 4,404.01 |
| Meadows Enterprises Inc, Kenyon Meadows, president | 79-429 | $ 25,000.00 | $ 25,000.00 | | | $ 6,136.05 | $ 6,136.05 | $ 18,863.95 | $ - | | 0.56% | $ 1,823.73 |
| Michael Arthur Goldman (also know as Mike Goldman, Michael A. Goldman, Michael Goldman) | 79-775 | $ 61,861.00 | $ 60,000.00 | | $ 22,100.00 | $ 14,286.40 | $ 36,386.40 | $ 23,613.60 | $ - | The Receiver recommends disallowing $1860.75 accrued interest claimant added to principal amount of loan, and deducting pre-rollover distributions from the loan secured by 4351 S Calumet | 0.70% | $ 2,282.92 |

A75

Ex. 4 - 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Warner, Trustee of Warner Chiropractic Care Center, | 79-78 | $ 90,000.00 | $ 90,000.00 | | | $ 21,760.00 | $ 21,760.00 | $ 68,240.00 | $ - | | 2.03% | $ 6,597.32 |
| Moran Blueshtein and Upender Subramanian | 79-95 | $ 46,000.00 | $ 46,000.00 | | | $ 1,369.77 | $ 1,369.77 | $ 44,630.23 | $ - | | 1.33% | $ 4,314.77 |
| Mountain West LLC IRA FBO Rachael B. Curcio Acct# 50679-01 | 79-315 | $ 7,000.00 | $ 7,000.00 | | | $ 199.69 | $ 199.69 | $ 6,800.31 | $ - | | 0.20% | $ 657.44 |
| Nandini S Chennappan | 79-1270 | $ 10,000.00 | $ 10,000.00 | | | $ 2,266.61 | $ 2,266.61 | $ 7,733.39 | $ - | | 0.23% | $ 747.65 |
| Nehasri Ltd (investment under Nehasri Ltd by Manoj Donthineni) | 79-1365 | $ 50,000.00 | $ 50,000.00 | | | $ 12,677.72 | $ 12,677.72 | $ 37,322.28 | $ - | | 1.11% | $ 3,608.25 |
| New Direction IRA, Inc. FBO Ingrid Beyer, Roth IRA | 79-437 | $ 25,000.00 | $ 25,000.00 | | | $ 5,623.55 | $ 5,623.55 | $ 19,376.45 | $ - | | 0.58% | $ 1,873.28 |
| Optima Property Solutions, LLC | 79-1023 | $ 200,000.00 | $ 200,000.00 | | $ 28,333.36 | $ 31,611.15 | $ 59,944.51 | $ 140,055.49 | $ - | Pre-rollover distributions on loan secured by 4533 S Calumet | 4.16% | $ 13,540.30 |
| Pankaj Patel DBA EZ NJ Ventures, LLC | 79-920 | $ 50,000.00 | $ 50,000.00 | | | $ 11,630.61 | $ 11,630.61 | $ 38,369.39 | $ - | | 1.14% | $ 3,709.48 |
| Pat DeSantis | 79-397 | $ 250,000.00 | $ 250,000.00 | | | $ 65,527.72 | $ 65,527.72 | $ 184,472.28 | $ - | | 5.48% | $ 17,834.44 |
| Patricia J Theil C/F Jacqueline M Theil | 79-923 | $ 11,257.00 | $ 11,162.79 | | $ 976.13 | $ 1,560.94 | $ 2,537.07 | $ 8,625.72 | $ - | The Receiver recommends disallowing $94.21 accrued interest claimant added to principal amount of loan, and deducting pro-rata pre-rollover distributions from the loan secured by 7834 S Ellis | 0.26% | $ 833.92 |
| Paul N. Wilmesmeier | 79-300 | $ 25,000.00 | $ 25,000.00 | | | $ 6,202.72 | $ 6,202.72 | $ 18,797.28 | $ - | | 0.56% | $ 1,817.29 |
| Philip J Lombardo and Dianne E Lombardo | 79-561 | $ 50,000.00 | $ 50,000.00 | | | $ 12,205.61 | $ 12,205.61 | $ 37,794.39 | $ - | | 1.12% | $ 3,653.89 |
| PROFESSIONAL RENTAL LP, GEORGE SAMUEL | 79-482 | $ 50,000.00 | $ 50,000.00 | | | $ 11,563.94 | $ 11,563.94 | $ 38,436.06 | $ - | | 1.14% | $ 3,715.93 |
| Provident Trust Group, LLC FBO Stephan Tang IRA | 79-172 | $ 36,470.00 | $ 36,470.00 | | $ 2,950.04 | $ 1,458.81 | $ 4,408.85 | $ 32,061.15 | $ - | Pre-rollover distributions on loan secured by 4533 S Calumet | 0.95% | $ 3,099.61 |
| Real Envisions LLC | 79-1021 | $ 50,000.00 | $ 50,000.00 | | | $ 12,113.95 | $ 12,113.95 | $ 37,886.05 | $ - | | 1.13% | $ 3,662.75 |
| Receivables to Cash, LLC d/b/a Berenger Capital | 79-302 | $ 50,000.00 | $ 50,000.00 | | | $ 12,272.28 | $ 12,272.28 | $ 37,727.72 | $ - | | 1.12% | $ 3,647.45 |
| Rene Hribal | 79-768 | $ 100,000.00 | $ 100,000.00 | | | $ 22,288.84 | $ 22,288.84 | $ 77,711.16 | $ - | | 2.31% | $ 7,512.97 |
| Robert Potter | 79-1389 | $ 23,000.00 | $ 23,000.00 | | | $ 5,645.28 | $ 5,645.28 | $ 17,354.72 | $ - | | 0.52% | $ 1,677.82 |
| Sarah Geldart | 79-1285 | $ 20,000.00 | $ 20,000.00 | | | $ 4,732.28 | $ 4,732.28 | $ 15,267.72 | $ - | | 0.45% | $ 1,476.05 |
| STEVEN R. BALD | 79-399 | $ 30,000.00 | $ 30,000.00 | | | $ 7,338.33 | $ 7,338.33 | $ 22,661.67 | $ - | | 0.67% | $ 2,190.89 |
| Steven Roche | 79-329 | $ 50,000.00 | $ 50,000.00 | | | $ 12,005.61 | $ 12,005.61 | $ 37,994.39 | $ - | | 1.13% | $ 3,673.23 |
| Terri S. Tracy | 79-272 | $ 25,000.00 | $ 25,000.00 | | | $ 6,111.00 | $ 6,111.00 | $ 18,889.00 | $ - | | 0.56% | $ 1,826.15 |
| Terry L. Merrill, Sheryl R. Merrill | 79-602 | $ 50,000.00 | $ 50,000.00 | | | $ 11,997.28 | $ 11,997.28 | $ 38,002.72 | $ - | | 1.13% | $ 3,674.03 |
| The Entrust Group FBO Dee Ann Nason 7230011277 | 79-790 | $ 50,000.00 | $ 50,000.00 | | | $ 11,855.61 | $ 11,855.61 | $ 38,144.39 | $ - | | 1.13% | $ 3,687.73 |

A76

Ex. 4 - 6160-6212 S Martin Luther King Drive (Property 79)
Final Distribution Plan

| Claimant Name | Claim Number | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover Distributions | Distributions Received on Property | Total Distributions Received | Max Potential Dist. (Proceeds of Sales) | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Claims | Final Distribution Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Todd Colucy | 79-70 | $ 50,000.00 | $ 50,000.00 | | | $ 12,213.95 | $ 12,213.95 | $ 37,786.05 | $ - | | 1.12% | $ 3,653.08 |
| TSC Trust Patricia-Trish Scully | 79-2063 | $ 50,000.00 | $ 50,000.00 | | | $ 12,261.06 | $ 12,261.06 | $ 37,738.94 | $ - | | 1.12% | $ 3,648.53 |
| United Capital Properties, LLC | 79-1480 | $ 30,000.00 | $ 30,000.00 | | | $ 7,253.33 | $ 7,253.33 | $ 22,746.67 | $ - | | 0.68% | $ 2,199.11 |
| US Freedom Investments, LLC | 79-1234 | $ 25,000.00 | $ - | $ 25,000.00 | | $ 3,658.29 | $ 3,658.29 | $ - | $ 21,341.71 | Claimant agreed to rollover this loan to SSDF4 on 9/15/17 | 0.00% | $ - |
| Valmar PLC (Valery Lipenko) | 79-517 | $ 25,000.00 | $ 25,000.00 | | | $ 6,144.38 | $ 6,144.38 | $ 18,855.62 | $ - | | 0.56% | $ 1,822.93 |
| Victor Shaw | 79-1040 | $ 50,000.00 | $ 50,000.00 | | | $ 12,272.28 | $ 12,272.28 | $ 37,727.72 | $ - | | 1.12% | $ 3,647.45 |
| Vistex Properties LLC | 79-1318 | $ 100,000.00 | $ 100,000.00 | | | $ 23,188.95 | $ 23,188.95 | $ 76,811.05 | $ - | | 2.28% | $ 7,425.95 |
| William (Will) J Cook III | 79-700 | $ 100,000.00 | $ 100,000.00 | | | $ 24,102.73 | $ 24,102.73 | $ 75,897.27 | $ - | | 2.26% | $ 7,337.61 |
| William B. Dreischmeier | 79-2017 | $ 60,000.00 | $ 60,000.00 | | | $ 14,656.67 | $ 14,656.67 | $ 45,343.33 | $ - | | 1.35% | $ 4,383.71 |
| William H. Akins, Jr. | 79-2003 | $ 35,000.00 | $ 35,000.00 | | | $ 8,392.28 | $ 8,392.28 | $ 26,607.72 | $ - | | 0.79% | $ 2,572.38 |
| William Needham | 79-80 | $ 25,000.00 | $ 25,000.00 | | | $ 5,648.55 | $ 5,648.55 | $ 19,351.45 | $ - | | 0.58% | $ 1,870.86 |
| Wisemove Properties LLC, (Anthony and Linda Reid, members) | 79-168 | $ 100,000.00 | $ 100,000.00 | | | $ 24,727.72 | $ 24,727.72 | $ 75,272.28 | $ - | | 2.24% | $ 7,277.18 |
| Yin Liu, Ping Xu | 79-1368 | $ 100,000.00 | $ 100,000.00 | | | $ 24,444.39 | $ 24,444.39 | $ 75,555.61 | $ - | | 2.25% | $ 7,304.58 |
| | | $ 4,423,087.00 | $ 4,382,681.79 | $ 70,450.00 | | | | $ 3,365,047.13 | $ 64,566.71 | | 100.00% | $ 325,326.47 |

| Calculation of Funds Available for Distribution | | | | | |
|---|---|---|---|---|---|
| Property Address | Property # | Account balance as of 7/11/2024 | Approved Fees Held Back (Fee Apps 1-23) | Estimated Fees after 3/31/24 | Amount Available for Distribution |
| 6160-6212 S Martin Luther King Drive | 79 | $ 353,660.20 | $ 26,333.73 | $ 2,000.00 | $ 325,326.47 |

A77